UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ORNRAT KEAWSRI, SACHINA NAGAE, TAKAYUKI SEKIYA. and SIWAPON TOPON,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**RAMEN-YA INC., Y&S INTERNATIONAL  CORP. d/b/a RAMEN-YA, MIHO MAKI, MASAHIKO NEGITA, TOSHIHITO KOBAYASHI and SHIGEAKI NAKANISHI,**<br><br>*Defendants.* | **INDEX NO.**<br><br>**COMPLAINT and JURY DEMAND** |

Plaintiffs Ornrat Keawsri ("Keawsri"), Sachina Nagae ("Nagae"), Takayuki Sekiya ("Sekiya"), and Siwapon Topon ("Topon"), collectively referred to as "Plaintiffs", by their undersigned attorneys, Florence Rostami Law LLC, upon personal knowledge as to themselves and upon information and belief as to other matters, bring this Collective Action for damages and other legal and equitable relief against Defendants Ramen-Ya Inc. ("RYI"), Y&S International Corp. d/b/a Ramen-Ya ("Y&S"), Miho Maki ("Maki"), Masahiko Negita ("Negita"), Toshihito Kobayashi ("Kobayashi"), and Shigeaki Nakanishi ("Nakanishi"), for violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 et seq., Article 6 and Article 19 of the New York State Labor Law ("NYLL"), the New York Hospitality Industry Wage Order, 12 N.Y.C.R.R. Part 146 (the "Wage Order"), the New York Wage Theft Prevention Act ("WTPA"), and any other causes of action that can be inferred from or applied to the facts set forth herein.  For their Complaint (the "Complaint"), Plaintiffs allege as follows:

1

## PRELIMINARY STATEMENT

1.     This is an action for overtime pay, minimum wage payments,  unlawfully withheld gratuities, spread of hours payments, penalties for failure to provide proper wage statements (pay stubs), and penalties for failure to provide proper wage statements (pay stubs). These claims are asserted against RYI and Y&S, which have operated and continued to operate restaurants as a single or joint employer under the trade name Ramen-Ya (the combined entity referred to hereinafter as "Ramen-Ya").  These claims are also asserted against Maki, who was and upon information and belief continues to be responsible for the management and operation of Ramen-Ya and its constituent entities, RYI and Y&S.  These claims are also asserted against Negita, the owner of RYI, and Nakanishi, the owner of Y&S.

2.     As more fully described below, during the relevant time periods, Ramen-Ya, acting through manager Maki and the respective owners of RYI and Y&S, willfully violated federal and New York State law by (a) failing to pay Plaintiffs the statutory minimum wage required by the FLSA, the NYLL, and the Wage Order—indeed, failing to pay any wage to Plaintiffs but remitting to them only a percentage of the gratuities given by patrons, (b) failing to pay overtime wages to Plaintiffs as required by the FLSA, the NYLL, and the Wage Order; (c) making improper deductions from the gratuities patrons left for Plaintiffs, in violation of the NYLL and the Wage Order; (d) failing to provide Plaintiffs with "spread of hours" pay in accordance with the Wage Order; and (e) failing to provide Plaintiffs with proper wage statements accurately setting forth their wage rate, hours worked, and gross and net pay as required by the WTPA.

3.     Upon information and belief, Ramen-Ya, acting through manager Maki and the respective owners of RYI and Y&S, willfully violated federal and New York State law with respect to all other similarly situated employees of Ramen-Ya, in the same manner as

2

enumerated in the previous paragraph.

4.      Defendants committed violations of these laws by engaging in a systematic

scheme of failing to compensate Plaintiffs and all other employees of RYI and Y&S in the

manner required by the FLSA, the NYLL, and the Wage Order, and of failing to provide proper

wage statements as required by the WTPA, in order to enrich themselves.

## PARTIES

5.      Keawsri is an individual and is, and at all times relevant to this Complaint, has

been a resident of the State of New York, and the City of New York, County of Queens.

6.      Nagae is an individual and is, and at all times relevant to this Complaint, has

been a resident of the State of New York, and the City of New York, County of Queens.

7.      Sekiya is an individual who, at all times relevant to this Complaint, was a

resident of the State of New York, and the City of New York, County of New York.  Sekiya is

currently a resident of Tokyo, Japan.

8.      Topon is an individual and is, and at all times relevant to this Complaint, has

been a resident of the State of New Jersey, and the City of West New York.

9.      RYI is a corporation organized under the laws of the State of New York, with a

principal place of business at 133 West 3rd Street, New York, New York 10012.

10.     Negita is, upon information and belief and based on the records of the New

York State Department of State, Division of Corporations, the sole or majority owner of RYI.

On information and belief, Negita is a resident of New Jersey.

11.     As the sole or majority owner of RYI, Negita is an employer within the meaning

of the FLSA, and is liable for damages for failure to provide wages and benefits to employees

of RYI, in accordance with General Corporation Law § 630.

12.     Y&S is a corporation organized under the laws of the State of New York, with a principal place of business at 181 West 4th Street, New York, New York 10014.

13.     Nakanishi is identified with the New York State Department of State, Division of Corporations, as the principal of Y&S, and upon information and belief is an owner of Y&S. Upon information and belief, Nakanishi is a resident of New York.

