UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

ORNRAT KEAWSRI, SACHINA NAGAE,
TAKAYUKI SEKIYA, SIWAPON TOPON, and
PIMPARAT KETCHATROT,

         Plaintiffs,

    -against-

RAMEN-YA INC., Y&S INTERNATIONAL
CORP. d/b/a RAMEN-YA, MIHO MAKI,
MASAHIKO NEGITA, TOSHIHITO
KOBAYASHI, and KENJI KORA

         Defendants.

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/2/18

17-CV-2406 (VEC)

ORDER AND OPINION

VALERIE CAPRONI, United States District Judge:

  Plaintiffs, five servers who formerly worked at a pair of ramen restaurants, allege a series of labor violations under federal and state law. Defendants have moved to dismiss the claims as insufficiently pled, while the Plaintiffs seek conditional certification as a collective. The parties also contest what should be included in the notice and order regarding prospective plaintiffs if the Court grants Plaintiffs' motion. For the reasons stated below, Defendants' motion to dismiss is denied, and Plaintiffs' motion for collective certification is granted.

 **I. BACKGROUND**

  According to the Complaint, Plaintiffs are former servers at two jointly-operated cash-only restaurants, owned by different corporate entities but doing business together under the name "Ramen-Ya." First Amended Complaint ("FAC") [Dkt. 34] ¶¶ 10, 13, 18, 40–41, 51–55. Defendant Miho Maki served as a manager for both locations on behalf of the corporate owners; Ms. Maki determined compensation arrangements and work assignments. *Id*. ¶¶ 19–20, 44–45,

63–66.  Plaintiffs allege that Defendant Masahiko Negita is the actual or beneficial owner of one of the restaurants through Ramen-Ya Inc. ("RYI") and that he managed RYI's affairs jointly with Maki.  *Id*. ¶¶ 11, 21, 46.  Negita allegedly regularly visited the location owned by RYI, held meetings with Maki, and took control of cash from the cash registers at the restaurant.  *Id*. ¶ 47.  Plaintiffs allege that on any given day they were scheduled to work at one or both restaurants.  *Id*. ¶¶ 63–66.

Plaintiffs allege that Maki informed them when they were hired that they would be paid solely from tips, with a 20% deduction to pay the kitchen workers and a deduction for whatever food and drink they consumed during the shift.  FAC ¶¶ 67, 69–70.  They further allege that Maki actually deducted more than 20% and used the tip money to cover cash register shortages.  *Id*. ¶ 68.  Plaintiffs allege that Negita knew or approved of this compensation arrangement.  *Id*. ¶ 71.  Additionally, Plaintiffs allege that their employers sought to conceal the improper compensation arrangements by providing four of the named Plaintiffs falsified payroll checks for a portion of the tip earnings described above, with the remainder of their tip earnings being paid in cash.  *Id*. ¶¶ 79–84.  One of the named Plaintiffs received only the cash tips; she did not receive a falsified paycheck.  *Id*. ¶ 87.  Plaintiffs allege that they sometimes worked in excess of forty hours per week without receiving overtime pay, and that, on some days, they worked more than ten hours without receiving spread-of-hours compensation as required by the New York Labor Law ("NYLL").  *Id*. ¶¶ 97–98, 101–02.

Plaintiffs allege various violations of federal and state labor laws, including failure to pay minimum wages, failure to provide pay-rate notices, failure to establish tip sharing and pooling arrangements, failure to maintain accurate and complete records, failure to provide complete and

accurate wage statements, and failure to pay overtime and spread-of-hours compensation. FAC ¶¶ 74–78, 85–86, 88–89, 98, 102.

## II. MOTION TO DISMISS

Defendants Negita and RYI move to dismiss the Complaint.[1] *See* Defendants' Partial Motion to Dismiss Plaintiffs' Amended Complaint ("MTD") [Dkt. 81]. Negita argues that the FAC's allegations are boilerplate and insufficiently specific, and thus fail to state a claim against him. MTD at 6–9; Reply Memorandum in Support of Defendants' Partial Motion to Dismiss Plaintiffs' Amended Complaint ("MTD Reply") [Dkt. 126] at 1–4. RYI contends that the FAC insufficiently alleges joint operation of the two restaurants, and, in effect, that the FAC fails to tie Maki's conduct to the corporate entity that employed her, thus failing to state a claim. MTD at 9–12; MTD Reply at 4–5.[2]

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation

---

[1] Although the caption for the motion indicates that it was also made on behalf of Defendant Maki, because Maki makes no arguments in the motion and because she filed an Answer, the Court construes this motion to have been made only on behalf of Negita and RYI. *See* Maki Answer [Dkt. 54].

