**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
ORNRAT KEAWSRI, et al.,

        Plaintiffs,

        -against-

RAMEN-YA INC., et al.,

        Defendants.
-----------------------------------------------------------x

17-CV-2406 (LJL) (OTW)

**MEMORANDUM OPINION**
**& ORDER**

**ONA T. WANG, United States Magistrate Judge:**

Before the Court are two motions by Plaintiffs: (1) a motion for leave to amend the complaint and file a Third Amended Complaint (ECF 327, see ECF 328-1 for Proposed Third Amended Complaint ("PTAC")); and (2) a motion for an order of attachment against Defendants Masahiko Negita and Toshihito Kobayashi (ECF 273). Both motions are opposed.[1] For the reasons stated below:

- the motion for leave to file a Third Amended Complaint is **GRANTED IN PART** to the extent it adds Yasuko Negita as a defendant and **DENIED IN PART** to the extent it adds additional claims; Plaintiffs are directed to file the PTAC without the proposed Eighth and Ninth claims within fourteen (14) days of this Order, *i.e.* **by August 19, 2020**; and

- (2) the motion for an order of attachment is **DENIED**.[2]

---

[1] Defendants Y&S, Kenji Kora, and Toshihito Kobayashi are represented by Howard C. Chun, Esq. Defendants RYI, Miho Maki, and Masahiko Negita (collectively, the "RYI Defendants") are represented by Vikrant Pawar, Esq. Defendants Y&S, Kora, and Kobayashi did not oppose the motion for leave to amend.

[2] Plaintiffs did not file a letter seeking a pre-motion conference before filing these motions. The Court could deny both these motions to failure to comply with the Court's Individual Practices. Going forward, if any party files a motion without complying with the Court's Individual Practices as well as those of the District Court, the motion will be denied.

I. **Background & Procedural History**

This action is a Fair Labor Standards Act ("FLSA") action with related New York State Labor Law ("NYLL") claims. Plaintiffs are former employees of Ramen-Ya Inc. ("RYI") and Y&S International Corp. d/b/a Ramen-Ya ("Y&S"), which "have operated and continued to operate restaurants as a single or joint employer under the trade name Ramen-Ya." (ECF 182 SAC ¶ 1). Defendants Kobayashi and Kora are purportedly the owners and managers of Y&S. *Id.* Defendant Maki is purportedly "responsible for the management and operation of Ramen-Ya." *Id.* Defendant Negita ("Mr. Negita") is purportedly an actual or beneficial owner and manager of RYI. (ECF 182 SAC ¶ 19). Defendant Nakanishi was dismissed from the action pursuant to settlement. (SAC at 1). The District Court (Caproni, J.) denied Defendant's motion to dismiss the amended complaint and granted Plaintiffs' motion for collective certification. (ECF 130). Plaintiffs filed a Second Amended Complaint, adding additional servers in September 2018. (ECF 182). The action was referred to this Court for general pretrial supervision in December 2018. (ECF 197).[3] On February 4, 2020, this case was reassigned to the Hon. Lewis J. Liman.

The procedural history of discovery in this action is tortuous. A review of the docket reveals a plethora of discovery disputes. As relevant to the instant motions, Plaintiffs first received in May 2019 the RYI and Y&S tax returns showing both that there were payments from RYI and Y&S to Yasuko Negita ("Ms. Negita"), Mr. Negita's spouse, and Ms. Negita was an

---

[3] Courts in this circuit generally treat motions to amend as non-dispositive pre-trial motions. *See, e.g.*, *Kilcullen v. New York State Dep't of Transp.*, 55 F. App'x 583, 584 (2d Cir. 2003) (referring to motion to amend as a non-dispositive matter that may be referred to a magistrate judge for decision pursuant to 28 U.S.C. ¶ 636(b)(1)A)); *Marsh v. Sheriff of Cayuga Cty*, 36 F. App'x 10 (2d Cir. 2002) ("[T]he magistrate judge acted within his authority in denying this motion to amend the complaint"); *Lyondell-Citgo Refining, L.P. v. Petroleos De Venezuela, S.A.*, No. 02-cv-795 (CMB), 2005 WL 883485 (S.D.N.Y. Apr. 14, 2005) (reviewing magistrate's decision on motion to amend under clearly erroneous standard).

