**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ORNRAT KEAWSRI, SACHINA NAGAE, TAKAYUKI SEKIYA, SIWAPON TOPON, PIMPARAT KETCHATROT, THIRATHAM RAKSUK, PARICHAT KONGTUK, TANON LEECHOT, THANATHARN KULAPTIP, WANWISA NAKWIROT, NATCHA NATATPISIT, and PARADA MONGKOLKAJIT,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**RAMEN-YA INC., Y&S INTERNATIONAL CORP. d/b/a RAMEN-YA, MIHO MAKI, MASAHIKO NEGITA, TOSHIHITO KOBAYASHI [DISMISSED], KENJI KORA and YASUKO NEGITA**<br><br>**Defendants** | **INDEX NO. 17-cv-02406 (LJL)(OTW)**<br><br>**DECLARATION OF FLORENCE ROSTAMI IN SUPPORT OF MOTION FOR DETERMINATION OF PLAINTIFFS' DAMAGES AND AWARD OF ATTORNEYS' FEES AND COSTS** |

Under the penalty of perjury pursuant to the laws of the United States, I, Florence Rostami, state as follows:

1. I am a member of Florence Rostami Law, LLC. I am one of the lead counsels on this case and as such familiar with all facts related to this motion.

2. I submit this declaration in support of the motion by Ornrat Keawsri ("Keawsri"), Sachina Nagae ("Nagae"), Takayuki Sekiya ("Sekiya"), Siwapon Topon ("Topon"), Pimparat Ketchatrot ("Ketchatrot"), Thirantham Ratsuk ("Ratsuk"), Parichat Kongtuk ("Kongtuk"), Tanon Leechot ("Leechot"), Thanatharn Kulaptip ("Kulaptip"), Wanwisa Nakwirot ("Nakwirot"), Natcha Natatpisit ("Natatpisit"), and Parada Mongkolkajit ("Mongkolkajit") (collectively "Plaintiffs") for an order affirming the amount of damages as provided herein suffered by each

Plaintiff at the hands of Yasuko Negita ("Mrs. Negita"), Masahiko Negita ("Negita"), Miho Maki ( "Maki"), Ramen-Ya Inc. ("RYI"), Y&S International Corp. d/b/a Ramen-Ya ("Y&S"), and Kenji Kora ("Kora") (collectively, "Defendants").

**Amounts Sought by Plaintiffs**

3. In an Opinion and Order dated August 10, 2021 [DE 419] ("O&O"), this Court granted summary judgment to Plaintiffs on each of their claims and determined that each of the Defendants except Mrs. Negita was an "employer" and therefore are jointly and severally liable for all actual damages, liquidated damages, statutory penalties, and attorney's fees and costs. With respect to Mrs. Negita's "employer" status, the Court denied summary judgment and held that a hearing should be held on that issue. [DE 419, p. 25]

4. On July 5 through 8, 2022, the Court conducted a hearing on the issue of Mrs. Negita's "employer" status. On July 11, 2022, the Court issued its findings of fact and conclusions of law on Mrs. Negita's "employer" status, finding that she was, at all times material to the case, an "employer" of each of the Plaintiffs. [DE 497 (notice of filing of this transcript with the Clerk of the Court is in DE 498)] Consequently, Mrs. Negita is jointly and severally liable for all actual damages, liquidated damages, statutory penalties, and attorney's fees and costs.

5. In the O&O, the Court determined that Plaintiffs are entitled to the following categories of damages:

i. statutory damages for Defendants' failure to maintain accurate and complete records pursuant to N.Y. Labor Law ("NYLL") §§ 195, 198(1-b) [DE 419 p. 30];

ii. wages for all hours worked at Defendants' restaurants pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a) and the NYLL [DE 419, p. 38] at full minimum wage for each year [DE 419, p. 31];

iii. twenty percent (20%) of their tips which Defendants illegally withheld from Plaintiffs pursuant to the FLSA, 29 U.S.C. § 203(m)(2)(B) and NYLL § 196-d [DE 419, pp. 39];

iv. overtime compensation pursuant to the FLSA, 29 U.S.C. §§ 207(a)(1), 215(a)(2) and N.Y. Comp. Codes R. & Regs. tit. 12 ("N.Y.C.R.R."), § 146-1.4 (the New York Hospitality Wage Order [the "Hospitality Wage Order"]) [DE 39-44] which the Court determined to be:

a. $121.40 for Nagae [DE 419, p. 42];
b. $64.13 for Topon [DE 419, p. 42];
c. $1,009.69 for Keawsri [DE 419, pp. 41-42];
d. $3,349.94 for Raksuk [DE 419, pp. 43-44];
e. $140.25 for Kulaptip [DE 419, p. 44]; and
f. zero for the other Plaintiffs.

