UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ORNRAT KEAWSRI, et al.,

                    Plaintiffs,

                                                    17 CV 2406 (LJL) (OTW)

   -v-

RAMEN-YA INC., MIHO MAKI,
MASAHIKO NEGITA, YASUKO NEGITA et al.,

                    Defendants.
----------------------------------------------------------------x

---

**RYI DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR FEES AND COSTS**

---

Vik Pawar (VP9101)
20 Vesey Street Suite 1410
New York New York 10007
212 571 0805
www.pawarlaw.com

Attorney for Defendants Ramen-ya Inc., Masahiko Negita, Miho Maki and Yasuka Negita ("RYI Defendants")

# TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**PRELIMINARY STATEMENT** .................................................................... 1

    I.    Amount owed to each Plaintiff     2

    II.    Prejudgment Interest     2

    III.    Attorney Fees, Hourly Rate and Costs     2

    IV.    Liquidated Damages     8

    V.    Post-Judgment Interest     11

**CONCLUSION** ............................................................................. 11

# Table of Authorities

**Cases**                                                                                                                   **Page**

*Agudelo v. E & D LLC*,
12 CV 960, 2013 U.S. Dist. LEXIS 50486, 2013 WL 1401887 (S.D.N.Y. 2013)............ 5

*AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
No. 01 Civ. 11448 (JGK), 2011 WL 102715, at *2 (S.D.N.Y. Jan. 6, 2011) ................ 7

*Anthony v. Franklin First Fin., Ltd.*,
844 F. Supp. 2d 504, 509 (S.D.N.Y. 2012) ...................................................... 5

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
522 F.3d 182, 183 (2d Cir. 2007) ............................................................... 2

*Bisono v. TDL Restoration, Inc.*,
No. 17 Civ. 9431, 2019 U.S. Dist. LEXIS 167714, 2019 WL 4733599, at *2
(S.D.N.Y. Sept. 27, 2019) ....................................................................... 3

*Bond v. Welpak Corp.*,
2017 U.S. Dist. LEXIS 158272, 2017 WL 4325819, at *8 (EDNY 2017) ................... 4

*Brock v. Superior Care, Inc.*,
840 F.2d 1054, 1064 (2d Cir. 1988) ............................................................. 2

*Dajbabic v. Rick's Cafe*,
995 F. Supp. 2d 210, 212–13 (E.D.N.Y. 2014) ................................................. 1

*Dominguez v. 322 Rest. Corp.*,
14-CV-3643, 2019 U.S. Dist. LEXIS 78496, 2019 WL 2053995, at *4
(S.D.N.Y. May 9, 2019) ......................................................................... 4

*E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist.*,
487 F. App'x 619 (2d Cir. 2012) ................................................................ 6

*E.S. v. Katonah-Lewisboro Sch. Dist.*,
796 F. Supp. 2d 421, 433 (S.D.N.Y. 2011) ..................................................... 7

*Farberware Licensing Co. LLC v. Meyer Mktg. Co.*,
No. 09 Civ. 2570 (HB), 2009 WL 5173787, at *6 (S.D.N.Y. Dec. 30, 2009) ............... 7

*Farbotko v. Clinton County*,
433 F.3d 204, 209 (2d Cir. 2005)................................................................ 3

*Foster v. Irwin*,
258 F. Supp. 709, (E.D. La. 1966) .............................................................. 9

*Garcia-Severino v. TDL Restoration, Inc.,*
No. 18 Civ. 11401 (CS), 2020 WL 7239678, at *4 (S.D.N.Y. Dec. 9, 2020) ............... 6

*Jeong Woo Kim v. 511 E. 5th St., LLC,*
12 CIV. 8096, 2016 U.S. Dist. LEXIS 162913, 2016 WL 6833928 (S.D.N.Y. 2016) ......... 5

*Kahlil v. Original Old Homestead Rest., Inc.,*
657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) ................................................. 6