14.     Upon information and belief, Kobayashi is a resident of Japan and is the sole or majority owner of Y&S or the beneficial owner of Y&S.

15.     As the owners of Y&S, Nakanishi and Kobayashi each is an employer within the meaning of the FLSA, and is liable for damages for failure to provide wages and benefits to employees of Y&S, in accordance with General Corporation Law § 630

16.     RYI and Y&S jointly do business under the name of "Ramen-Ya" operating restaurants located at 133 West 3rd Street and 181 West 4th Street, New York, New York.

17.     At all relevant times, Maki was the manager of Ramen-Ya and worked at both RYI and Y&S in New York City.

18.     At all relevant times, Maki had the discretionary authority to create and enforce personnel decisions on behalf of RYI and/or Y&S, operating as Ramen-Ya, and Maki did exercise such discretionary authority, including but not limited to: hiring and terminating employees, setting wages, authorizing issuance of wages, maintaining employee records, and otherwise controlling the terms and conditions of employment for Keawsri, Nagae, Sekiya, Topon and all other employees of RYI and Y&S.

## JURISDICTION AND VENUE

### Federal Question Jurisdiction and Supplemental Jurisdiction

19.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331 and pursuant to 28 U.S.C. § 1343(3) and 1343(4), because the civil action herein

arises under the laws of the United States, namely the FLSA.

20.     Ramen-Ya has employees engaged in commerce, in that its employees handle, sell or, otherwise work on goods or materials that have been moved in or produced for commerce including, without limitation, food products that are imported from Japan and from other states in the United States and cleaning supplies, paper products, dishware, and cooking implements.  Furthermore, Ramen-Ya advertises its restaurant in interstate commerce, through its website and on social media.

21.     Ramen-Ya is an enterprise whose annual gross volume of sales made or business done, for each year between 2014 and the present, has been in excess of $500,000 per annum.

22.     Ramen-Ya is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA.

23.     As owners of Ramen-Ya and/or RYI and Y&S, Negita, Kobayashi, and Nakanishi are personally liable for unpaid wages, and each qualifies as an "employer" under the FLSA and the NYLL.

24.     As manager of Ramen-Ya and/or RYI and Y&S, Maki holds an executive position for such entities and is personally liable for unpaid wages, and qualifies as an "employer" under the FLSA and the NYLL.

25.     Plaintiffs, and all others employed by Defendants, are "employees" within the meaning of the FLSA.

26.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 29 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the Constitution of the United States.

27.     The amount in controversy is within the jurisdictional limits of this Court.

28.     This Court has jurisdiction over all claims in this action.

29.     All conditions precedent to filing these claims have been met.

**Personal Jurisdiction**

30.     This Court has personal jurisdiction over Defendants because Defendants

engage in business and/or reside in the State of New York and within the Southern District of

New York.

**Venue**

31.     Venue is proper in the Southern District of New York under 29 U.S.C.

§1391(b)(1) and (2) because Defendants conduct business and reside in this judicial district and

because the acts and omissions giving rise to the claims set forth herein occurred in this judicial

district.

## FLSA COLLECTIVE ACTION ALLEGATIONS

32.     Plaintiffs commence this action for violations of the FLSA as a collective action

pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons presently

or formerly employed by Defendants in non-exempt positions subject to Defendants' unlawful

minimum wage and overtime pay practices and policies described herein and who worked for

Defendants at any time in the three (3) year period preceding the date the instant action was

initiated.

33.     Plaintiffs further commence this action on behalf of all persons currently or

formerly employed by Defendants in non-exempt positions subject to Defendants' unlawful

minimum wage and overtime pay practices and policies described herein as well as the

unlawful practices with regard to improper deductions from gratuities, failure to provide

"spread of hours" pay, and failure to provide proper wage payment statements described herein

and who worked for Defendants at any time in the three (3) year period preceding the date the

instant action was initiated.

34.     Plaintiffs are similarly situated to all such individuals because while employed

by Defendants, Plaintiffs and all other employees: performed similar tasks; were subject to the

same laws and regulations; were paid in the same or similar manner; were paid the same or

similar rate; were not paid an amount equal to the applicable Federal and State minimum wage;

were not compensated at the required overtime rate of pay for hours worked in excess of forty

(40) hours in a given workweek; were not paid additional compensation for hours worked

beyond ten (10) hours in a given workday; were not provided wage notices at the time of hire;

and were not provided complete and accurate wage statements.

## FACTS

35.     Ramen-Ya operates two restaurants, which specialize in the retail sale of ramen

noodle dishes, along with other food and beverages,   for consumption in the restaurants and for

delivery to customers.  Upon information and belief, Ramen-Ya began operations in or about

2013 at the 181 West 4th Street location (Y&S), and in or about 2014, the 133 West 3rd Street

location (RYI).

36.     The two Ramen-Ya locations are represented to the public, including on the

Ramen-Ya website (http://www.ramenya.nyc/) as a single, integrated enterprise.

37.     Employed by Ramen-Ya are chefs and assistant chefs, servers, and kitchen

workers.