[2] Defendants' also initially moved to dismiss the overtime claims but withdrew this argument in their Reply. *See* MTD at 12–13; MTD Reply at 6.

omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the pleadings as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).

To be liable under the Fair Labor Standards Act ("FLSA"), one must be an "employer," which is broadly defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). To limit the broad language of the statute, which "taken literally would support liability against any agent or employee with supervisory power over [other] employees," *Diaz v. Consortium for Worker Educ., Inc.*, No. 10 CIV. 01848 (LAP), 2010 WL 3910280, at *2 (S.D.N.Y. Sept. 28, 2010) (internal quotation marks omitted), courts have examined "whether the alleged employer possessed the power to control the workers in question . . . with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Security Services Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999) (citations omitted), *holding modified on other grounds by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003). In particular, courts consider: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (internal quotation marks and citations omitted).[3] No single factor is dispositive, and courts view these factors in the context of the "totality of circumstances." *Id.* (citation omitted).

---

[3] Courts apply these same factors in determining whether a particular defendant qualifies as an "employer" under the NYLL. *See Jiao v. Shi Ya Chen,* No. 03 Civ. 0165(DF), 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007) ("[C]ourts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA.") (citations omitted); *see also Lopez v. Acme Am. Envtl. Co.*, No. 12 CIV. 511(WHP), 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012) (same) (citation omitted)

### A. The Complaint Sufficiently Alleges a Claim Against Negita

"For an individual to be an 'employer,' . . . there must be more than just evidence that the individual is an owner or officer of a company . . . ." *Salomon v. Adderly Indus., Inc.,* 960 F. Supp. 2d 502, 509 (S.D.N.Y. 2013) (citation omitted). Instead, the "individual defendant must possess control over a company's actual operations in a manner that relates to a plaintiff's employment." *Id.* (citation omitted).

Plaintiffs' FAC includes a variety of allegations against Defendant Negita. He allegedly is an actual or beneficial owner of RYI, which operates one of the restaurants, and exercised authority to create and enforce personnel decisions on behalf of RYI. FAC ¶¶ 10, 11, 21. He allegedly managed the affairs of RYI jointly with Maki, including determining the compensation arrangements. *Id*. ¶ 46. And, more specifically, the FAC alleges that he visited his restaurant on a regular basis, held meetings with Maki, and took money from the cash registers. *Id*. ¶ 47. Negita allegedly "had knowledge of, approved of, and/or required Maki to establish and maintain [the] method of compensating Plaintiffs, and acting through Maki, established and maintained the same method of compensation for all servers employed by Defendants for RYI." *Id*. ¶ 71.

Defendant is correct that boilerplate allegations that simply recite the elements of the economic reality test are insufficient to state a claim. *See, e.g.*, *Tracy v. NVR, Inc.,* 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) ("[M]ere boilerplate allegations that an individual meets the various prongs of the economic reality test . . . without any supporting details—essentially 'a formulaic recitation of the elements of a cause of action'—are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA.") (citing *Twombly,* 550 U.S. at 555). Several of the allegations against Negita

5

are also made verbatim against other Defendants, and some appear to track the elements of the economic reality test. *See, e.g.*, FAC ¶¶ 20–23, 71–72.

The Complaint, however, also contains specifics that adequately, albeit barely, support a claim at this stage of litigation, namely that Negita manages the restaurant jointly with Maki, and that he visits the restaurant regularly, holds meetings with Maki, and takes money from the registers. FAC ¶¶ 46–47. The Complaint does not repeat these allegations as to the other Defendants. Courts in this Circuit have recognized that such additional facts are sufficient to defeat a motion to dismiss. *See, e.g.*, *Leal v. Masonry Services, Inc.,* No. 12CY588 (DLI)(VVP), 2013 WL 550668, at *2–3 (E.D.N.Y. Feb. 12, 2013) (denying a motion to dismiss where, in addition to alleging the bare elements of the economic reality test, the plaintiff alleged that the individual defendants were "owners, principal shareholders, and directors" of the corporate defendants; they "made major personnel decisions and dominated day-to-day operations" and that the plaintiff worked at their direction). Defendants attempt to obscure the relationships amongst them, arguing that Maki, the alleged manager, is a purported owner, and Negita, the alleged owner-manager, was merely exercising bookkeeping duties in visiting to the restaurant and in removing money from the registers. MTD Reply at 2. These, and Defendants' other arguments, are unavailing at this stage of the litigation. Looking at the FAC, and drawing all reasonable inferences in the Plaintiffs' favor, the Court finds that the FAC sufficiently states a claim against Negita. Accordingly, his motion to dismiss is denied.