owner of RYI. (ECF 340; *see also* ECF 295 ("Per RYI's tax records . . . , Ms. Negita was and, upon information and belief, is the sole owner and president of RYI."). Plaintiffs then subpoenaed Ms. Negita for documents and testimony in June 2019. (ECF 257 and 343 citing ECF 295-3, 295-1). Ms. Negita did not produce documents by the return date and failed to show for her deposition twice. (ECF 295, 343). Plaintiffs eventually moved to compel Ms. Negita's compliance with the document and deposition subpoenas. The Court ordered on August 6, 2019 that Ms. Negita's deposition take place on August 28, 2019 (she was not deposed until November 13, 2019). (ECF 279). Soon after that, Plaintiffs deposed Defendants Kora and Maki (on September 20, 2019 and October 7 & 8, 2019, respectively), who both testified regarding Ms. Negita's role at the restaurants.

Plaintiffs moved to attach the properties of Defendants Negita and Kobayashi in August 2019 on the grounds "that Defendants do not appear to have sufficient assets in New York to satisfy the judgment that may be entered against them, and there is a substantial concern that Defendants may not honor a judgment for Plaintiffs in this action." (ECF 273, 274, 275, and 310). Part of Plaintiffs' argument rested on the allegation that Mr. Negita was improperly transferring assets to Ms. Negita. (ECF 275).

Plaintiffs later moved to amend the complaint to add Ms. Negita as a defendant, and to add two claims – an eighth claim for violation of New York Debtor and Creditor Law ("DCL") § 273-A and a ninth claim for violation of DCL § 276. (ECF 328-2). The PTAC also adds Ms. Negita to the existing FLSA and NYLL claims.

3

II.     **Motion for Leave to Amend the Complaint**

The PTAC claims that RYI and Y&S have been paying "substantial amounts of money, disguised as salary" to Ms. Negita, who "did not perform any services for RYI or for Y&S for which she would be entitled to receiving [sic] compensation throughout the years 2014 through 2018, and thereafter." (ECF 328-2 PTAC ¶¶ 149, 164). The reason for the payments to Ms. Negita, according to Defendant Kora, was that "although Ms. Negita was not performing any work for either entity, the compensation paid to her was needed to balance hiring [undocumented] immigrants in connection with reporting taxes," and Plaintiffs claim that "Ms. Negita and [Mr.] Negita manipulated the payments made to Ms. Negita by RYI and Y&S for improper purposes, to limit the assets of RYI and Y&S to be available for payment to Plaintiffs and other employees, and to evade their legal obligations to Plaintiffs in this lawsuit." (ECF 328-2 PTAC ¶¶ 165, 171; *see also* PTAC ¶ 176). The PTAC further details the amounts paid to Ms. Negita and adds additional allegations of financial discrepancies in RYI's and Y&S's books. (ECF 328-2 PTAC ¶¶ 158-160, 166-70, 172, 174).

Plaintiffs argue that they moved to add Ms. Negita and the additional claims as soon as they obtained the facts in discovery to do so. (ECF 328). The RYI Defendants oppose, arguing that the amendments are untimely, unduly prejudicial, and futile. (ECF 340).

Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P 15(a)(2). Applying that standard, the Second Circuit "has held that a Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404

F.3d 566, 603 (2d Cir. 2005) (per curiam) (internal quotation marks omitted). Rule 16(b)(4) of the Federal Rules of Civil Procedure also requires "good cause" for an amendment once a scheduling order is in place and the time for amendment has passed. *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009). The "primary consideration" under Rule 16(b)'s requirement of "good cause" is whether the moving party can demonstrate diligence. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

### A. There is No Undue Delay in Amending

Delay, without a showing of bad faith or undue prejudice, does not alone provide a basis for a district court to deny the right to amend. *See Agerbrink v. Model Service LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (quoting *State Teachers Retirement Bd. V. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). The RYI Defendants assert that Plaintiffs could have brought the claims against Ms. Negita earlier, (ECF 340 at 5-6), but for the reasons below, I find that Plaintiffs timely moved to amend the complaint after obtaining evidence to support adding Ms. Negita.

First, Plaintiffs initially sought discovery regarding Ms. Negita in mid-2019, because tax documents produced in May 2019 showed "substantial payments" made to Ms. Negita. (*See* ECF 257 affidavit of service of subpoena served on Ms. Negita; ECF 290 (June 19, 2020 Tr. 15:11-20)).

Second, Ms. Negita (and Defendants) did not timely respond to Plaintiffs' discovery demands. (*See* ECF 279, 303, 323). The Court had to order Ms. Negita's deposition. (ECF 323).