v. "spread of hours" pay pursuant to the Hospitality Wage Order, 12 N.Y.C.R.R. § 146-1.6 [DE 419, pp. 44-47];

vi. prejudgment interest at nine percent (9%) per annum pursuant to N.Y. Civil Practice Laws and Rules ("CPLR") §§ 5001, 5004;

vii. liquidated damages equal to the actual damages awarded for unpaid wages, unpaid tips, unpaid overtime, and unpaid "spread of hours" payments, pursuant to the FLSA, 29 U.S.C. § 216(b) and NYLL § 663(1) [DE 419, p. 50]; and

viii. attorney's fees and costs pursuant to the FLSA and the NYLL [DE 419, p. 50].

6. The Court also held that since Defendants failed to maintain complete and accurate records, Plaintiffs are entitled to utilize "a reasonable estimate of [their] damages" for determination of damages. [DE 419, p. 28]

7. Specifically, the Court held that Plaintiffs' damages would be calculated based on spreadsheets produced by Defendants during discovery in this matter, which set forth the hours worked by each Plaintiff (the "Hours/Tips Spreadsheet" [DE 399-22]), and Plaintiffs' pay statements. [DE 419, p. 28] With respect to some of the Plaintiffs, the Hours/Tips Spreadsheet for that Plaintiff did not include their respective periods of employment between their dates of hire in 2018 and August 17, 2018; for those Plaintiffs, unpaid wages, unpaid tips, unpaid overtime, and unpaid "spread of hours" payments are calculated in this Declaration and its exhibits based on the respective Plaintiffs' pay statements produced by Plaintiffs and by Defendants in discovery.

8. In the O&O, the Court utilized the Hours/Tips Spreadsheet to determine the amounts of damages for each Plaintiff for unpaid overtime pay and "spread of hours" payments; based on Plaintiffs' subsequent review of the calculations of these categories, additional damages were added to those categories of damages for some Plaintiffs have been made.

9. Plaintiffs respectfully submit that the following damages should be awarded to each Plaintiff for unpaid wages, unpaid spread of hours, unpaid overtime, unpaid tips, and total for these damages for each Plaintiff is as follows (a full table of damages is annexed hereto as Exhibit A):

| **PLAINTIFF** | **ACTUAL DAMAGES** | | | | |
|---|---|---|---|---|---|
| | **Unpaid Wages (A)** | **Unpaid Spread of Hours (B)** | **Unpaid Overtime (C)** | **Unpaid Tips (D)** | **DAMAGES (E) (Sum of A+B+C+D)** |
| **Nagae** | **13,310.77** | **487.75** | **121.40** | **5,421.63** | **19,341.55** |
| **Topon** | **9,296.87** | **408.00** | **64.13** | **4,571.89** | **14,340.89** |
| **Sekiya** | **3,706.82** | | | **1,831.48** | **5,538.29** |
| **Keawsri** | **14,667.13** | **423.00** | **1,009.69** | **6,775.87** | **22,875.69** |
| **Ketchatrot** | **5,466.75** | **211.00** | | **2,433.44** | **8,111.19** |
| **Raksuk** | **35,675.01** | **1,205.00** | **3,349.94** | **15,282.37** | **55,512.32** |
| **Kongtuk** | **8,808.01** | **124.00** | | **4,063.50** | **12,995.51** |
| **Leechot** | **9,543.84** | **322.00** | | **3,878.77** | **13,744.61** |
| **Kulaptip** | **19,978.79** | **685.00** | **140.25** | **7,836.95** | **28,640.99** |
| **Nakwirot** | **14,881.98** | **345.00** | | **5,765.17** | **20,992.15** |
| **Natatpisit** | **20,508.82** | **295.00** | | **8,169.15** | **28,972.97** |
| **Mongkolkajit** | **14,648.10** | **120.00** | | **6,103.19** | **20,871.29** |
| **Total** | | | | | **251,937.44** |