*Kelly v. Ballard,*
298 F. Supp. 1301, (S.D. Cal 1969) ...................................................... 8

*Lane v. M'S Pub, Inc.,*
435 F. Supp. 917, (D. Neb. 1977) ....................................................... 10

*Lilly v. City of New York,*
934 F.3d 222, 234 (2d Cir. 2019) ....................................................... 5

*Mahoney v. Amekk Corp.,*
No. 14 CV 4131, 2016 U.S. Dist. LEXIS 137786, 2016 WL 6585810, at *15
(E.D.N.Y. Sept. 30, 2016) .............................................................. 10

*Pocius v. Sec. Auto Sales, Inc.,*
2018 U.S. Dist. LEXIS 113761, 2018 WL 3999649, at *6 (EDNY 2018) ....................... 5

*Reiter v. MTA New York City Transit Authority,*
457 F.3d 224, 232 (2d Cir. 2006) ....................................................... 3

*Ricardo Cajero Torres, et al., v. Sushi Sushi Holdings, Inc.,*
19 CV 2532 (SDNY) ...................................................................... 4

*Shanfa Li v. Chinatown Take-Out Inc.,*
No. 16 Civ. 7787, 2019 U.S. Dist. LEXIS 132731, 2019 WL 3715086, at *6
(S.D.N.Y. Aug. 7, 2019) ................................................................ 3

*Siegel v. Bloomberg L.P.,*
No. 13 Civ. 1351 (DF), 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016) ................. 6

*Snelling v. O. K. Service Garage, Inc.,*
311 F. Supp. 842, (E.D. Ky. 1970) ...................................................... 8

*Villanueva v. 179 Third Avenue Rest., Inc.,*
500 F. Supp. 3d 219 (2020) ............................................................. 3

*Xochimitl v. Pita Grill of Hell's Kitchen, Inc.,*
14-CV10234, 2016 U.S. Dist. LEXIS 121259, 2016 WL 4704917, at *21
(S.D.N.Y. Sept. 8, 2016) ............................................................... 5

## **PRELIMINARY STATEMENT**

As an attorney whose civil practice is 90 percent devoted to plaintiff's civil rights work, I admire attorneys who take on fee-shifting cases; except in those instances when the attorneys put their own interests forward ahead of their clients. This lawsuit has proven to be such a case. While defendants always suspected why plaintiffs' counsel continuously declined their settlement offers that would have fully compensated plaintiffs; it is now clear why.

Plaintiffs' counsel admittedly financed this litigation, perhaps to the point of it not being economically viable for counsel. It still remains unclear whether any of the plaintiffs were ever apprised of the money that defendants had offered to them individually.[1] *See e.g. Dajbabic v. Rick's Cafe*, 995 F. Supp. 2d 210, 212–13 (E.D.N.Y. 2014) ("Through the enactment of fee-shifting provisions [including FLSA], Congress intended to ensure that plaintiffs be able to secure competent counsel. Congress's intent was decidedly not, however, to create an incentive for counsel to prioritize their interests above those of their clients and to submit exaggerated or overblown requests for fees. Thus, while plaintiff's counsel here may, in fact, have achieved some success for his client, such success must be considered in light of counsel's unwavering focus on his own fees.").

That being said, defendants address the amount of fees and costs sought by plaintiffs' counsel which appear to be nothing short of being avaricious. There is no doubt the plaintiffs prevailed. There is also no doubt that their counsel is entitled to reasonable fees and costs. What they are not entitled to is defendants paying off counsel's "financial arrangement" with a finance company at the detriment of the plaintiffs. Nor are they allowed to be compensated for double

---

[1] *See Declaration of Florence Rostami in Support of Fees and Costs* "[t]he firm has had to finance significant overhead and costs in this [action] and "financing fees/costs for this [action]".

1

billings, unnecessary costs and expenses. Finally, they are not entitled to raid defendants' coffers to rationalize their litigation strategy nor should they be allowed to charge for two to three attorneys (which amounts to double and triple billing).