38.     Ramen-Ya is open from late morning until late night.  The West 4th Street

location is open seven days a week, from 12:00 noon to 12:00 midnight on Sundays through

Thursdays, and on Fridays and Saturdays from 12:00 noon to 3:00 am the following day.  The

West 3rd Street location is open seven days a week from 12:00 noon to 12:00 midnight.

39.     Maki serves as manager of both locations of Ramen-Ya.

40.     In her role as manager of Ramen-Ya, Maki determines the working days and

working hours for chefs, assistant chefs, servers and kitchen workers; the location to which

each employee will be assigned each day; and the compensation arrangements for each

employee.  Maki also hires, disciplines and terminates employees at both Ramen-Ya locations.

41.     Keawsri began her employment with Ramen-Ya in or about January 2015 as a

server.  She worked for Ramen-Ya until her employment ceased in or about February 2016.

42.     Nagae began her employment with Ramen-Ya in 2014 as a server.  She worked

for Ramen-Ya until her employment ceased in or about April 2016.

43.     Sekiya began his employment with Ramen-Ya in or about October 2015 as a

server.  He worked for Ramen-Ya until his employment ceased in or about May 2016.

44.     Topon began her employment with Ramen-Ya in or about June 2015 as a server.

She worked for Ramen-Ya until her employment ceased in or about May 2016.

45.     Plaintiffs (and upon information and belief all similarly situated employees

employed by Defendants) were non-exempt employees under the FLSA, the NYLL, the Wage

Order, and all other applicable federal and state minimum wage and overtime requirements and

labor laws.

46.     Plaintiffs (and all other similarly situated employees employed by Defendants)

were employed in the food service and/or hospitality industry.

47.     Plaintiffs (and all other similarly situated employees employed by Defendants)

were treated by Defendants as if they were "tipped employees" within the meaning of the

FLSA, the NYLL, and the Wage Order.

8

48.     The FLSA, the NYLL, and the Wage Order set forth applicable minimum wages for tipped and non-tipped employees.

49.     Under the FLSA, the NYLL, and the Wage Order, an employer in the hospitality industry, such as Defendants, is entitled to apply the minimum wage amount for tipped employees if the hospitality employer has established and maintains a *bona fide* tip arrangement for such tipped employees that conforms with the requirements of the FLSA, the NYLL, and the Wage Order.

50.     As demonstrated hereinbelow, Defendants failed to establish and maintain a *bona fide* tip arrangements for Plaintiffs and (upon information and belief other similarly situated employees employed by Defendants), and therefore is not entitled to apply the lower minimum wage for tipped employees set forth in the FLSA, the NYLL, and the Wage Order.

51.     The applicable federal minimum wage for non-tipped employees at all times during the period encompassed by this collective action was at least $7.25 per hour.

52.     The applicable New York State minimum wage for non-tipped employees, set forth in the NYLL and the Wage Order, during the period encompassed by this collective action, was:  on or before December 30, 2014--$8.00 per hour; December 31, 2014 through December 30, 2015--$8.75 per hour; December 31, 2015 through December 30, 2016--$9.00 per hour.

53.     Maki assigned Plaintiffs (and other servers employed by Defendants) to work at either the West 3rd Street or West 4th Street locations.

54.     Maki assigned Plaintiffs (and other servers employed by Defendants) to work a lunch shift (generally arriving at 11:30 am and working until 4:00 pm or 6:00 pm) or an evening shift (generally arriving at 6:00 pm) and working until 12:00 midnight, or until 3:00 am on Fridays and Saturdays at the West 4th Street location.

9

55.     Maki assigned Plaintiffs (and other servers employed by Defendants) to work a different number of shifts each week, on varying days and with variation of the location at which each Plaintiff or server worked.

56.     On many occasions, Maki assigned Plaintiffs (and other servers employed by Defendants) to work both a lunch shift and an evening shift on the same day.  When Maki assigned a server to work both a lunch shift and an evening shift on the same day, that server might have been assigned to work both shifts at the same location or to work the lunch shift at one of the Ramen-Ya locations and the evening shift at the other Ramen-Ya location.

57.     At the time each Plaintiff commenced his or her employment, Maki informed the new employee that their compensation would be determined and paid as follows: as a server, Plaintiff would be compensated solely from the gratuities (tips) left by restaurant patrons, which money was placed in a tip bowl at the cash register of the restaurant; the tips given by restaurant patrons during a shift at the location to which the server was assigned (either lunch or evening) would be divided by Maki between or among the servers working on that shift (with adjustments made by Maki if a server worked only part of the shift), after deducting twenty percent (20%) of the money in the tip bowl, which amount was used to compensate (in whole or in part) the kitchen workers.

58.     From the amount determined by Maki to be the server's compensation, consisting of the gratuities for the shift divided between or among the servers on duty (after unlawfully deducting twenty percent (20%) purportedly to be given to the kitchen staff), Maki further deducted from each server's pay an amount equal to the purported value of any food or drink consumed by the server.

59.     During the entirety of each Plaintiff's employment, Defendants compensated each Plaintiff in the manner described at the commencement of his or her employment.

60.     Upon information and belief, Defendants, acting through Maki, established and maintained the same method of compensation for all servers employed by Defendants.