### B. The Complaint Sufficiently Alleges a Claim Against RYI and that RYI is a Joint Employer

Pursuant to the FLSA, "if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers

during the workweek is considered as one employment for purposes of the Act." 29 C.F.R. § 791.2(a). "Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist," such as when the employers share the employees' services. 29 C.F.R. § 791.2(b). Additionally, when a manager acts as an agent for a corporate employer, his actions may be attributed to a corporate entity for FLSA purposes. *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 942 (S.D.N.Y. 2013) ("[Langan] would act to address problems at underperforming subsidiaries . . . . This testimony would give a jury a basis to conclude that it was on behalf of the corporate parents, not just Peregrine, that Langan took steps with regard to employment and other relevant policies and practices at Rick's NY. It is a question of fact for the jury . . . as to which defendant entity or entities Langan was acting on behalf of when he thus acted with regard to Rick's NY."); *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 351 (E.D.N.Y. 2015) ("Choice's operations manager, Onah, hired and supervised the company's security guards, including determining their pay, assigning them to work sites, setting their work hours and 'everything related to the security guards.' . . . Because Onah was Choice's agent, his alleged control over the security guards is attributable to Choice.").

Plaintiffs' FAC includes a variety of allegations as to RYI, which show that it jointly employed the Plaintiffs, and that Maki's actions can be attributed to it. RYI is a New York corporation that, allegedly, does business under the name "Ramen-Ya" with a restaurant owned by another corporate Defendant, Y&S International; Maki allegedly worked for both entities at their respective restaurants. FAC ¶¶ 10, 13, 18–19, 44–45. Specifically, "Maki had the discretionary authority to create and enforce personnel decisions on behalf of RYI and Y&S,

operating as Ramen-Ya, and Maki did exercise such discretionary authority . . . ." *Id*. ¶ 20. The two restaurants are presented to the public as two Ramen-Ya locations, including on a single, shared website.[4] *Id*. ¶¶ 40–41. Each week, Maki, acting on behalf of the other Defendants, assigned servers to work shifts at one or both restaurants, including assigning an employee to work shifts at both restaurants in a single day. *Id*. ¶¶ 63–66, 97, 101.

The FAC adequately alleges that the restaurants jointly employed the Plaintiffs, in that the two restaurants shared employees who were assigned by the same manager to work at one or both locations on a given day, and the restaurants were presented to the public as two locations of the same enterprise. And the FAC also adequately alleges that Maki, in making such assignments and directing the Plaintiffs' compensation, was acting on RYI's behalf as its agent, such that RYI is also properly a Defendant at this stage of the action. Accordingly, RYI's motion to dismiss is denied.

### III. MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE

Plaintiffs move for conditional certification of a collective action and to send notice to the putative members of the collective. *See* Memorandum of Law in Support of Plaintiffs' Motion to Conditionally Certify a FLSA Collective Action and Send Notice to Members of the Collective ("Collective Mem.") [Dkt. 47]; Proposed Collective Notice and Consent Forms ("Proposed Notice" or "Proposed Notice and Consent") [Dkt. 46-1]; Proposed Collective Notice Order ("Proposed Order") [Dkt. 46-2]. Plaintiffs allege, *inter alia*, that the five Plaintiffs were not paid minimum wage, were not paid overtime compensation, and did not receive their full tips left by

---

[4] "[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Volpe v. Am. Language Commc'n Ctr., Inc.*, 200 F. Supp. 3d 428, 430–31 (S.D.N.Y. 2016), *aff'd*, 692 F. App'x 51 (2d Cir. 2017) (internal quotation marks and citations omitted).

customers. Collective Mem. at 3–4. They allege that other servers were compensated in the same improper manner as they were and suffered from the same FLSA violations. *Id*. at 4–6. They also supplemented their initial brief with additional arguments and evidence that other servers suffered similarly. *See* Reply Memorandum of Law in Support of Plaintiffs' Motion to Conditionally Certify a FLSA Collective Action ("Collective Reply") [Dkt. 71] at 1–5.