5

Plaintiffs did not depose Ms. Negita until November 13, 2019, fourteen days *after* Plaintiffs filed the motion for leave to amend adding Ms. Negita as a defendant. (ECF 343-5).[4]

Lastly, as no party disputes, Ms. Negita did not frequent the restaurants during working hours, making it unlikely that Plaintiffs would have known to add her as a defendant originally.

Accordingly, the RYI Defendants have not demonstrated any bad faith on the part of Plaintiffs.

### B. The Amendments Do Not Prejudice Defendants

"In deciding whether [undue] prejudice exists, courts evaluate whether the amendments would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Agerbrink*, 155 F. Supp. 3d at 454 (quoting *Monahan v. New York City Dept' of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000)). "Courts also consider the particular procedural posture of the case." *Id.* (citing *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008)).

None of the RYI Defendants' arguments meet the threshold for undue prejudice to the existing Defendants. (ECF 340 at 6). Regarding prejudice to Ms. Negita, the RYI Defendants argue that because she is represented by the same law firm that represents the current-RYI Defendants, there are conflicts of interest. This argument fails. First, if conflicts of interest exist between Ms. Negita and the current RYI Defendants, the onus would be on RYI Defendants' counsel to properly advise Ms. Negita, during their representation of her for discovery, that

---

[4] In support of their bad faith argument, the RYI Defendants argue incorrectly that Plaintiffs waited until after Ms. Negita's deposition to add her as a defendant, but motion was filed on October 30, 2019 and Ms. Negita was not deposed until November 13, 2019. (ECF 240).

6

they represented the Defendants and that their primary duty is to the Defendants. *See* N.Y. Rules of Prof'l Conduct Rule 1.7, Rule 1.18 (2017). Second, if there are conflicts of interests in RYI Defendants' counsel representing both Ms. Negita and the existing RYI Defendants in the litigation, it is counsel's duty to withdraw from one or both representations. *See id*. The Negitas' choice of counsel – whether or not it was fully informed – cannot be used to foreclose Plaintiffs' decision to implead a defendant.

The RYI Defendants also argue that the amendment would further prejudice Ms. Negita because discovery, at the time of filing, was about to close. Ms. Negita was deposed on November 13, 2019, and Plaintiffs do not argue that they seek additional discovery from Ms. Negita. Discovery closed on July 13, 2020. (ECF 366). The argument is moot.

### C. Futility

The party opposing a motion to amend bears the burden of establishing that amendment would be futile. *See, e.g.*, *Ouedraogo v. A-1 Int'l Courier Serv., Inc.,* No. 12-CV-5651 (AJN), 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013). An amendment is not "futile" if it could withstand a motion to dismiss under Rule 12(b)(6). *See, e.g., Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162, 185 (2d Cir. 2012); *Agerbink*, 155 F. Supp. 38 at 456. Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

The RYI Defendants argue that the Eighth and Ninth Causes of Action against the Negitas for violations of DCL § 273 and § 276, respectively, should be rejected on the grounds that amendment would be futile. The RYI Defendants do not argue that adding Ms. Negita to the

7

FLSA and NYLL causes of actions (claims one through seven) would be futile.[5] The DCL claims, however, would likely be dismissed in a Rule 12(b)(6) motion, making amendment futile. Accordingly, the motion for leave to amend is granted in part and denied in part.

### i. New York Debtor and Creditor Law § 273, transfer or obligation voidable as to present or future creditor

To survive a Rule 12(b)(6) motion and the futility threshold, Plaintiffs must plead facts that suggest "if a conveyance is made without fair consideration and the transferor is a debtor who is insolvent or will be rendered insolvent by the transfer, the conveyance is deemed constructively fraudulent." *Amusement Industry, Inc. v. Midland Ave. Assoc., LLC*, 820 F. Supp. 2d 510, 526 (S.D.N.Y. 2011) (quoting *Capital Distributions Servs. Ltd. v. Ducor Express Airlines, Inc.*, 440 F. Supp. 2d 195, 203 (E.D.N.Y. 2006)). Claims under DCL § 273 are governed by Rule 8(a) and do not require pleading with particularity, *i.e.* a showing of intent. *See Ray v. Ray*, No. 18-cv-7035 (GBD), 2019 WL 1649981, at *6 (S.D.N.Y. Mar. 28, 2019) (citing *Picard v. Cohman*