10. Prejudgment interest is calculated from the mid-point of each Plaintiff's employment to August 1, 2022 (or later as the Court will determine to be a fair end point) (calculation of each period for computation of prejudgment interest is shown on Exhibit B attached hereto) at nine percent (9%) per annum. Prejudgment interest, statutory and liquidated damages and total damages to be awarded to each Plaintiff are as follows:

| | Interest Period (yrs) (F) | Pre-judgment Interest (G) (E*F*9%) | Statutory Penalty for False Pay Statements (H) | Liquidated Damages Equal to Actual Damages (I) | TOTAL DAMAGES (J) (E+G+H+I) |
|---|---|---|---|---|---|
| **Nagae** | **6.00** | **10,444.44** | **5,000.00** | **19,341.55** | **54,133.54** |
| **Topon** | **6.42** | **8,286.16** | **5,000.00** | **14,340.89** | **41,974.36** |
| **Sekiya** | **6.42** | **3,200.03** | **5,000.00** | **5,538.29** | **19,283.03** |
| **Keawsri** | **6.92** | **14,246.98** | **5,000.00** | **22,875.69** | **65,005.27** |
| **Ketchatrot** | **6.75** | **4,927.55** | **5,000.00** | **8,111.19** | **26,156.67** |
| **Raksuk** | **5.25** | **26,229.57** | **5,000.00** | **55,512.32** | **142,259.46** |
| **Kongtuk** | **4.92** | **5,754.41** | **5,000.00** | **12,995.51** | **36,750.35** |
| **Leechot** | **4.83** | **5,974.78** | **5,000.00** | **13,744.61** | **38,468.84** |
| **Kulaptip** | **5.50** | **14,177.29** | **5,000.00** | **28,640.99** | **76,464.78** |
| **Nakwirot** | **4.83** | **9,125.29** | **5,000.00** | **20,992.15** | **56,114.41** |
| **Natatpisit** | **4.83** | **12,594.55** | **5,000.00** | **28,972.97** | **75,545.31** |
| **Mongkolkajit** | **4.75** | **8,922.48** | **5,000.00** | **20,871.29** | **55,669.81** |
| **Total** | | **123,883.52** | **60,000.00** | **251,937.44** | **687,825.81** |

11. For each Plaintiff, a separate exhibit is annexed hereto that details the data used to calculate damages including data in Hours/Tips Spreadsheet [DE 399-22], pay statements and

other documents produced by Defendants and Plaintiffs in discovery; Plaintiffs calculations; and supporting documents including the Hours/Tips Spreadsheet for each Plaintiff and where used pay statements and other documents, are annexed as follows: Exhibit C for Nagae, Exhibit D for Topon, Exhibit E for Sekiya, Exhibit F for Keawsri, Exhibit G for Ketchatrot, Exhibit H for Raksuk, Exhibit I for Kongtuk, Exhibit J for Leechot, Exhibit K for Kulaptip, Exhibit L for Nakwirot, Exhibit M for Natapisit, and Exhibit N for Mongkolkajit.

12. As set forth below and in the annexed exhibits, Plaintiffs' reasonable attorney's fees and costs incurred in this matter are $1,127,395 in attorney's fees and $53,813.45 of costs (Exhibits Q, R-1 to R-4).

**Data and Arithmetic Calculations of Damages**

13. The amount of damages is calculated using the data in the Hours/Tips Spreadsheet and pay statements that were either produced by Defendants in discovery or provided to each Plaintiff by Defendants when they were working for Defendants which were in turn produced to Defendants in discovery.

14. For each Plaintiff, the Hours/Tips Spreadsheet provides the dates and hours worked at the 3rd Street or 4th Street Ramen-Ya restaurants and the tips that were paid to that Plaintiff on each day on which that Plaintiff worked. The spreadsheets also provide the amount for each day that was paid by check, which amounts were reported to the Internal Revenue Service as W-2 wages, and the amount that was paid in cash and was not reported to the Internal Revenue Service.