## I.   Amount owed to Each Plaintiff

Defendants rely on the sound judgment of the Court to determine the amount in wages, OT etc. owed to each plaintiff. Defendants simply ask the Court to closely scrutinize plaintiffs' counsel's proposed amount due to each plaintiff. Also, defendants respectfully submit that the calendar year 2014 should not be counted as neither of the restaurants had income in excess of $500,000.00 to be liable under FLSA.

## II.   Prejudgment Interest

A plaintiff who receives FLSA liquidated damages may not also receive pre-judgment interest. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). Thus, plaintiffs are not entitled to pre-judgment interest. If, however, the Court finds that the plaintiffs recovered under NYLL, then defendants simply submit that the interest be applied only to unpaid wages.

## III.   Attorney Fees, Hourly rate and Costs

### a.   Attorney Fees and Hourly rate

In calculating the presumptively reasonable fee, the court should look to what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)). "[W]hether the calculation is referred to as the lodestar or the presumptively reasonable fee, courts will take into account case-specific factors These factors include:

2

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation."

*Arbor Hill*, 522 F.3d at 184.

Determining a reasonable hourly rate involves "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which may include "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). The hourly rates must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006).

The range of fees for wage and hour cases of this type typically run between $250 and $450, with different courts endorsing slightly different ranges. *See Villanueva v. 179 Third Avenue Rest., Inc.*, 500 F. Supp. 3d 219 (2020) (Report and Recommendation by Magistrate Judge Lehburger). *See e.g., Shanfa Li v. Chinatown Take-Out Inc.*, No. 16 Civ. 7787, 2019 U.S. Dist. LEXIS 132731, 2019 WL 3715086, at *6 (S.D.N.Y. Aug. 7, 2019) ("Experienced litigators and partners are commonly awarded between $300 and $400 per hour in FLSA cases within the Southern District of New York."); *Bisono v. TDL Restoration, Inc.*, No. 17 Civ. 9431, 2019 U.S. Dist. LEXIS 167714, 2019 WL 4733599, at *2 (S.D.N.Y. Sept. 27, 2019) (same).

Plaintiffs' counsel have not shown that they have extensive litigation or trial experience. Indeed, there is a mention of only a few cases that counsel has litigated under FLSA. Therefore,

3

an hourly rate of $250 is more appropriate. Based on the number of hours submitted and noted in DE 500-32, attorney hours (as rounded) were listed as FR – 1217, NH – 1419, RIF – 175, RK – 96. The total amount requested at $450/hr. at DE 500-32 is $1,127,395.00. The Court should reduce the hourly rate to $250/hour from $450/hour or a reduction of 56.00% (at $252/hour) with the total amount coming to $496,054.07.

In addition, there was absolutely no need to order daily transcripts and certainly no reason for three attorneys to prosecute the trial or to bill for the simultaneous representation by two attorneys to prosecute this action. There also appears to be "block billing" and despite plaintiffs' counsel's contention in their motion, there were also duplicate billings and the record speaks otherwise. For example: 6/17/17 and 7/5/16 preparing spreadsheets; spending 20 plus hours to prepare for a hearing[2] that lasted less than 3 hours before Judge Caproni, motion for collective action dated 5/12/17 and billing for similar item on 9/26/27, case management order preparation 4/25/17 and 9/24/17. Other improper billings included searching 184 pages to review public database to "find" defendants, hiring a process server to locate the defendants, engaging in conversations with a non-party named Nakanishi, communications with Onuma, Esq., and Sugano, contacting the liquor authority, fees related to Kobayashi who was a prevailing party, travel at full hour rate and work done by someone with the initial RK.