61.     Upon information and belief, Defendants did not maintain contemporaneous time records of the hours worked by Plaintiffs or other employees of Ramen-Ya. Upon information and belief, Defendants created and maintained weekly schedules of the shifts or hours on which servers were scheduled to work that week.

62.     Plaintiffs and other servers were not provided payment of any wages by Defendants for their work at Ramen-Ya, as the money they received in exchange for their provision of services in Defendants' restaurants consisted solely of the amounts taken from the tip bowl for each shift and distributed to them (after the unlawful deduction of twenty percent (20%) of such gratuities for payment to kitchen workers at Defendants' restaurants).

63.     Defendants willfully failed to establish a proper tip sharing arrangement in accordance with the provisions of the FLSA, the NYLL and the Wage Order.

64.     Defendants willfully failed to establish a proper tip pooling arrangement in accordance with the provisions of the FLSA, the NYLL and the Wage Order.

65.     Defendants willfully failed to maintain accurate and complete written records of gratuities received by Plaintiffs or other servers as required by law.

66.     In a specious effort to hide the unlawful manner by which Defendants provided compensation to Keawsri, Sekiya, and Topon, Defendants provided a portion of the tip compensation to Keawsri, Sekiya, and Topon through payroll checks from RYI and Y&S. The gross amount of pay reflected on each payroll check purportedly corresponded to the number of hours worked by that individual at the location owned by RYI or the location owned by Y&S during the workweek multiplied by the allowable minimum wage for an employee for which an employer was entitled to apply a tip credit under the FLSA, the NYLL and the Wage Order.

Wage deductions and withholdings were ostensibly taken from the gross wages shown on each wage statement. The amount of tips (if any) in excess of the gross wages shown on each wage statement was paid to Keawsri, Sekiya, and Topon in cash.

67.     However, any amount represented by Defendants on the wage statements issued to Keawsri, Sekiya, and Topon (or, upon information and belief, any other server employed by Defendants to whom a wage statement was issued) consisted of money taken from the tips that belonged to that server, and was not lawful minimum wage compensation paid by Defendants to such server.

68.     Defendants willfully failed to pay compensation to Keawsri, Sekiya, and Topon equal to at least the applicable minimum wage, as required by the FLSA, the NYLL and the Wage Order.

69.     Defendants willfully failed to issue to Keawsri, Sekiya, and Topon complete and accurate wage statements, as required by the NYLL, the Wage Order, and the WTPA.

70.     In contrast to the manner in which Defendants made payment of compensation to Keawsri, Sekiya and Topon, Maki provided to Nagae all of her compensation, consisting only of tips, in cash, without any attempt to hide this unlawful practice by recategorizing some of Nagae's tip earnings as "wages."

71.     Defendants willfully failed to pay compensation to Nagae equal to at least the applicable minimum wage, as required by the FLSA, the NYLL and the Wage Order.

72.     Defendants willfully failed to issue to Nagae complete and accurate wage statements, as required by the NYLL, the Wage Order, and the WTPA.

73.     Upon information and belief, Defendants willfully failed to pay to all other similarly situated employees employed by Defendant compensation equal to at least the applicable minimum wage, as required by the FLSA, the NYLL and the Wage Order.

74.     Defendants are aware or should have been aware that the FLSA, the NYLL, and the Wage Order required them to pay Plaintiffs (and all similarly situated employees employed by Defendants) compensation at equal to or greater than the applicable minimum wage.

75.     Defendants are aware or should have been aware that the FLSA, the NYLL, and the Wage Order required them to collect and distribute to Plaintiffs (and all similarly situated employees employed by Defendants) gratuities in accordance with the regulations promulgated by the United States Department of Labor and the New York State Department of Labor.

76.     Defendants are aware or should have been aware that the FLSA, the NYLL, and the Wage Order prohibited Defendants from withholding or diverting any portion of gratuities provided by restaurant patrons for Defendants' own use or for compensating Defendants' employees other than those who are eligible to participate in a *bona fide* tip sharing arrangement.

77.     Defendants did not have a good faith basis for believing that the failure to pay minimum wages to Plaintiffs (and upon information and belief to similarly situated employees employed by Defendants) was in compliance with the FLSA, the NYLL, and /or the Wage Order, and no such good faith basis exists.

78.     At the time each Plaintiff commenced his or her employment, Defendants failed to provide such new employee with a wage notice setting forth his or her hourly wage, tip credit or allowance, overtime rate, and pay day, as required by the WTPA.

79.     Defendants, acting through their manager Maki, assigned each Plaintiff (and upon information and belief all similarly situated employees employed by Defendants) to work during a given workweek on shifts at both the West 3rd Street location (owned by RYI) and the West 4th Street location (owned by Y&S).  Each Plaintiff was assigned, during one or more workweeks during his or her employment, to work in excess of forty (40) hours per week for

Ramen-Ya.

80.     Defendants willfully failed to compensate each Plaintiff (and upon information and belief all similarly situated employees employed by Defendants) with overtime compensation, at an amount of at least one and one half such employee's regular hourly rate for all overtime worked, as required by the FLSA, the NYLL and the Wage Order.

81.     Defendants are aware or should have been aware that the FLSA, the NYLL, and the Wage Order required them to pay each Plaintiff (and all similarly situated employees employed by Defendants) overtime compensation at a rate of at least one and one half times such employee's regular hourly rate for all overtime worked.