Defendants oppose conditional certification of a collective. *See* Defendants' Opposition to Plaintiffs' Motion for Conditional Certification ("Collective Opp.") [Dkt. 61] at 6–11. Defendants also propose a number of revisions to Plaintiffs' Proposed Notice and Proposed Order and object to Plaintiffs' proposed timeline for providing notice.[5] *See* Collective Opp. at 11–13. Additionally, the Court permitted Defendants to file a sur-reply, in which they, *inter alia*, asked the Court to strike the additional affidavits that Plaintiffs attached to their Reply, and argued that the new evidence still does not support certification of a collective. *See* Order, November 3, 2017 [Dkt. 80]; Defendants' Sur-Reply in Opposition to Plaintiffs' Motion for Conditional Certification ("Collective Sur-reply") [Dkt. 82] at 1–8.

### A. Plaintiffs Have Met Their Modest Burden in Support of Conditional Certification

The FLSA permits employees to maintain an action "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). In determining whether to certify a collective action, courts in the Second Circuit use a two-step process. *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010). At the "notice stage," plaintiffs must establish that other employees "may be 'similarly situated'" to them. *Id.* at 555 (citations omitted). To meet this burden, plaintiffs need only "make a modest factual showing that they and potential opt-in

---

[5] Defendants' argument regarding Defendant Kora's lack of counsel is moot, as he now is represented. *See* Notice of Appearance [Dkt. 104].

plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (internal quotation marks and citation omitted). While plaintiffs' burden is modest, "it is not non-existent," *Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518(JMF), 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (citations omitted), and generally cannot be satisfied by "unsupported assertions." *Myers*, 624 F.3d at 555 (citation omitted). Nonetheless, courts employ a "low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (emphasis in original) (citation omitted). At this first stage, therefore, courts do not examine "whether there has been an actual violation of law . . . ." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citing *Krueger v. N.Y. Tel. Co.*, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists.")).

At the second stage, when the court has a more developed record, the named plaintiffs must prove that "the plaintiffs who have opted in are *in fact* similarly situated to the named plaintiffs." *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3964(PAE), 2014 WL 5314822, at *2 (S.D.N.Y. Oct. 16, 2014) (quoting *Myers*, 624 F.3d at 555) (emphasis from *She Jian Guo*). The action may be "'de-certified' if the record reveals that [the opt-in plaintiffs] are not [similarly situated], and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555 (citations omitted).

The Court is satisfied that Plaintiffs have met their modest burden of showing that they and other servers suffered from the same improper compensation practices. The allegations in the FAC, discussed above, cite a variety of potential federal labor violations, and Plaintiffs' briefs and supporting affidavits suggest that other servers were treated similarly. In particular, the Plaintiffs' affidavits cite specific evidence regarding other servers who were allegedly paid in

the same way that they were: these other servers were, *inter alia*, paid from their tips and not in wages from restaurant revenues, with a portion of the tips being deducted for kitchen staff; in some cases the servers were given falsified paychecks that amounted to part of their tips, with the rest of their tips paid in cash, while others only received tips paid in cash; and in at least some cases other servers did not receive overtime compensation. *See* Collective Reply at 3–4; Declaration of Ornrat Keawsri ("Keawsri Decl.") [Dkt. 72] ¶¶ 16, 17, 19, 22, 24; Declaration of Pimparat Ketchatrot ("Ketchatrot Decl.") [Dkt. 73] ¶¶ 20–22, 27; Declaration of Siwapon Topon ("Topon Decl.") [Dkt. 74] ¶¶ 10, 16, 19, 21. The fact that some servers may have received falsified paychecks and cash while others only received cash is not a sufficient ground on which to deny a conditional collective, because the alleged compensation scheme and pay calculation was purportedly the same for all servers.