---

[5] Because the RYI Defendants do not argue the FLSA and NYLL claims are futile as alleged against Ms. Negita, I will only briefly discuss summarize the allegations against her. In short, Plaintiffs allege that Ms. Negita is an "employer" because she

> had the discretionary authority to create and enforce personnel decisions on behalf of RYI and Y&S, operating as Ramen-Ya, and did exercise such authority, including but not limited to: hiring and terminating employees, setting wages, authorizing issuance of wages, maintaining employee records, and otherwise controlling the terms and conditions of employment for all Plaintiff and other employees of RYI and Y&S. (ECF 328-2 PTAC ¶ 35).

Additionally, Plaintiffs allege that "[o]n a regular basis during the [p]eriod pertinent to this action, Ms. Negita visited Ramen-Ya . . ., held meetings with Maki, discussed employment matters including employment wages, and took control of the funds in the cash registers and tips of that restaurant several times a week." (ECF 328-2 PTAC ¶ 65; see also ¶¶ 66, 157, 163 (additional allegations of Ms. Negita's duties)). Plaintiffs further allege that Ms. Negita devised the compensation method by which the Plaintiffs were denied wages and tips. (ECF 328-2 PTAC ¶¶ 99-106).

*Sec. Corp.* (*In re Bernard L. Madoff Inv. Sec. LLC*), No. 11-misc-337 (TPG), 2012 WL 5511952, at *3 (S.D.N.Y. Nov. 14, 2012)).

Plaintiffs fail to plead that there was a conveyance made without fair consideration. For precisely the reason that their FLSA and NYLL claims state a claim, the DCL § 273 claim fails (and Plaintiffs do not plead the claims in the alternative): Ms. Negita is an employer. Plaintiffs claim that "[Mr.] Negita and Ms. Negita conveyed substantial sums of money disguised as remuneration from RYI and from Y&S to Ms. Negita which were not legitimate wage payments since Ms. Negita did not render any services for the wages she received." (ECF 328-2 PTAC ¶ 248). These allegations, however, conflict with Plaintiffs' allegations that Ms. Negita is a manager and made personnel decisions, such as the amount of compensation, for the employees of the restaurants. *See, e.g.*, ECF 328-2 PTAC ¶ 65 (Ms. Negita "discussed employment matters including employment wages, and took control of the funds in the cash registers and tips"), ¶¶ 99-106 (allegations that Ms. Negita determined the server's compensation and deducted from the compensations). Plaintiffs have not pleaded facts showing that there was no fair consideration for the services that Ms. Negita, the owner of RYI and a manager of the restaurants, allegedly provided. Accordingly, Plaintiffs do not plead the required elements of a DCL § 273 claim, which requires "a conveyance [ ] made without fair consideration." [6] *See Amusement Industry*, 820 F. Supp. 2d at 526; *cf. Liu v. Chan*, No. 18-cv-5044 (KAM) (SJB), 2020 WL 978857, at *12 (E.D.N.Y. Feb. 28, 2020) (upholding a DCL 273 claim where plaintiff alleged a post-litigation transfer of assets by defendants).

---

[6] Both Plaintiffs and Defendants use evidence gathered in discovery to support their arguments. Because a Rule 12(b)(6) motion is limited to the complaint, the Court did not consider that evidence.

Plaintiffs also do not allege any facts that establish RYI and Y&S are insolvent, *i.e.* unable to pay debts, or were rendered insolvent by the transfers to Ms. Negita. *See Kim v. Yoo*, 776 F. App'x 16, 22 (2d Cir. 2019) ("DCL § 271, which defines insolvency for the purposes of DCL § 273, sets forth an objective standard: 'A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on existing debts as they become absolute and matured.'"). Plaintiffs state that "[u]pon information and belief, the payments made to Ms. Negita by RYI and Y&S for each year between 2014 and 2017 was close to or equal to the amount of retained cash for each entity at the end of each year" and "Ms. Negita and her husband emptied the coffers of RYI and Y&S of all available cash." (ECF 328 PTAC ¶¶ 174, 176). However, Plaintiffs do not plead any facts that RYI and Y&S would be unable to pay their liabilities on debts due or would be unable to pay because of the cash transfer(s). *See Amusement Industry*, 820 F. Supp. 2d at 526 (debtor needs to either be insolvent or rendered insolvent by the transfer).