15. In the O&O, the Court determined, based on the summary judgment record, that notwithstanding Defendants' denomination of a portion of each Plaintiff's earnings as "wages", the entirety of each Plaintiff's earnings was in fact tips, and that "Defendants illicitly used employee-earned tips to pay gross wages." [DE 419, pp. 30-38] Also based on the summary

judgment record, the Court determined that Defendants unlawfully withheld at least twenty percent of each Plaintiff's tips to provide money to the kitchen staff [DE 419, pp. 38-39]; Plaintiffs have agreed to limit recovery for unlawfully withheld tips to twenty percent of the total tip amount.

16. For Plaintiffs Topon, Kongtuk, Leechot, Nakwirot, Natatpisit, and Mongkolkajit, the Hours/Tips Spreadsheet did not include all periods they worked; therefore, for these Plaintiffs, for the period that data was not included on the Hours/Tips Spreadsheet, data was obtained from their pay statements produced by Defendants or by Plaintiffs in discovery (pay statements produced by Plaintiffs to Defendants are "Bates-stamped" and are identified with the prefix of "P" to the number).

17. For calculating damages, the Hours/Tips Spreadsheet for each Plaintiff was converted from a PDF document to an Excel spreadsheet, with data for each Plaintiff in one spreadsheet saved with that Plaintiff's name.

18. The Hours/Tips Spreadsheet produced by Defendants contained some minor errors. Some of the dates were out of order—for example, the dates in January 2015 for Keawsri were out of order; these errors were not corrected since they have no impact on the calculations. Some of the rows for the same dates were copied twice—these errors were corrected to avoid counting hours and pay for the same day twice. Some of the spreadsheets included totals for each week worked. Some of the spreadsheets (e.g., Sekiya, Keawsri) included rows that did not contain any relevant data or a formula—in a number of rows either "I/0" or "1/0" were entered but they were not formulas—these rows were deleted.

19. Some, but not all, of the spreadsheets included total hours for each day worked at both restaurants and total tips paid for that day. The spreadsheet for each Plaintiff included columns

for the amount paid to that Plaintiff in cash and in check. Some of the spreadsheets had highlights in them, one of them had data entered in red.

20. The columns with data on payment method—cash and check—were deleted since they did not contain any data that was relevant to calculations. The rows with weekly totals and rows that did not include data relevant to dates, hours, and tips were deleted. Any highlighting (such as shading, bolding) was removed.

21. In the spreadsheet for Nagae (Bates No. 766), 115.87 hours was entered by Defendants for November 2, 2014. Since there is no way of knowing the actual hours she worked on that day, the same value of 115.87 (as recorded by Defendants) was used to calculate her damages.

22. Rows and/or columns were added to calculate total hours worked and tips received for each day in each Pay Period (defined below)—these rows and columns are in purple ink to distinguish them from the data entered by Defendants.

23. Each Plaintiff's damages were calculated on the same Excel spreadsheet for that Plaintiff (i.e., pages of Hours/Tips Spreadsheet) that contained data produced by Defendants. The calculations of total damages for each Plaintiff are at the end of each spreadsheet and on a summary page. Using Excel functions, data was pulled from calculations of each Plaintiff's spreadsheet and a separate table of each category and total damage for each Plaintiff was created and saved on the summary spreadsheet (Exhibit A). On the same summary page, the details of calculation of damages were copied from each Plaintiff's spreadsheet as well.

24. The wage amounts used to calculate wage entitlement is set forth in the applicable New York State minimum wage laws for 2014, 2015 and 2016 as set forth the Hospitality Wage Order effective December 31, 2015, 12 N.Y.C.R.R. § 146-1.2(a) (annexed hereto as Exhibit O),

and for 2017 and 2018 as set forth the Hospitality Wage Order effective December 31, 2016, 12 N.Y.C.R.R. § 146-1.2(a) (annexed hereto as Exhibit P). The wage rate to be applied for the period December 31, 2016 through August 13, 2017 (the "First Period") is the minimum wage set forth in the Hospitality Wage Order; the wage rate to be applied for the period August 14, 2017 through December 30, 2017 (the "Second Period") is higher than the New York State minimum wage because on or about August 13, 2017, Defendants informed its employees (including Plaintiffs) in writing that their wage rate would be increased to $12.00 per hour. [DE 399-29].