Based on the above, the Court should further reduce the amount of attorney fees by 30-40%.[3] *Dominguez v. 322 Rest. Corp.*, 14-CV-3643, 2019 U.S. Dist. LEXIS 78496, 2019 WL

---

[2] Interestingly, plaintiffs' counsel devote an extraordinary amount of time "communicating with plaintiffs". However, it was established during discovery that all plaintiffs spoke Thai and none of plaintiffs' counsel spoke their language. So it is curious to note counsel billing for communications between themselves and the plaintiffs.

[3] *See Ricardo Cajero Torres, et al., v. Sushi Sushi Holdings, Inc.*, 19 CV 2532 (SDNY) (opinion by Judge Engelmayer dated July 15, 2022) ("The Court has carefully considered ... Second

4

2053995, at *4 (S.D.N.Y. May 9, 2019) (applying 30% reduction to attorneys' fees in FLSA action for variety of concerns regarding time entries); *Pocius v. Sec. Auto Sales, Inc.*, 2018 U.S. Dist. LEXIS 113761, 2018 WL 3999649, at *6 (EDNY 2018) (reducing attorneys' fees by 30% in FLSA action for excessive time entries); *Bond v. Welpak Corp.*, 2017 U.S. Dist. LEXIS 158272, 2017 WL 4325819, at *8 (EDNY 2017) (reducing attorneys' fees by 35% in FLSA action for a variety of concerns regarding time entries); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 12 CIV. 8096, 2016 U.S. Dist. LEXIS 162913, 2016 WL 6833928, at *7 (S.D.N.Y. Nov. 7, 2016) (reducing by 40% attorneys' fees requested based on various deficiencies); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 14-CV10234, 2016 U.S. Dist. LEXIS 121259, 2016 WL 4704917, at *21 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 161123, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016) (disallowing plaintiff's attorneys' fees for drafting and filing the Complaint and reducing the remaining fees sought by 80%); *Agudelo v. E & D LLC*, 12 CV 960, 2013 U.S. Dist. LEXIS 50486, 2013 WL 1401887, at *3 (S.D.N.Y. Apr. 4, 2013) (finding the number of hours billed excessive and reducing attorneys' fees by 50%).

Moreover, the time entries show that plaintiffs' counsel were charging their hourly rate for administrative and clerical tasks. As the Second Circuit has recognized, "district courts have the legal authority and discretion to either reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction to the hours billed or total fee award to account for time spent on clerical tasks (or block-billed time entries reflecting a mix of clerical and legal work)." *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019); *Anthony v. Franklin First*

---

Circuit's admonition that in the face of persistent shortcoming and irregularities, an across-the-board reduction is more sensible than either aggregating the individual time entries that survive attentive scrutiny or attempting to find and eliminate those that do not).

5

*Fin., Ltd.*, 844 F. Supp. 2d 504, 509 (S.D.N.Y. 2012) ("tak[ing] issue with" "administrative tasks performed by attorneys (*e.g.*, assembling and binding motion papers creating tables of contents and authorities, and uploading scanned materials to ECF" and reducing fees accordingly); *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 433 (S.D.N.Y. 2011) (reducing fee where attorneys performed a significant amount of administrative work), *aff'd sub nom. E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist.*, 487 F. App'x 619 (2d Cir. 2012) (summary order); *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) ("BWP should not be compensated for the time that Ms. Duguay spent executing purely clerical tasks[.]"); *Siegel v. Bloomberg L.P.*, No. 13 Civ. 1351 (DF), 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016) ("With respect to tasks that are 'purely clerical,' such as downloading, scanning, or copying documents and organizing files, such work is generally not compensable, whether performed by an attorney or a paralegal."); *see also Garcia-Severino v. TDL Restoration, Inc.*, No. 18 Civ. 11401 (CS), 2020 WL 7239678, at *4 (S.D.N.Y. Dec. 9, 2020) (where administrative work was block-billed, erring in defendants' favor and assuming "that the administrative work consumed as much of the block as it realistically could have").