82.     Defendants did not have a good faith basis for believing that the failure to pay overtime wages to Plaintiffs (and upon information and belief to similarly situated employees employed by Defendants) was in compliance with the FLSA, the NYLL, and /or the Wage Order, and no such good faith basis exists.

83.     Defendants, acting through their manager Maki, assigned and required each Plaintiff (and upon information and belief all similarly situated employees employed by Defendants) to work during certain given workday on both the lunch and evening shifts, either at one location or at both the West 3rd Street location (owned by RYI) and the West 4th Street location (owned by Y&S).  On such workdays, the server so assigned began his or her workday at least ten (10) hours before he or she ended his or her workday, and provided services to Defendants over a period that spanned at least ten (10) hours.

84.     Defendants willfully failed to compensate any of the Plaintiffs (and upon information and belief all similarly situated employees employed by Defendants) with spread of hour pay, in an amount equal to one hour of pay at the applicable minimum wage rate, for each workday on which such employee began his or her workday at least ten (10) hours before

he or she ended his or her workday, as required by the NYLL and the Wage Order.

85.     Defendants are aware or should have been aware that the NYLL and the Wage Order required them to pay Plaintiffs (and all similarly situated employees employed by Defendants) additional compensation in an amount equal to one hour of pay at the applicable minimum wage rate, for each workday on which such employee began his or her workday at least ten (10) hours before he or she ended his or her workday.

86.     Defendants did not have a good faith basis for believing that the failure to make "spread of hours" payments to Plaintiffs (and upon information and belief to similarly situated employees employed by Defendants) was in compliance with the NYLL, and /or the Wage Order, and no such good faith basis exists.

87.     Defendants willfully failed to provide any of the Plaintiffs (and upon information and belief all similarly situated employees employed by Defendants) with complete and accurate wage statements, in accordance with the regulations promulgated by the New York State Department of Labor.

88.     Defendants are aware or should have been aware that the NYLL, the Wage Order, and the WTPA required them to provide any of the Plaintiffs (and upon information and belief all similarly situated employees employed by Defendants) with complete and accurate wage statements, in accordance with the regulations promulgated by the New York State Department of Labor.

89.     Defendants did not have a good faith basis for believing that the failure to provide any of the Plaintiffs (and upon information and belief all similarly situated employees employed by Defendants) with complete and accurate wage statements was in compliance with the regulations promulgated by the New York State Department of Labor, and no such good faith basis exists.

**FIRST CAUSE OF ACTION (On Behalf of Plaintiffs, Against
All Defendants - Failure to Pay Minimum Wage - FLSA)**

90.     Plaintiffs reallege and reassert each and every allegation set forth in paragraphs
1 through 88 of this Complaint as if fully set forth herein.

91.     The minimum wage provisions set forth in the FLSA and the regulations
thereunder promulgated by the United States Department of Labor apply to Defendants and
protect Plaintiffs and all other similarly situated employees employed by Defendants.

92.     Defendants willfully failed to pay Plaintiffs for any workweek the applicable
minimum wage for their services as employees of Defendants.

93.     By providing Plaintiffs with only a percentage of the gratuities left for them and
providing no compensation other than the percentage of the gratuities, Defendants provided no
wage compensation to any of the Plaintiffs.

94.     Defendants failed to establish and maintain a lawful and proper gratuity
payment program, since Defendants (a) made improper deductions from the gratuities
belonging to each Plaintiff purportedly to compensate Defendants' kitchen employees who
were ineligible to share in gratuities; (b) failed to establish a proper tip pooling arrangement;
(c) failed to establish a proper tip sharing arrangement; and (d) failed to maintain complete and
proper daily records of gratuities received by each Plaintiff.

95.     Because Defendants failed to establish and maintain a lawful and proper gratuity
payment program, Defendants are not entitled to apply a tip credit to the minimum wage
amount that Defendants were obligated to pay to Plaintiffs.

96.     Defendants' violations of the minimum wage provisions of the FLSA were
willful and intentional, entitling Plaintiffs to unpaid minimum wage compensation for a period
of three years from the date of commencement of this action.

97.     As a result of Defendants' willful violations of the FLSA, Plaintiffs have been

deprived of minimum wage compensation in amounts to be determined at trial, and are entitled

to recovery of such amounts, liquidated damages, prejudgment interest, attorney's fees, costs,

and other relief pursuant to 29 U.S.C. § 216(b).

<u>**SECOND CAUSE OF ACTION (On Behalf of Plaintiffs, Against
All Defendants - Failure to Pay Minimum Wage – NYLL and Wage Order)**</u>

98.     Plaintiffs reallege and reassert each and every allegation set forth in paragraphs

1 through 97 of this Complaint as if fully set forth herein.

99.     The minimum wage provisions set forth in the NYLL and the regulations

thereunder promulgated by the New York State Department of Labor, including the Wage

Order, apply to Defendants and protect Plaintiffs and all other similarly situated employees

employed by Defendants.

100.    Defendants willfully failed to pay Plaintiffs for any workweek the applicable

minimum wage for their services as employees of Defendants.