As noted above, the FAC adequately alleges that the restaurants operated together and jointly employed the servers such that Notice should be sent to current and former employees of both restaurants. That the servers in the collective may also have claims under state labor law does not change the Court's decision; the alleged violations of federal labor law are the basis for the conditional collective certification. The Court rejects Defendants' arguments that it need not disclose contact information because Plaintiffs have, as noted above, met their modest burden at this stage, and Courts require Defendants to provide contact information to facilitate notice. *See, e.g.*, *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) ("Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action.") (quoting *Martin v. Sprint/united Mgmt. Co.*, No. 15 CIV. 5237 (PAE), 2016 WL 30334, at *19–20 (S.D.N.Y. Jan. 4, 2016) (collecting cases)). As

for equitable tolling, Plaintiffs have not sought equitable tolling for any prospective additional plaintiffs, so this point is premature.

Defendants' motion to strike is also denied because they were permitted to file a sur-reply and will have additional opportunity to challenge collective certification, and thus they have not been prejudiced by court's consideration of the affidavits that were attached to the Plaintiffs' Reply.  *See, e.g.*, *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) ("Nevertheless, Joe's Jeans has suffered no prejudice because it has submitted a surreply and also had the opportunity to present evidence at the evidentiary hearing.  Therefore, I will consider Joe's Jeans' surreply and will not strike Mr. Sadiqulla's affidavit.") (citing *Toure v. Central Parking Systems of New York,* No. 05 Civ. 5237, 2007 WL 2872455, at *2 (S.D.N.Y. Sept. 28, 2007) (allowing new argument in reply where non-moving party submitted surreply)).

### B.  The Parties Must Confer and Revise the Proposed Notice and Order

"The form of notice and its details are left to the broad discretion of this Court."  *Ramos v. Platt*, No. 1:13-CV-8957-GHW, 2014 WL 3639194, at *5 (S.D.N.Y. July 23, 2014) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("We confirm the existence of the trial court's discretion, not the details of its exercise.")).  The Court finds that revisions must be made to the Proposed Notice and Order, but many of Defendants' objections are meritless.

First, Plaintiffs argue that the Proposed Notice should be provided to former employees who worked at the restaurants as early as 2013, when the first restaurant opened.  Collective Reply at 7 & n.11.  FLSA claims have a statute of limitations period of two years, which is extended to three years in the case of a willful violation.  29 U.S.C. § 255(a).  Accordingly, because FLSA provides the basis for the collective certification, the Proposed Notice may only reach back to employees who worked as a server three years prior to the commencement of this

action. While some courts in this Circuit have permitted FLSA notices to reach back six years, which is the statute of limitations period for NYLL claims, not all courts do. *Compare Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410–11 (S.D.N.Y. 2012) *with Iriarte v. Cafe 71, Inc.*, No. 15 CIV. 3217 (CM), 2015 WL 8900875, at *5 (S.D.N.Y. Dec. 11, 2015) ("Some courts in this Circuit have apparently also granted six year notice periods citing the economy of providing notice to plaintiffs with FLSA claims who may also have NYLL claims subject to a six-year statute of limitations. . . . However, many other courts only permit the sending of § 216(b) notice to employees who fall in the three year window, citing, (1) the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations and (2) the inefficiency of providing notice to plaintiffs whose claims may well be time-barred.") (citations omitted). This Court finds that the Proposed Notice should utilize the three-year period and be provided only to employees who worked at the restaurants after April 3, 2014 (three years prior to the original Complaint's filing date, *see* Complaint [Dkt. 1]).[6]

Next, the Court finds that the references in the Notice and the Consent to NYLL claims should be removed.[7] Although decisions have gone both ways in this Circuit, *see, e.g.*, *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 612 (S.D.N.Y. 2016) ("[T]he proposed notice's references to the NYLL and to plaintiffs' other non-FLSA claims are apt to confuse

---

[6] While the three-year notice period is normally tied to the date of the Notice, "courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Alvarado Balderramo v. Taxi Tours Inc.*, No. 15 CIV. 2181 (ER), 2017 WL 2533508, at *6 (S.D.N.Y. June 9, 2017) (citations omitted).