### ii. New York Debtor and Creditor Law § 276, conveyance made with intent to defraud

DCL § 276 requires that defendants had "actual intent, as distinguished from intent presumed in law, to hinder, delay, or default either present or future creditors." *See Sullivan v. Kodsi*, 373 F. Supp. 3d 302, 306 (S.D.N.Y. 2005); *see also Qingdao*, 2020 WL 1435218, at *10 (granting motion to dismiss DCL § 276 claim against most defendants for failure to state a claim). Rule 9(b)'s heightened particularity standards requires that the "complaint must specify the 'particulars' of the alleged fraud—including, for example, the time, place, particular individuals involved, and specific conduct at issue. *Sullivan*, 373 F. Supp. 2d at 306 (citing *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y.

2002)). Claims under DCL § 276 are governed by Rule 9(b) and require pleading with particularity. *See Qingdao Tangbo Garments Co., Ltd. v. PRG Nouveau, LLC*, 2020 WL 1435218, at *3 (S.D.N.Y. Mar. 24, 2020) ("[Plaintiff's] claim of fraudulent transfer under section 276 of the New York Debtor and Creditor Law … must be pleaded with the particularity required of Rule 9(b).") (internal citations omitted); *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 306 (S.D.N.Y. 2005) (denying motion to dismiss DLC § 276 claim). Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, plaintiffs may rely on "badges of fraud," or "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Qingdao*, 2020 WL 1435218, at *4 (denying motion to dismiss DLC § 276 to all defendants for whom plaintiff identified badges of fraud) (citing *Wall St. Assoc. v. Brodsky*, 257 A.D.2d 526, 529 (1st Dep't 1999)). Badges of fraud include, *inter alia*, "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; . . . and retention of control of the property by the transferor after the conveyance." *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (citing *Wall St. Ass. v. Brodsky*, 257 A.D.2d 526, 529 (1st Dep't 1999)).

Plaintiffs' proposed DCL § 276 claim, which has a higher pleading standard, fails for the same reasons their § 273 claim fails.[7] Plaintiffs cannot have their proverbial cake and eat it too: allege FLSA and NYLL claims against Ms. Negita, claiming she is an employer and made employment decisions, but also claim that she did not provide fair consideration for her compensation. Courts that have upheld a DCL claim in conjunction with an FLSA claim have all

---

[7] The New York Legislature enacted the Uniform Voidable Transactions Act Amendments in 2019 ("UVTA") and repealed Article 10 (§§ 270-281) of New York's DCL. The UVTA governs acts after April 4, 2020, and do not apply to alleged acts herein.

11

required pleading more than plaintiffs' belief that a purported employer was provided compensation beyond what the plaintiffs claim is fair. *See e.g.*, *Liu*, 20202 WL 978857, at *2 (defendant transferred "all [his] assets" to specifically avoid judgment in the instant action); *Kim v. Yoo*, 311 F. Supp. 3d 598, 602 (S.D.N.Y. 2018) (FLSA judgment debtor transferred real property interests to family members). Accordingly, Plaintiffs have not pleaded fraud or badges of fraud.

### III. Motion for Attachment

Rule 64 of the Federal Rules of Civil Procedure provides that the remedy of attachment is governed by state law.[8] The relevant New York statute is CPLR Section 6212, which states that to be successful on a motion for attachment, a plaintiff must demonstrate "[1] that there is a cause of action, [2] that it is probable that the plaintiff will succeed on the merits, [3] that one or more grounds for attachment provided in Section 6201 exist, and [4] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." *See In re Amaranth Nat. Gas Comm. Litig.*, 711 F. Supp. 2d 301, 305 (S.D.N.Y. 2010) (citing CPLR § 6212(a)). Plaintiffs argue that CPLR 6201(1), which states "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state," applies.

Because attachment is a harsh remedy, Plaintiffs' burden of proving a right to attachment is high and construed against those seeking attachment. Further, attachment is discretionary to the trial court. *See id.*; *DLJ Mortg.*, 594 F. Supp. 2d at 319 (denying attachment

---

[8] Rule 72(a) governs any objections. *See Eviner v. Eng*, No. 13-cv-6940 (ERK), 2015 WL 4461022, at *1 (E.D.N.Y. 2015).

because plaintiffs failed to demonstrate the probability of success on the underlying claims); *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007) (same). However, "where a statutory ground for attachment exists and both need and likelihood of success are established, [a district court's] discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances and perhaps [not] even then." *In re Amaranth Natural Gas Commodities Litig.,* 711 F. Supp. 2d at 305-06 (alterations in original).