25. **Unpaid Wages**. The Court found that, because they did not comply with the notice requirements of federal law concerning the "tip credit" and because they made unlawful deductions from Plaintiffs' tip earnings, Defendants were not entitled to apply the "tip credit" against the minimum wage. [DE 419, pp. 30-32, 39], Consequently, each Plaintiff's unpaid wages were calculated by adding the hours worked for both restaurants in each Pay Period and multiplying that number by the "full" New York State minimum wage (or for the Second Period in 2017, the actual wage that Defendants stated would be paid) for that Pay Period as provided below [DE 419]:

a. Before December 31, 2014—$8.00 per hour;
b. December 31, 2014 to December 30, 2015—$8.75 per hour;
c. December 31, 2015 to December 30, 2016—$9.00 per hour;
d. December 31, 2016 to August 13, 2017 (First Period)—$11.00 per hour;
e. August 14, 2017 to December 30, 2017 (Second Period)—$12.00 per hour;
f. December 31, 2017 to March 11, 2018—$13.00 per hour.

For some of the Plaintiffs, the spreadsheets already included the total hours worked and tips paid on each day at both restaurants. For those without such summation, two columns were added to calculate the same values. Additional rows were added at the end of each Pay Period to sum all the hours worked for both restaurants for that period.

26. For Topon, additional time was found in documents produced by Plaintiffs (Bates numbers P0001-P0004) provided to her by Defendants that included dates worked, tips received, and for two days, the hours worked.

27. For Kongtuk, additional time was found in documents produced by Plaintiffs (Bates numbers P00863, P00865, P00867, P00869, and P00871) with tables with dates worked, hours worked, and tips received which were provided to her by Defendants.

28. For Leechot, additional time was found in pay statements produced by Defendants (Bates numbers 282 to 296 and 600 to 601).

29. For Nakwirot, additional time was found in pay statements produced by Defendants (Bates numbers 634 to 653).

30. For Natatpisit, additional time was found in documents (Bates numbers 368, 369, 371) produced by Defendants and documents produced by Plaintiffs (Bates numbers P00613, P00616, P00618, P00620, P00622, P00624, P00626, P00628, P00630, P00633, P00635, P00637, P00639, P00641, P00643, and P00645) with tables with dates worked, hours worked, and tips received which were provided to her by Defendants.

31. For Mongkolkajit, additional time was found in documents produced by Defendants (Bates numbers 379, 381-383, 730-732), and documents produced by Plaintiffs (Bates numbers P00783, P00785-P00786, P00790, P00794, P00797, P00799, P00801, P00804, P00809, and P00811) with tables with dates worked, hours worked, and tips received and pay statements which were provided to her by Defendants.

32. The sum of wages for all Pay Periods is the total damages for unpaid wages for each Plaintiff.

33. **Spread of Hours.** For each day when the spread of hours worked for a Plaintiff at both restaurants exceeded 10 hours, value "1" was assigned in a new column for such day. The total number of such hours were multiplied by the applicable full minimum wage (without tip credit) for each Pay Period. The sum of such pay is the total damages for each Plaintiff in this category.

34. "Spread of hours" pay could not be calculated for periods for which damages were calculated based on pay statements, and therefore are not sought by Plaintiffs.

35. It should also be noted that Plaintiffs' calculations for the "spread of hours" pay damages are different from the Court's damages. However, a careful review of the Hours/Tips Spreadsheet shows that Plaintiffs' calculations are accurate.

36. **Overtime Pay**. The Court's determination of damages to be awarded to each Plaintiff for unpaid overtime [DE 419, pp. 41-44] is accepted and have been incorporated into Plaintiffs' summary (Exhibit A) and the computation for each Plaintiff (Exhibits C-N).

37. **Unpaid Tips**. To calculate this category of damages, the total tips paid to each Plaintiff was calculated and multiplied by a factor of 0.25. This factor was derived from dividing each dollar of tips paid to Plaintiffs by 0.8 to obtain the tip (100%) that should have been paid to Plaintiffs; and then multiplying that amount by 0.2 the percentage of tips withheld by Defendants.

38. For Raksuk, Kongtuk, Leechot, Kulaptip, Nakwirot, Natatpisit, and Mongkolkajit, the Hours/Tips Spreadsheet includes an additional column identified as "Additional money" or "add". Since there is competent evidence that Defendants only paid Plaintiffs from tips, and Defendants have not refuted this claim, to calculate the withheld tips the amounts identified as additional money or "add" are included in the total amount of tips paid to each Plaintiff.