  Defendants respectfully submit that a thirty-five percent reduction is warranted and would leave plaintiffs' counsel with a more reasonable $322,435.83 in attorney fees. Defendants herein did not engage in a scorched earth litigation tactics. It was indeed plaintiffs' counsel who rushed to court for motions to compel instead of engaging in meet and confer as mandated by the local rules. Neither is their jury trial preparation argument persuasive. Indeed, in light of the Court's schedule during COVID and continued uncertainty whether the trial would be adjourned a third time to accommodate criminal trials, defendants requested a bench trial to expedite the

proceedings. It saved time from jury selection, deliberations etc. So, the fact defendants requested bench trial only benefitted the plaintiffs to obtain a speedier resolution.

b. Costs

As noted previously, while it may have been convenient for the three attorneys for plaintiffs to order daily transcripts, such luxury costs should not be taxed against defendants. In addition, except for the deposition transcripts used in the trial, no other cost should be taxed for depositions. Nor should the defendants be responsible for UBER, TAXI, or Westlaw charges which are part of an office's overhead, something that is not contemplated in a fee shifting case. Similarly, although the binders made it easier for the Court and the witnesses, they were yet another added luxury that was not necessary. *Farberware Licensing Co. LLC v. Meyer Mktg. Co.*, No. 09 Civ. 2570 (HB), 2009 WL 5173787, at *6 (S.D.N.Y. Dec. 30, 2009) ("[I]n attempting to tax the full invoice value of their deposition costs, Meyer has included untaxable costs including RealTime service, delivery, appearance fees, rough disks, and expedited service."), *aff'd*, 428 F. App'x 97 (2d Cir. 2011) (summary order); *AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*, No. 01 Civ. 11448 (JGK), 2011 WL 102715, at *2 (S.D.N.Y. Jan. 6, 2011) (denying request to include costs related to real-time transcripts because plaintiffs "failed . . . to establish that they were entitled to recover these costs. Specifically, they have failed to establish that realtime transcripts, the most expensive transcription option available, were necessary, as opposed to merely convenient or helpful, to the prosecution of their case"). The same goes for translation services. Plaintiffs needed translators to assist in the prosecution of their action. As the Court has already held each party is responsible for their own translation costs. However, defendants have agreed to compensate 50% of the translation fee for the trial.

7

In concluding, defendants submit that the total amount of fees and costs should not be more than $330,000.00.

**IV** **Liquidated Damages**

Liquidated damages are mandatory unless the employer demonstrates that they acted in good faith, in which case the decision to impose liquidated damages is discretionary. 29 U.S.C. § 260.

Defendants acted in good-faith. First, they did not realize that their two small "ramen" restaurants in the West Village were engaging in inter-state commerce. *See Kelly v. Ballard*, 298 F. Supp. 1301, (S.D. Cal 1969) (Liquidated damages will not be awarded in action to recover unpaid overtime compensation where employer acts in good faith and with reasonable grounds for believing that act did not apply to employees of his ambulance service which only occasionally serviced interstate freeways) and *Snelling v. O. K. Service Garage, Inc.*, 311 F. Supp. 842, (E.D. Ky. 1970) (Plaintiff-employees, whose duties were to guard wrecked vehicles towed into and stored in defendant-employer's lot recovered unpaid minimum and overtime wages but were denied award of liquidated damages where, although plaintiffs' employment engaged them in commerce as defined by Fair Labor Standards Act, nevertheless such conclusion required intimate knowledge of both history of Commerce Clause and recent case history which businessman could not be expected to know).