101.    By providing Plaintiffs with only a percentage of the gratuities left for them and

providing no compensation other than the percentage of the gratuities, Defendants provided no

wage compensation to any of the Plaintiffs.

102.    Defendants failed to establish and maintain a lawful and proper gratuity

payment program, since Defendants (a) made improper deductions from the gratuities

belonging to each Plaintiff purportedly to compensate Defendants' kitchen employees who

were ineligible to share in gratuities; (b) failed to establish a proper tip pooling arrangement;

(c) failed to establish a proper tip sharing arrangement; and (d) failed to maintain complete and

proper daily records of gratuities received by each Plaintiff.

103.    Because Defendants failed to establish and maintain a lawful and proper gratuity

payment program, Defendants are not entitled to apply a tip credit to the minimum wage amount that Defendants were obligated to pay to Plaintiffs.

104.     Claims for violation of the NYLL and the Wage Order are governed by a six (6) year statute of limitations.

105.     As a result of Defendants' willful violations of the NYLL and the Wage Order, Plaintiffs have been deprived of minimum wage compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorney's fees, costs, and other relief pursuant to the NYLL.

### THIRD CAUSE OF ACTION (On Behalf of Keawsri and Topon, Against All Defendants - Failure to Pay Overtime Compensation - FLSA)

106.     Plaintiffs reallege and reassert each and every allegation set forth in paragraphs 1 through 105 of this Complaint as if fully set forth herein.

107.     The overtime compensation provisions set forth in the FLSA and the regulations thereunder promulgated by the United States Department of Labor apply to Defendants and protect Plaintiffs and all other similarly situated employees employed by Defendants.

108.     Plaintiff Keawsri worked more than forty (40) hours during the following workweeks, among others: week ending June 21, 2015—50.50 hours; week ending June 28, 2015—56.50 hours; week ending July 5, 2015—46.00 hours; week ending July 26, 2015—47.75 hours; week ending August 30, 2015—40.50 hours; week ending September 6, 2015—48.75 hours.

109.     Plaintiff Topon worked more than forty (40) hours during the following workweeks, among others: week ending December 6, 2015—47.50 hours; week ending December 27, 2015—47.25 hours; week ending January 10, 2016—40.25 hours; week ending February 28, 2016—46.50 hours; week ending March 6, 2016—48.25 hours.

110.    Defendants have failed to pay Plaintiffs overtime compensation for all time in excess of forty (40) hours worked in any work week.

111.    Defendants' violation of the overtime provisions of the FLSA were willful and intentional, entitling Plaintiffs to unpaid overtime compensation for a period of three years from the date of commencement of this action.

112.    As a result of Defendants' willful violations of the FLSA, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorney's fees, costs, and other relief pursuant to 29 U.S.C. § 216(b).

### FOURTH CAUSE OF ACTION (On Behalf of Plaintiffs, Against All Defendants - Failure to Pay Overtime Compensation – NYLL and Wage Order)

113.    Plaintiffs reallege and reassert each and every allegation set forth in paragraphs 1 through 112 of this complaint as if fully set forth herein.

114.    The overtime compensation provisions set forth in the NYLL and the regulations thereunder promulgated by the New York State Department of Labor, including the Wage Order, apply to Defendants and protect Plaintiffs and all other similarly situated employees employed by Defendants.

115.    Pursuant to Article 19 of the NYLL and the Wage Order, at 12 NYCRR § 146-1.4, Defendants are required to pay overtime compensation to each of its employees for all hours worked over forty (40) hours in any workweek.

116.    Claims for violation of Article 19 of the NYLL and the Wage Order are governed by a six (6) year statute of limitations.

117.    Plaintiffs willfully failed to pay to any of the Plaintiffs overtime compensation for overtime they worked, as required by Article 19 of the NYLL and 12 NYCRR § 146-1.4.

118.     As a result of Defendants' willful violations of the NYLL and the Wage Order,
Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial,
and are entitled to recovery of such amounts, liquidated damages, prejudgment interest,
attorney's fees, costs, and other relief pursuant to the NYLL.

### FIFTH CAUSE OF ACTION (Against All Defendants - Failure to Pay Gratuities - NYLL § 196-d)

119.     Plaintiffs reallege and reassert each and every allegation set forth in paragraphs
1 through 118 of this Complaint as if fully set forth herein.

120.     The provisions of NYLL § 196-d and the regulations thereunder promulgated by
the New York State Department of Labor, including the Wage Order, apply to Defendants and
protect Plaintiffs and all other similarly situated employees employed by Defendants.

121.     Pursuant to NYLL § 196-d, an employer is prohibited from demanding,
accepting, or retaining any part of the gratuities received by or on behalf of an employee.

122.     Defendants have failed to pay to Plaintiffs (and upon information and belief all
other similarly situated employees employed by Defendants) full amount of the gratuities
earned by them during their employment, as required by NYLL § 196-d.

123.     Claims for violation of Article 6 of the NYLL, including § 196-d, are governed
by a six (6) year statute of limitations.

124.     Through their knowing or intentional failure to pay to Plaintiffs (and upon
information and belief all other similarly situated employees employed by Defendants),
Defendants have willfully violated NYLL § 196-d.