[7] *See* Proposed Notice at 2 ("The lawsuit also claims that, in violation of the New York Labor Law ('NYLL'") and the New York Hospitality Wage Order (the 'Wage Order'), Defendants failed to pay minimum wage, overtime wages, failed to pay tips to tip-eligible employees, and failed to make other wage payments required by those laws."), 8 ("The defendants are prohibited by law from taking any retaliatory action against any person, including a current employee, who joins this lawsuit, or have in any other way exercised rights under the FLSA or the NYLL.").

potential plaintiffs about the nature of this action. . . . Therefore, the Court directs plaintiffs to edit the notice so that it refers only to plaintiffs' unpaid overtime claim under the FLSA."); *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360 RRM LB, 2012 WL 4369746, at *8 (E.D.N.Y. Sept. 24, 2012) (finding that inclusion of state law claims in FLSA notice was appropriate), this Court believes the references to state claims may be confusing and are, in any event, superfluous. Accordingly, the Proposed Notice and Consent must be revised to remove the references to the NYLL.

Third, the Notice may include references to immigration status[8] and to anti-retaliation laws.[9] Furthermore, the Notice properly instructs prospective plaintiffs to return their forms to Plaintiffs' lawyers; courts in this District permit this practice when the notice informs prospective plaintiffs that they may retain their own counsel, which the Proposed Notice does.[10] *See* Proposed Notice at 4.

---

[8] *See, e.g.*, *Gomez v. Terri Vegetarian LLC*, No. 17-CV-213 (JMF), 2017 WL 2628880, at *3 (S.D.N.Y. June 16, 2017) ("[T]he Notice should be modified to advise recipients that their immigration status does not affect their entitlement to recover back wages or to participate in the lawsuit and that they have a right to participate in the action even if they are undocumented immigrants."); *Sanchez v. El Rancho Sports Bar Corp.*, No. 13 CIV. 5119 RA, 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014) ("[I]mmigration status is irrelevant to a plaintiff's right to recover under the FLSA. . . . Accordingly, Plaintiffs' proposed language regarding immigration status may be included in the notice.") (citations omitted).

[9] *See, e.g.*, *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015) ("A statement concerning the prohibition on retaliation, such as the one proposed here, is appropriate.") (citation omitted); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 169–70 (S.D.N.Y. 2014) ("The proposed notice appropriately includes . . . the prohibition against retaliation . . . .") (citation omitted).

[10] *See, e.g.*, *Kucher v. Domino's Pizza, Inc.*, No. 16-CV-2492 (AJN), 2017 WL 2987216, at *3 (S.D.N.Y. May 22, 2017) ("The Court will allow the notice to direct putative plaintiffs to return consent forms to Plaintiffs' counsel. Plaintiffs' counsel will be in a better position to answer potential questions by putative members of the collective. Further, the notice clearly states that a putative plaintiff need not retain Plaintiffs' counsel, a factor which mitigates any problems associated with having consent forms returnable to Plaintiffs' counsel.") (citations omitted); *Benavides*, 166 F. Supp. 3d at 486 ("[T]he Court is now of the view that, as long as the notice makes explicit that opt-in plaintiffs can retain their own counsel if they choose, as the proposed notice here does, then it is acceptable and less cumbersome to have opt-in notices sent directly to plaintiff's counsel."); *Martin*, 2016 WL 30334, at *18 ("The majority of courts, however, have directed opt-in plaintiffs to mail the consent forms to plaintiffs' counsel.") (citations omitted).

As for the Proposed Order and the deadline for Defendants to gather and produce the information requested by Plaintiffs, the Court finds that neither party's position is reasonable. *See* Collective Opp. at 13. The Court finds that 21 days to gather and produce the requested information is appropriate. Additionally, Plaintiffs have consented to Defendants' request to be given seven days to post the proposed Notice and Consent forms, which the Court agrees is appropriate. *See* Collective Opp. at 13; Collective Reply at 10.

Lastly, the Court finds other revisions not raised by the parties should be made. In the Proposed Notice, the words "wages or tips" should be deleted from the sixth line of the paragraph on page 1 that begins with "To:". In the Consent, the final sentence should be revised to make clear that the amount of attorneys' fees payable to plaintiffs' counsel will be approved by the Court. *See* Proposed Notice at 1, 7.

The parties are instructed to meet and confer on the Proposed Notice and Order, and jointly submit revised versions in accordance with the Court's ruling no later than January 19, 2018. To the extent that the parties have irreconcilable disagreements on the materials, they may supply brief statements as to those specific points in a joint letter describing the basis for the disagreement.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is denied; Plaintiffs' motion to conditionally certify a collective is granted; and the parties are instructed to jointly revise the Proposed Notice and Order. The Clerk of Court is instructed to terminate Docket Entries 45 and 81.

**SO ORDERED.**

**Date: January 2, 2018**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**