For the reasons stated below, Plaintiffs' motion is denied at this time because Plaintiffs have not shown that one or more grounds for attachment in CPLR 6201 exist. Because the requirements for attachment are conjunctive, I need not analyze whether Plaintiffs are likely to succeed on the merits.

**A. Plaintiffs Have Not Shown the Need for "Drastic Action" Under CPLR 6201(1)**

Where a nonresident has consented to jurisdiction, an attachment brought under CPLR 6201(1) "should issue only upon a showing that drastic action is required" such as an "additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk of enforcement of a future judgment." *Amaranth*, 711 F. Supp. 2d at 306. Plaintiffs bear the burden of showing that there is reason to believe that Defendant will not satisfy any judgment entered against them. *See Strategic Growth Int'l Inc. v. RemoteMDx Inc.*, No. 06-cv-3915, 2008 WL 4179235, at *7 (S.D.N.Y. Sept. 10, 2008).

It is undisputed that Mr. Negita and Kobayashi are non-New York residents who have consented to New York jurisdiction. Therefore, Plaintiffs must make an "additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a

real risk of enforcement of a future judgment." *Amaranth*, 711 F. Supp. 2d at 306. Plaintiffs argue, in conclusory fashion, that there is a "significant risk" that Defendants will not be able to satisfy a judgment absent attachment. (ECF 375 at 6-8). Plaintiffs argue that any assets Mr. Negita and Kobayashi have to satisfy the judgment are located outside New York. (ECF 275 at 7). Plaintiffs further argue that the assets of the remaining defendants "are uncertain." (ECF 275 at 7). They cite that the corporate defendants, RYI and Y&S, lease their premises and "presumably" have limited assets other than kitchen equipment. (ECF 275 at 7). Additionally, these restaurants collectively have annual gross revenues of "at most $1.2 million per year" and "taxable income of no more than $35,000" each. (ECF 275 at 7; ECF 274 at ¶ 67). The remaining individual defendants, Maki and Kora, Plaintiffs argue, have "no significant assets" in New York. (ECF 275 at 7; ECF 274 at ¶¶ 68-69).

Plaintiffs have not shown that Defendants cannot satisfy a judgment against them.[9] *See In re Amaranth*, 711 F. Supp 2d at 305 ("Plaintiffs' burden of proving the right to an attachment is high" and "construed strictly against those who seek to involve the remedy.") (internal quotations omitted). Ms. Rostami's Declaration (ECF 274) states only that she performed a "diligent search" without elaboration as to what steps Plaintiffs took to confirm certain facts. *E.g.* "Based on a diligent search, Plaintiffs have not been able to discover any assets held by Defendant Maki [and Kora] within the State of New York." (ECF 274 at ¶¶ 68-69).

Most importantly, since filing the motion for an order of attachment, Plaintiff filed their motion for leave to amend the complaint, which has been granted-in part, adding Ms. Negita to

---

[9] If Plaintiffs' arguments are to be credited, then all FLSA actions involving small restaurants would require an order of attachment.

the action. Ms. Negita could also have assets (which Plaintiffs have not analyzed) that could be used to satisfy a judgment. Plaintiffs' argument that Defendants have been transferring assets to Ms. Negita to frustrate a judgment is moot now that she will be a party to the suit.

Because Plaintiffs have not shown that one or more grounds for attachment under CPLR 6201 exist, I deny the motion for an order of attachment.

### IV.   Conclusion

For the reasons stated above, Plaintiffs' motion to file a TAC is **GRANTED IN PART and DENIED IN PART.** Plaintiffs are directed to file the PTAC without the proposed eighth and ninth claims within fourteen (14) days of this Order, and the motion for an order of attachment is **DENIED**. Defendants' response to the TAC is governed by Rule 15.

The parties are directed to appear for a telephonic status conference on **September 15, 2020 at 4:00 pm**; dial-in (866) 390-1828, access code 1582687. Parties should submit a joint status letter seven (7) days before, or by **September 8, 2020**.

The Clerk of Court is directed to close ECF 273, ECF 310, and ECF 327.

**SO ORDERED.**

_s/ Ona T. Wang_
Dated: August 5, 2019                                    **Ona T. Wang**
New York, New York                                 United States Magistrate Judge