39. **Prejudgment Interest.** Prejudgment interest is calculated from midpoint of each Plaintiff's period of employment (Exhibit B) to August 1, 2022, or a date that the Court will determine to be a fair end date, at the statutory rate of nine percent (9%) per annum.

40. As an example, for Nagae who worked for Defendants for 18 months from November 1, 2014 until April 30, 2016, the midpoint of her work was nine (9) months after November 1, 2014 or August 1, 2015. Thus, for Nagae, prejudgment interest is calculated from August 1, 2015 to August 1, 2022.

41. All fractions are rounded up.

42. **Statutory Damages**. Each Plaintiff is entitled to $250 for each work day for which he/she did not receive accurate and complete pay statements, up to a maximum of $5,000.

43. Since none of the Plaintiffs ever received accurate and complete pay statements, and each Plaintiff worked at least 20 work days for Defendants, each Plaintiff is entitled to $5,000 of statutory damages for Defendants' provision of inaccurate wage statements.

44. **Liquidated Damages.** Each Plaintiff is entitled to liquidated damages equal to Plaintiffs' unpaid wages, spread of hours pay, overtime pay, and withheld tips for Defendants' willful violations of the FLSA and the NYLL.

45. Plaintiffs filed the Complaint in this matter on April 3, 2017. [DE 1] The earliest a Plaintiff (Nagae) started to work for Defendants was November 1, 2014; as such each Plaintiff's claim and damage determinations is well within the three-year federal limitations period for willful violations of the FLSA, 29 U.S.C. § 255, and the six year limitations period for violations of the New York Labor Law, NYLL §§ 198(3), 663(3). Therefore, each Plaintiff is entitled to the maximum amount of liquidated damages for unpaid wages, unpaid overtime, and withheld tips

pursuant to both FLSA and NYLL, and to unpaid spared of hours pay pursuant to NYLL and the Hospitality Wage Order.

46. It is not disputable that Defendants' violations of the FLSA and the NYLL were "willful." As such, each Plaintiff is entitled to an award of liquidated damages equal to his/her actual damages for unpaid wages, withheld tips, unpaid overtime and unpaid "spread of hours" pay.

**Attorney's Fees and Costs**

47. Plaintiffs seek $1,127,395 in legal fees and $ 53,813.45 in costs of this litigation. The details of professional services provided and costs incurred are attached hereto as Exhibits Q, R-1 to R-4.

48. Florence Rostami Law LLC, in which Florence Rostami and Neal Haber are members (partners), is a boutique law firm that does not employ a cadre of junior associates, paralegals and support personnel.

49. Plaintiffs were represented by counsel with extensive experience in employment matters including wage and hour claims and litigation.

50. The majority of pre-trial work on this matter was conducted by Neal Haber, a member in Plaintiffs' counsel's firm and a member of the bar of this Court since 1979, whose practice has been devoted almost exclusively to labor and employment law. Thus, not only were Plaintiffs provided with strong representation but moreover by virtue of his experience, this matter was handled efficiently and expeditiously. Neal Haber is a member in good standing of New York State Bar, and the District Courts for Southern and Eastern Districts of New York.

51. Florence Rostami has represented many clients in the area of employment and labor law since founding the firm in 2006 and has extensive commercial litigation experience in federal

and state courts for a longer period. Florence Rostami has worked extensively with Japanese counsel on matters that involved various aspects of Japanese law including enforcement of United States federal court judgments in Japan. Florence Rostami is a member in good standing of New York, California, and Texas Bars, and the District Courts for Southern and Eastern Districts of New York.

52. Rachel Izower is an experienced litigator whose practice focuses on representing corporations and individuals in commercial disputes and white-collar matters. For over twenty two years, she has represented clients before both New York State and federal courts, as well as in investigations and prosecutions by the U.S. Attorneys' Office, U.S. Securities and Exchange Commission, New York Attorney General's Office and state securities regulators. She is a partner with Izower Feldman LLP. Among her many successful representations, Rachel Izower represented a banking conglomerate in enforcement of a $20 million judgment by locating assets in the United States and in foreign countries. Rachel Izower is a member in good standing of the New York Bar, and the District Courts for Southern and Eastern Districts of New York.