Second, defendants did "establish[] a weekly payroll period…". Docket Entry 419 (Court's Memorandum and Order ("MO") at page. 23.). The Court also noted that hours and tips spreadsheet contained dates worked, employee hours, amount paid by check and cash but failed to describe hourly rates etc. *Id.* The Court found that defendants maintained a separate spreadsheet for each plaintiff and stated the number of hours worked each day by the worker (MO at p. 32);

8

had pay statements (MO at p. 35); Maki gave tips but deducted 20% (MO at p. 38). Defendants' actions while proven to be contrary to the laws cannot be said to have been done in bad-faith. Inept book-keeping should not allow for draconian liquidated damages especially when the Court found that the difference in what the employees were paid versus the actual amount owed to be minimal. For example: Raksuk was given $124.76 in tips versus the $149.96 the amount that was actually owed. (MO at p. 39). With respect to overtime, the Court found the plaintiffs were owed the following additional amount:

    Keawsri - $1009.69
    Nagae - $121.40
    Topon $64.13
    Raksuk - $3349.94
    Kulaptin - $140.25
    $0 for other plaintiffs.

    With respect to spread of hours, the Court found the following amounts were owed:

Keaswri - $369.50
Nagae - $463
Topon - $399
Raksuk – 1110
Kulaptip - $670
Ketachae - $220
Kongtuk - $109
Nakiware - $304
Natapoe - $149
 Mongko - $192

    While defendants certainly do not wish to suggest that the amount of money is negligible to the plaintiffs, in the grand scheme of things, it is. *Foster v. Irwin*, 258 F. Supp. 709, (E.D. La.

9

1966) (Plaintiff employees were not allowed, under 29 USCS § 260, to recover liquidated damages in addition to unpaid overtime wages due them under Fair Labor Standards Act, since small underpayments found to exist were not result of bad faith, malice, or oppression on part of defendant employer); *Lane v. M'S Pub, Inc.*, 435 F. Supp. 917, (D. Neb. 1977) (Court may properly decline to award liquidated damages for failure to pay overtime where defendant sought in good faith to ascertain applicable law and comply with it, paid plaintiff substantially more than legal minimum wage, and never required that plaintiff work in excess of 46 hours per week).

Defendants acted in good-faith. The plaintiffs should not be given a windfall nor should such be exacted from the defendants. This is especially true when plaintiffs admitted in their deposition that it was they, not the defendants who would often switch schedules, possibly using social security numbers that did not belong to them. While defendants are mindful that these factors do not excuse violation of FLSA, they should at least persuade the Court to the mind-set of the defendants when the payments were being made. For good reasons, public policy dictates that undocumented workers should be allowed to seek redress in FLSA actions. But they cannot benefit from their conduct of using false social security numbers. Plaintiffs' counsel accused defendants of being fraudsters, but they mention nothing of their clients' conduct in working at different places while still employed by defendants and possibly not paying their own taxes while earning wages from multiple employers. Defendants, while unclear that they were violating laws of the United States by employing undocumented immigrants, did their best to accommodate plaintiffs' various demands and schedule changes and paid them cash.  This case is unlike *Mahoney v. Amekk Corp.*, No. 14 CV 4131, 2016 U.S. Dist. LEXIS 137786, 2016 WL 6585810, at *15 (E.D.N.Y. Sept. 30, 2016) (permitting liquidated damages for unpaid minimum wages under NYLL where plaintiff alleged violations were willful and defendants failed to appear), report and

recommendation adopted, 2016 U.S. Dist. LEXIS 154286, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). *See also Villanueva v. 179 Third Avenue Rest., Inc.*, 500 F. Supp. 3d 219 (2020) (default by defendants). Defendants did not default. They defended this action unsuccessfully. Defending an action under FLSA or NYLL should not be construed as being willfully violating so as to subject an employer the additional penalty of liquidated damages.

Defendants respectfully submit that liquidated damages are not warranted and the Court in its discretion should decline to award them.

**V     Post-Judgement Interest**

Defendants take no position on whether plaintiffs are entitled to post-judgment interest.

## CONCLUSION

Defendants respectfully request that the Court award reasonable back-pay owed to plaintiffs with a guarantee from their counsel that the plaintiffs will receive the funds; award costs and fees for an amount lower than $330,000.00 and do not award any liquidated damages because defendants acted in good faith.

Dated:   July 26, 2022
         New York, New York 10007

Respectfully,

Vik Pawar (VP9101)

11