125.     Because of these Defendants' willful violation of NYLL § 196-d, Plaintiffs are
entitled to recover from Defendants the full amount of gratuities earned by each of them for the
period commencing six years prior to the date this Complaint is filed, along with liquidated

damages as provided in the NYLL, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION (On Behalf of All Plaintiffs, Against All Defendants – NYLL and Wage Order – Spread of Hours Pay)**

126.    Plaintiffs reassert and reallege each and every allegation set forth in paragraphs 1 through 125 of this Complaint as if fully set forth herein.

127.    On a significant number of days during the period of their employment by Defendants, Plaintiffs (and upon information and belief all other similarly situated employees employed by Defendants) worked both a lunch and evening shift, with the consequence that the conclusion of each Plaintiff's workday was more than ten (10) hours after the commencement of their lunch shifts.

128.    Among the days that the conclusion of Keawsri's workday was more than ten (10) hours after the commencement of her workday were: January 21, 2015; February 6, 2015; February 13, 2015; February 25, 2015; March 4, 2015; March 11, 2015; March 16, 2015; March 18, 2015; March 20, 2015; March 27, 2015; March 30, 2015; April 1, 2015; April 3, 2015; April 6, 2015; April 13, 2015; April 15, 2015; April 22, 2015; April 26, 2015; May 1, 2015; May 3, 2015; May 10, 2015; May 17-18, 2015; May 25, 2015; May 29, 2015; June 1, 2015; June 3, 2015; June 5, 2015; June 8, 2015; June 10, 2015; June 16-20, 2015; June 22-26, 2015;  June 30, 2015; July 2-3, 2015; July 8, 2015; July 20-21, 2015; July 23-24, 2015; August 4, 2015; August 6-7, 2015; August 10-11, 2015; August 13-14, 2015; August 20-23, 2015; August 29-30, 2015; September 4-6, 2015; September 11-14, 2015; September 18-19, 2015; September 21, 2015; September 25-28, 2015; October 2-4, 2015; October 9-11, 2015; October 29-31, 2015; November 1, 2015; November 5, 2015; November 8, 2015; November 13-15, 2015; November 20-22, 2015; November 28-29, 2015; December 4-7, 2015; December 13,

2015; December 17-20, 2015; December 26, 2015; December 28, 2015; December 30, 2015;

January 1-2, 2016; January 6-7, 2016; January 9, 2016; January 13, 2016; January 20, 2016;

January 25, 2016; February 1, 2016; February 3, 2016; February 8, 2016; February 10, 2016;

February 13, 2016; February 15, 2016; February 20, 2016, February 23, 2016.

129.     Among the days that the conclusion of Nagae's workday was more than ten

(10) hours after the commencement of her workday were: September 20, 2014; September 27,

2014; October 11, 2014; November 8-9, 2014; November 22, 2014; December 6, 2014;

February 1, 2015; February 8, 2015; February 15, 2015; February 17, 2015; February 22, 2015;

February 25, 2015; March 1, 2015; March 4, 2015; March 8, 2015; March 10-11, 2015; March

15, 2015; March 17, 2015; March 21, 2015; March 27, 2015; March 29, 2015; April 4-5, 2015;

April 19, 2015; May 3, 2015; June 26, 2015; September 25, 2015; October 17-18, 2015;

October 24, 2015; October 31, 2015; November 14, 2015; November 12, 2015; November 19,

2015; November 28, 2015; December 5, 2015; December 12, 2015; December 19, 2015;

December 26, 2015; January 2, 2016; January 9, 2016; January 16, 2016; January 23, 2016;

January 30, 2016; February 6, 2016; February 13, 2016; February 20, 2016; February 27, 2016;

March 5, 2016; March 12, 2016; March 19, 2016; March 26, 2016; March 29, 2016; April 8-9,

2016; April 16, 2016; April 22-23, 2016; April 30, 2016.

130.     Among the days that the conclusion of Sekiya's workday was more than ten

(10) hours after the commencement of his workday were: October 23-24, 2015; October 29,

2015; December 26, 2015.

131.     Among the days that the conclusion of Topon's workday was more than ten (10)

hours after the commencement of her workday were: June 13-14, 2015; June 20, 2015; June 25,

2015; July 4, 2015; July 11, 2015; July 18, 2015; August 29, 2015; September 12, 2015;

September 12, 2015; September 20, 2015; October 3, 2015; October 10-11, 2015; October 16-

18, 2015; October 24-25, 2015; October 31, 2015; November 7-8, 2015; November 14-15, 2015; November 21-22, 2015; November 28-30, 2015; December 5-6, 2015; December 11-13, 2015; December 15, 2015; December 19-20, 2015; December 23-24, 2015; December 26-27, 2015; January 2-4, 2016; January 9-11, 2016; January 16-18, 2016; January 21, 2016; January 24, 2016; January 30-31, 2016; February 1, 2016; February 7, 2016; February 13-15, 2016; February 20-22, 2016; February 27-29, 2016; March 5-6, 2016; March 12-13, 2016; March 19-21, 2016; March 25, 2016; March 27-28, 2016; April 2-3, 2016; April 9-10, 2016; April 16, 2016; April 23, 2016; April 30, 2016; May 7, 2016.