53. The hourly rate for Plaintiffs' counsel's services requested by this application is $450.00 per hour. The current hourly rate for Plaintiffs' counsel is $500.00 per hour, which is consistent with their experience and is comparable to rates approved by this Court. This rate is lower than the rates that courts in the Southern District of New York have found to be reasonable for experienced counsel in FLSA matters.

54. The five original Plaintiffs (Keawsri, Nagae, Sekiya, Topon, and Ketchatrot) retained Florence Rostami Law LLC in May 2016. At that time, the retainer agreement provided for $400 hourly fee for members (partners) of the firm. In June 2016, the $400 hourly rate for attorney services of the partners of Florence Rostami Law LLC was determined by Judge Paul

Engelmayer to be reasonable in an FLSA matter, in his approval of the FLSA settlement agreement in *Cortes v. New Creators, Inc*., 2016 WL 3455383, at *7 (S.D.N.Y. June 20, 2016). However, that fee was set six years ago with the anticipation of an efficient resolution in this matter.

55. The firm has had to finance significant overhead and costs in this matter. During this six-year period, our firm's hourly fee for non-retainer services has increased significantly and, as stated previously, is presently $500 per hour. Therefore, for this specific matter, rather than applying different hourly rates for attorney services in each of the calendar years in which Plaintiffs' counsel has been involved in this case. we seek a blended rate of $450 per hour, which is significantly below the rates that have been found reasonable for experienced counsel in FLSA matters.

56. Because Florence Rostami Law LLC is a boutique law firm, Florence Rostami and Neal Haber performed certain tasks related to this matter that would appropriately be characterized as work usually performed by a paralegal, such as document preparation and calendaring. We have not included any time for matters that firms typically assign to paralegals. Further, at the beginning of this matter, the firm had a newly hired associate—Rachna Kapur— who stayed with the firm for a short period of time. Rachna Kapur also provided services on this matter; however, we have decided not to include fees for her services. Additionally, during the entire period for which attorney's fees are requested, Florence Rostami Law LLC employed Hiro Sugano, who provided paralegal and translation services (as he is fluent in Japanese) for Plaintiffs. Plaintiffs are not seeking paralegal fees for his time.

57. On November 3, 2016, Plaintiffs' counsel sent a demand letter to Defendants, by which Defendants were informed of the claims of the five original Plaintiffs. After attempts at a speedy resolution failed, the five Plaintiffs filed this action. [DE 1] The Court granted Plaintiffs'

motion for conditional certification of a collective group under the FLSA, 29 U.S.C. § 216. [DE 130] Thereafter, seven additional Plaintiffs joined this action and the Court, in the O&O, certified the collective group to include the seven additional Plaintiffs. [DE 419, pp. 18-20]

58. Plaintiffs' counsel has succeeded in each and every aspect of this litigation. Plaintiffs' success includes: defeating Defendants' RYI, Negita and Maki initial motion to dismiss and in prevailing in Plaintiffs' motion for conditional certification of the collective group [DE 130]; obtaining a protective order to quash Defendants' arbitration agreements that they compelled their employees, including prospective members of the collective group, to sign in an attempt to destroy the possibility of a collective group [DE 176]; obtaining an Order compelling Defendants, over their objections, to disclose tax and management documents that were highly relevant to the case [DE 246]; seeking to compel the deposition of Mrs. Negita after she failed to appear pursuant to subpoena at her scheduled deposition [DE 303]; obtaining an Order from Magistrate Judge Wang compelling Y&S to produce documents, identified at Kora's deposition, that Y&S failed to produce [DE 309]; obtaining an Order to Show Cause compelling counsel for Y&S to show cause why he should not be held in contempt for failure to timely produce responsive documents as directed by the Court [DE 334]; obtaining leave to file a Third Amended Complaint, after the depositions of Maki, Negita, and Mrs. Negita, to add Mrs. Negita as a defendant [DE 367]; defeating Defendants' motion for summary judgment and in obtaining summary judgment for Plaintiffs on the entirety of their claims set forth in the Third Amended Complaint (except for establishing Toshihito Kobayashi and Mrs. Negita as "employers", with the Court determining that Mrs. Negita's status would be determined at trial) [DE 419]; and in successfully establishing, after a four day bench trial, that Mrs. Negita was at all material times an "employer" of Plaintiffs [DE 497, DE 498]

59. Indeed, the only substantive matter on which Plaintiffs were not successful was its motion for attachment of certain assets of Negita and Mrs. Negita, which the Court denied. [DE 367] Plaintiffs made this motion in good faith and with a more than reasonable basis, inasmuch as testimony at the hearing on Mrs. Negita's status demonstrated RYI Defendants' course of conduct of attempting to hide or shift assets.