132.    Defendants operate restaurants subject to the Wage Order, 12 NYCRR § 146-3.1.

133.    Plaintiffs (and upon information and belief all other similarly situated employees employed by Defendants) are employees within the definition set forth in the Wage Order, 12 NYCRR § 146-3.2.

134.    Under the Wage Order, 12 NYCRR § 146-1.6(d), an employer in the hospitality industry must provide each employee whose spread of hours exceeds ten (10) hours in a workday a spread of hours payment, equal to one hour at the minimum wage rate, regardless of a given employee's regular rate of pay.

135.    On those days on which Plaintiffs (and upon information and belief all other similarly situated employees employed by Defendants) worked both a lunch and evening shift, Defendant was obligated to provide to such employee a "spread of hours" payment equal to one (1) hour's pay at the basic minimum wage, in accordance with the NYLL and the Wage Order, 12 NYCRR § 146-1.6(a), (d).

136.    Defendants have willfully failed to pay to Plaintiffs (and upon information and belief all other similarly situated employees employed by Defendants) the "spread of hours"

pay as required by the NYLL and the Wage Order, 12 NYCRR § 146-1.6.

137.    Claims for violation of the NYLL and the Wage Order are subject to a six (6) year statute of limitation.

138.    Due to Defendants' violations of the NYLL and the Wage Order, Plaintiffs (and upon information and belief all other similarly situated employees employed by Defendants) are entitled to recover their unpaid "spread of hour" wages, liquidated damages as provided for as provided by the NYLL, reasonable attorney's fees and costs, and pre- judgment and post- judgment interest.

### SEVENTH CAUSE OF ACTION (Against All Defendants --NYLL § 195(3) and Wage Order (Failure to Provide Proper and Accurate Wage Statements)

139.    Defendants reassert and reallege each and every allegation set forth in Paragraphs 1 through 138 of this Complaint as fully set forth herein.

140.    Pursuant to NYLL § 195(3), the Wage Order, 12 NYCRR § 146-2.3, and the WTPA, Defendants were and are required to provide each employee with a statement, commonly referred to as a pay stub, setting forth the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. Further, for employees who are not exempt from overtime, the wage statement must also set forth the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

141.    Defendants did not provide Plaintiffs (and upon information and belief all other similarly situated employees employed by Defendants) with wage statements that accurately set forth each of the categories of information required by NYLL § 195(3), the Wage Order, 12

NYCRR § 146-2.3, and the WTPA.

142.    Any wage statements provided to Plaintiffs (and upon information and belief all other similarly situated employees employed by Defendants) were fraudulent in that the hours reflected on such statements were fewer than that actually worked by each Plaintiff.

143.    Due to Defendants' failure to provide to Plaintiffs (and upon information and belief all other similarly situated employees employed by Defendants) accurate wage statements, each such Plaintiff is entitled to recover from Defendants one hundred dollars ($100.00) for each inaccurate wage statement up to a total of twenty-five hundred dollars ($2,500.00), along with attorney's fees and costs and injunctive/declaratory relief.

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated persons, seek the following relief:

A. that the Court issue notice to all similarly situated employees of their right to file consents to join this action, as a member of a collective under the FLSA and as plaintiffs with respect to claims asserted under the NYLL, the Wage Order, and the WTPA;

B. that the Court award to Plaintiffs all minimum wage compensation to which they are entitled under the FLSA, along with liquidated damages, attorney's fees and costs, and pre-judgment and post-judgment interest;

C. that the Court award to Plaintiffs all minimum wage compensation to which they are entitled under the NYLL and the Wage Order, along with liquidated damages, attorney's fees and costs, and pre- judgment and post-judgment interest

D. that the Court award to Plaintiffs all overtime compensation to which they are entitled under the FLSA, along with liquidated damages, attorney's fees and costs, and pre-

judgment and post-judgment interest;

E. that the Court award to Plaintiffs all overtime compensation to which they are entitled under the NYLL and the Wage Order, along with liquidated damages, attorney's fees and costs, and pre-judgment and post-judgment interest;

F. that the Court award to Plaintiffs all gratuities earned by them to which they are entitled to recover under NYLL § 195-d and the Wage Order, along with liquidated damages, attorney's fees and costs, and pre-judgment and post-judgment interest;

G. that the Court award to Plaintiffs all "spread of hours" payments to which they are entitled pursuant to the NYLL and the Wage Order, along with liquidated damages, attorney's fees and costs, and pre-judgment and post-judgment interest;

H. that the Court award to Plaintiffs statutory penalties for failure to provide accurate wage statements (pay stubs) in accordance with the NYLL, the Wage Order and the WTPA, along with attorney's fees and costs;

I. that the Court provide injunctive and declaratory relief to restrain and prevent Defendants from engaging in further violations of the FLSA, the NYLL, the Wage Order and the WTPA; and

J. that the Court provide such other and further relief as the Court deems necessary or appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter a judgment in their favor as requested above.

## REQUEST FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury in this action.

Dated: New York, New York
March 29, 2017

*Respectfully submitted.*

Florence Rostami Law, LLC

By: _____
Florence Rostami
Neal Haber
frostami@rostamilaw.com
nhaber@rostamilaw.com
708 Third Avenue, 5th Floor
New York, New York 10017
T (212) 209-3966
F (212) 209-7101