60. This matter was unnecessarily made complicated by Defendants who are solely responsible for prolonging this litigation unnecessarily and unreasonably causing Plaintiffs to incur significant legal fees and costs.

61. Defendants brought two unsuccessful motions to dismiss; moved against conditional certification of the class; frivolously attempted to impede their employees from joining the class by requiring them to sign an arbitration agreement for "immigration" purposes within 10 days after the Court approved the "opt in" notices causing Plaintiffs to move for a protective order against the impact of the arbitration agreements for those servers who had submitted a Notice of Intent to join the collective group [DE 176]; and frivolously ignored Plaintiffs discovery demands necessitating the Court to require parties to attend regular in person conferences with Magistrate Judge Ona T. Wang and forcing Plaintiffs to file multiple motions to compel discovery. Each of these litigation tactics by Defendants' counsel unduly prolonged this matter and caused Plaintiffs' counsel, who represent a group of low wage workers who were unlawfully deprived of the pay to which they were legally entitled, to engage in extensive litigation practice which significantly (and necessarily) resulted in the incurring of attorney's fees and costs by Plaintiffs.

62. Plaintiffs incurred significant costs in this action, including among other: $18,360 in Westlaw searches; $9,200 in deposition transcript costs; $7,800 in translation services; $6,800 in Southern District Court Reporter fees; $6,000 in vendor printing and binding services; $1,700

in service of process fees; $1,400 in additional services to digitalize the Hour/Tips Spreadsheet, obtain liquor license, and certificate of RYI's incorporation. A summary of each category of disbursements is contained in Exhibit Q.

63. With respect to online legal research costs, the firm maintains a subscription with Westlaw, for a flat rate each month. The firm does not treat online research fees as overhead. The firm apportions the amount paid each month to Westlaw proportionately among the clients and matters on which Westlaw online legal research was conducted in that month, without any mark-up. Annexed as Exhibit S is a spreadsheet setting forth for each month the online legal research fees paid to Westlaw that were apportioned to this matter. Westlaw also charges the firm for use tax. The data in this spreadsheet was copied from monthly reports in Excel Spreadsheet the firm receives from QuickView+ which is an Internet-based Westlaw cost recovery and reporting service that allows a Westlaw subscriber to track its Westlaw usage and estimated charges for its clients. QuickView+ reports that the firm receives do not reflect the date for the charges incurred for each client. However, these reports were saved by the month and year. In addition to the spreadsheet of charges, in Exhibit S, we included a reconciliation report from January 2017 to July 1, 2022 (which does not provide a breakdown of charges apportioned to each client) that evidences payments made to Westlaw.

64. It should be noted that financing fees/costs for this litigation and dedicating sufficient time to ensure a competent prosecution of Plaintiffs' claims for a small firm has been very challenging; however, because of the Firm's commitment to Plaintiffs and their belief that low-wage workers also deserve high quality representation when fighting for the pay they are due, Plaintiffs' counsel have dedicated their time and effort to this matter. With employers of this size the cases are not attractive to most competent firms because clients cannot pay and the size of the

class is too small to attract large plaintiff-side firms or litigation financing. Even after all that has been done, additional investment of Plaintiffs' counsel's time, effort and resources will undoubtedly be required to collect a judgment from Defendants who have flouted the rule of law as it is patently clear that the RYI Defendants have no qualms about hiding their assets from their creditors.

**Conclusion**

65. Based on the forgoing facts, the Exhibits annexed to this Declaration, and the accompanying Memorandum of Law, Plaintiffs submit that the Court should enter judgment against RYI, Y&S, Maki, Negita, Mrs. Negita, and Kora for the amounts of actual damages, prejudgment interest, liquidated damages, statutory penalties, and attorney's fees and costs set forth herein, and that these Defendants shall be jointly and severally liable to Plaintiffs for all monies owed to them.

Dated: New York, New York
July 15, 2022

_____*/s/Florence Rostami*________
Florence Rostami