UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/12/2022__
```

-------------------------------------------------------------------X
   :
ORNRAT KEAWSRI, et al.,   :
   :
          Plaintiffs,   :
   :      17-cv-02406 (LJL)
     -v-   :
   :      <u>OPINION AND ORDER</u>
RAMEN-YA INC. et al,   :
   :
          Defendants.   :
   :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiffs move for an order compelling judgment debtors Ramen-Ya Inc. ("RYI"),

Yasuko Negita ("Yasuko"), Masahiko Negita ("Negita"), and Miho Maki ("Maki") (collectively,

"RYI Judgment Debtors") to produce certain post-judgment discovery as well as an order

imposing sanctions against the RYI Judgment Debtors' counsel Vikrant Pawar ("Pawar") and

Martin Siegel ("Siegel").[1]  Dkt. Nos. 574, 576.  The RYI Judgment Debtors assert that certain

post-judgment discovery has been lawfully withheld pursuant to the RYI Judgment Debtors'

Fifth Amendment privilege.  RYI also moves to vacate the sanctions levied against it by this

Court on September 27, 2022.  Dkt. No. 571.

For the reasons that follow, Plaintiffs' motion to compel the RYI Judgment Debtors to

produce certain post-judgment discovery and to impose contempt sanctions on Pawar and Siegel

is granted in part and denied in part.  The Court grants the motion to compel in full, except with

respect to certain foreign bank records and documents relating to income earned outside of the

---

[1] Plaintiffs also moved for a second order of contempt to be imposed against the RYI Judgment
Debtors.  Dkt. No. 574.  The Court denied that request at the November 23, 2022 conference,
noting that sanctions were still running against the RYI Judgment Debtors pursuant to the prior
contempt order imposed against them.  Tr. 49.

United States, which may be withheld under the Fifth Amendment.  The Court, however, denies

Plaintiffs' request that the Court impose sanctions against Pawar and Siegel (collectively, "RYI

Counsel").  The Court also denies RYI's request to vacate the sanctions levied against it.

## BACKGROUND

### I.    History of the Matter

Plaintiffs brought an action against the RYI Judgment Debtors and others for violations

of the Fair Labor Standards Act of 1938 as well as New York State law.  Dkt. No. 182.  On

August 8, 2022, the Court awarded Plaintiffs $687,825.81 in damages and penalties,

$1,110,807.82 in attorneys' fees and costs, as well as post-judgment interest, and held that the

RYI Judgment Debtors as well as Y&S International Corporation ("Y&S") and Kenji Kora

("Kora") are jointly and severally liable for all amounts due.  Dkt. No. 512.  The clerk entered

judgment in that amount on August 10, 2022.  Dkt. No. 514.

Since then, Plaintiffs have sought post-judgment discovery from the RYI Judgment

Debtors, as well as Y&S and Kora.  On August 15, 2022, Plaintiffs served on each of the RYI

Judgment Debtors a subpoena ad testificandum and subpoena duces tecum compelling their

attendance and requiring them to produce certain documents related to the nature, extent, and

location of their assets.  Dkt. No. 577 ¶ 6.  The subpoenas served on Yasuko, Negita, and Maki

requested, among other things, the following categories of documents from January 1, 2014 to

the present: (i) United States and Japan identification documents; (ii) financial account

information, both for accounts held in the United States and in any foreign country; (iii) records

of fund transfers and currency transactions; (iv) records of any real, tangible, or intangible

property located either in or outside of the United States; and (v) documents related to all income

and revenue earned.  *Id.* ¶ 7.

After the subpoenas were served, RYI Counsel sought various deadline extensions for the production of documents as well as for the depositions of the RYI Judgment Debtors. *Id.* ¶¶ 8–11. On August 25, 2022, the Court ordered the RYI Judgment Debtors to serve on Plaintiffs by 8:00 p.m. on August 25, 2022, "the CPLR Rule 6219 Garnishee Statements that each of them was required to serve . . . and by that same time and on that same day to deliver to counsel for Plaintiffs all documents identified in the subpoena duces tecum and subpoena ad testificandum served on each of the RYI Defendants." Dkt. No. 523. On August 25, 2022, Plaintiffs agreed to extend the deadline for RYI Judgment Debtors to produce all responsive documents until August 29, 2022. Dkt. No. 577 ¶ 12. On August 29, 2022, the RYI Judgment Debtors failed to produce responsive documents and instead asserted various objections to each category of documents set forth in the subpoenas. *Id.* ¶ 15.

Due to the RYI Judgment Debtors' refusal to produce responsive documents, Plaintiffs filed a motion on August 31, 2022 requesting an order (i) finding the RYI Judgment Debtors in contempt of court, (ii) compelling the RYI Judgment Debtors to produce all documents and information sought by Plaintiffs, and (iii) imposing sanctions against each of the RYI Judgment Debtors and their respective counsel for their contempt of court, among other relief. Dkt. No. 530. The Court held a conference on September 27, 2022 regarding that request. Dkt. No. 560. At that conference, the Court granted Plaintiffs' motion in part and denied it in part. The Court found that "Plaintiffs have established by clear and convincing evidence that each of the Defendants have violated the Court's rulings through Defendants' refusal to produce documents and information sought by Plaintiffs." *Id.* at 1–2. The Court therefore imposed sanctions of $5,000 on each of the RYI Judgment Debtors to be paid by October 7, 2022. *Id.* at 2. The Court further held that if the RYI Judgment Debtors were not in compliance with the

Court's August 25 order by October 7, 2022 by failing to produce the documents requested in Plaintiffs' subpoenas, each of the RYI Judgment Debtors must pay a sanction of $1,000 for each day that they remained in noncompliance.  *Id.*

At that September 27 conference, RYI Counsel first raised the idea that certain responsive information may be privileged under the Fifth Amendment and thus lawfully withheld from Plaintiffs.  Initially, however, RYI Counsel noted that the RYI Judgment Debtors would only invoke the Fifth Amendment in response to questions at a deposition but would not refuse to produce documents on that basis.  Dkt. No. 590.  Pawar first stated that there "are certain things that my clients will not turn over."  *Id.* at 22.  Siegel, co-counsel for the RYI Judgment Debtors, then stated that "Mr. Pawar is somewhat incorrect."  *Id.*  He continued:

> Obviously documents had to be produced.  I'm not disputing that. . . .  I was hoping that when they would testify about the documents, there would be certain issues that counsel would ask, which at that point the defendant might want to exercise certain constitutional rights when they're being question about the contents of the documents.

*Id.* at 22–23.  Siegel continued:

> The documents are obviously going to be produced, and there's not an issue about producing them, although they haven't been produced, but there becomes an issue, particularly in a deposition, when they're asked questions about certain things in those documents, that they might want to review their constitutional rights.

*Id.* at 23.  The Court then confirmed its understanding, "So what I hear you saying is that it doesn't have to do with the production of documents, it does have to do with the answering of questions, and they might want to invoke their Fifth Amendment rights . . . .?"  *Id.*  Siegel then responded:  "Absolutely correct[]," to which the Court noted that it was not ordering the defendant to waive their Fifth Amendment rights.  *Id.*

At the end of the conference, however, when asked why the RYI Judgment Debtors had not produced certain information in response to Plaintiffs' subpoena requests, Pawar noted:

"[I]t's my understanding that producing documents that are located abroad may—the production in and of itself may invoke some constitutional issues." *Id.* at 29.  The Court responded: "Obviously, Mr. Pawar, if your clients would be put in jail or would be in violation of law for complying with my court order, that may provide a defense to you for some amount of contempt sanctions.  You can at that point apply to me." *Id.*

On October 17, 2022, each of the RYI Judgment Debtors, except RYI, paid the sanctions imposed against them at the September 27 conference.

## II.   Present Motions

On October 28, 2022, RYI filed a motion requesting that the Court vacate the sanctions imposed upon it at the September 27 conference.  Dkt. Nos. 571–73.  RYI claims that it does not have the means or ability to pay.  Dkt. No. 573.  Plaintiffs submitted a declaration in opposition to the motion to vacate on November 14, 2022.  Dkt. No. 582.

On October 31, 2022, Plaintiffs filed the present motion to compel post-judgment discovery documents and for contempt sanctions.  Dkt. Nos. 574–77.  Plaintiffs state that the RYI Judgment Debtors have continued to not produce certain documents responsive to Plaintiffs' subpoenas.  Dkt. No. 577.  Specifically, Plaintiffs request that the Court order the RYI Judgment Debtors to produce the following documents:

(i)   **<u>Yasuko, Negita, and Maki</u>**

   a.   Domestic and Japanese identification documents, passports, and Japan Family Registers;
   b.   statements for all accounts that Yasuko and/or Negita and/or Maki owned at any time from January 1, 2014 to date at all banks located anywhere in the world;
   c.   statements for all investment accounts that Yasuko and/or Negita and/or Maki owned at any time from January 1, 2014 to date at all financial institutions located anywhere in the world;
   d.   all documents evidencing transfer of funds and currency transactions from January 1, 2014 to date;
   e.   tax returns and other tax documents;

     f.   documents evidencing business earnings from any entity located anywhere in the world;

     g.   documents related to all real estate properties located anywhere in the world from January 1, 2014 to date;

     h.   documents of all tangible and intangible properties with a value of over $1,000 owned at any time from January 1, 2014 to date;

     i.   insurance policies; and

     j.   home addresses and contact information for Naomi and Saori Negita and Haruna Maki.

(ii)    **<u>RYI</u>**

     a.   2019 and 2020 tax returns, and all Form W2 and W4 issued to Yasuko, Maki, Negita, Haruna Maki, Naomi and Saori Negita, and any member of each person's family;

     b.   documents (including but not limited to cancelled checks) related to all payments made to Yasuko, Maki, Negita, Haruna Maki, Naomi and Saori Negita, and any member of each person's family;

     c.   statements for all bank accounts;

     d.   documents related to all loans and payments on these loans including but not limited to the PPP and EIDL loans; and

     e.   all QuickBooks, ledgers, accounting and bookkeeping documents related to revenue and income, and expenses.

*Id.* ¶ 81.

Plaintiffs further state that Negita and Yasuko have refused to produce any documents or information as to whether they have bank accounts or other assets outside of the United States that are or could be under their name as well as information about their passports or foreign identification documents, declaring that their refusal is "[o]n the advice of counsel and to afford [themselves] the protections of the United States Constitution."  Dkt. No. 576 at 7.  Plaintiffs also note that Maki "similarly purported to invoke constitutional protections against answering the question as to whether she had a bank account outside of the United States or any foreign assets that are or could be under her name, including transactions or communications related to herself and her daughter Haruna, and to provide information or submit any passports or foreign

identifications." *Id.*  Plaintiffs, however, state that these constitutional objections are unavailing not only because they were waived but also because such objections are specious. *Id.* at 7–8.

Plaintiffs further argue that the history of noncompliance by RYI Judgment Debtors in this case establishes bad faith on the part of RYI Counsel. *Id.* at 19.  Specifically, Plaintiffs state that RYI Counsel "have flouted their responsibilities to the Court to produce documents in the possession, custody or control of their clients and by asserting untimely, unsupportable and baseless objections and claims of Constitutional proscriptions on the production of clearly relevant documents and information from their clients." *Id.* at 20.  Accordingly, Plaintiffs state that sanctions should be imposed against defense counsel by the Court under either its inherent powers or pursuant to 28 U.S.C. § 1927. *Id.* at 19.

In response to the motion to compel, counsel for the RYI Judgment Debtors submitted two separate opposition papers. Dkt. Nos. 580–81.  First, Pawar submitted a memorandum of law in opposition on November 14, 2022, which states that the RYI Judgment Creditors "have complied with or attempted to comply with the subpoenas." Dkt. No. 580 at 2.  With respect to the contact information for Naomi and Saori Negita and Haruna Maki, Pawar states that "Plaintiffs cannot simply state that RYI defendants are in contempt when they were not obligated to nor could they control third non-parties to this action." *Id.* at 4.  Pawar also argues that certain information that has not been produced is protected by the Fifth Amendment. *Id.* at 5.  Pawar notes in a footnote that the Court had "suggested that RYI could invoke the 5[th] amendment." *Id.* at 5 n.4.  Finally, Pawar states that the RYI Judgment Debtors have no choice but to cross-move for sanctions against the Plaintiffs under Rule 11. *Id.* at 5.

Second, on the same day as Pawar's opposition papers, Siegel submitted a declaration in opposition to Plaintiffs' motion on behalf of the RYI Judgment Debtors. Dkt. No. 581.  In his

declaration, Siegel states that: "Upon information received from the Defendants and my personal belief, Defendants' sworn statements dated October 7, 2022 declining to provide certain information and documents to Plaintiffs was within their respective constitutional rights under the Fifth Amendment privilege against self-incrimination's Act of Production doctrine."  Dkt. No. 581 ¶ 5.  Attached to Siegel's declaration is a memorandum of law in support of the opposition; that memorandum of law is signed by Anthony Varbero ("Varbero") from the Law Office of Joseph Mure, Jr. & Associates.  Dkt. No. 581-1.

Plaintiffs filed reply papers in further support of their motion for an order of contempt and to compel production of responsive documents on November 20, 2022.  Dkt. Nos. 585–86. In the memorandum of law, Plaintiffs moved to strike Varbero's memorandum of law in opposition to Plaintiffs' motion, stating that "Varbero is the sole signatory to the Varbero MOL," "*has not* noticed his appearance in this matter," and "Counsel cannot represent a party without noticing their appearance."  Dkt. No. 586 at 2.

## III.    November 23, 2022 Conference

The Court held a conference on Plaintiffs' motion for sanctions and contempt on November 23, 2022.  At that conference, the Court stated that it would decide RYI's motion to be relieved from sanctions on the papers absent anything that either of the parties wanted to add with respect to it.  Nov. 23, 2022—Conference Tr. ("Tr.") at 4.  The Court also granted Plaintiffs' request to strike Varbero's memorandum of law in opposition filed on behalf of Siegel, explaining that Varbero had not appeared in the case.  *Id.*  The Court stated that it would not consider the brief, although it reviewed the authorities contained therein and thus its decision to strike the brief would not impact the outcome of the case.  *Id.*  The Court also denied the RYI Judgment Debtors' request for Rule 11 sanctions against Plaintiffs.  *Id.*  The Court noted that the Rule 11 request had not been supported by a motion and, in any event, was not meritorious.  *Id.*

The Court then turned to Plaintiffs' motion to compel certain post-judgment discovery and asked Plaintiffs to address each of the document requests that Plaintiffs claim remain outstanding. *Id.* at 4–14.

After Plaintiffs detailed what requests remained outstanding and what had been produced, the Court asked the RYI Judgment Debtors to specify which documents or categories of documents they were asserting were protected by the Fifth Amendment. *Id.* at 14. To start, Siegel noted that they "[a]bsolutely" were "not" asserting a "Fifth Amendment privilege over any documents in possession, custody, or control of RYI."[2] *Id.* at 15. Siegel continued that Yasuko, Negita, and Maki, however, were asserting a Fifth Amendment privilege over: (i) the Japanese identification documents, specifically their passports; (ii) foreign bank account records; (iii) documents evidencing transfer of funds outside of the United States and currency transactions; (iv) documents evidencing business earnings outside of the United States; and (vii) documents regarding real estate properties and other tangible properties outside of the United States. *Id.* at 15–26. Siegel also stated that Maki was asserting a Fifth Amendment privilege over her Japanese family registry, *id.* at 21, and any investment accounts outside of the United States, *id.* at 22. Defense counsel clarified that the individual RYI Judgment Debtors were not asserting a Fifth Amendment objection regarding the home addresses and contact information for Naomi and Saori Negita and Haruna Maki. *Id.* at 25–26.

---

[2] As a corporation, RYI itself cannot avail itself of the Fifth Amendment privilege against self-incrimination under the "collective entity rule." *Braswell v. United States*, 487 U.S. 99, 102, 104 (1988) ("[I]t is well established that such artificial entities are not protected by the Fifth Amendment."). A corollary of the "collective entity" rule is that "the custodian of corporate records, who acts as a representative of the corporation, cannot refuse to produce records on Fifth Amendment grounds." *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158 (2d Cir. 2010); *see In re Mavashev*, 559 B.R. 332, 337 (Bankr. E.D.N.Y. 2016).

The Court then met with defense counsel *in camera*—and out of the presence of Plaintiffs' counsel—to inquire as to the basis of the Fifth Amendment assertions. *Id.* at 26.

After the *in camera* conference, the Court spoke to both parties in open court and on the record. The Court noted that it would take the Fifth Amendment issue under advisement, but ordered defense counsel to turn over the contact information for Naomi and Saori Negita and Haruna Maki. *Id.* at 49. The Court also denied the renewed motion for contempt against the RYI Judgment Debtors, finding it was unnecessary as the contempt sanctions imposed at the September 27 conference—$1,000 per day for each day that they remained in noncompliance after October 7, 2022—were still running. *Id.* The Court then scheduled a conference for December 19, 2022 to determine what sanctions had accrued against the RYI Judgment Debtors as of that date; both parties stated that they had no objections to that approach. *Id.* at 50–51, 61.

## DISCUSSION

The Court first addresses the RYI Judgment Debtors' claim that certain documents are protected from production under the Fifth Amendment. The Court then addresses Plaintiffs' request for an order of contempt to be imposed against RYI Counsel. Finally, the Court addresses RYI's request that the sanctions imposed against it by this Court at the September 27 conference be vacated.

## I.      Fifth Amendment

The Fifth Amendment of the U.S. Constitution prohibits compelled self-incrimination. *See United States v. Doe*, 465 U.S. 605, 610 (1984) (citing *Fisher v. United States*, 425 U.S. 391, 396 (1976)). The right against self-incrimination may be asserted in "any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 444 (1972); *see In re Mavashev*, 559 B.R. 332, 337 (Bankr. E.D.N.Y. 2016).

"The Fifth Amendment protects the person asserting the privilege only from compelled self-incrimination." *Doe*, 465 U.S. at 610. "Where the preparation of business records is voluntary, no compulsion is present." *Id.* However, "[a]lthough the contents of a document may not be privileged, the act of producing the document may be." *Id.* at 612; *see Fisher*, 425 U.S. at 410 ("The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced."). In other words, a subpoena may compel "the holder of the document to perform an act that may have testimonial aspects and an incriminating effect." *Doe*, 465 U.S. at 612. The act of producing evidence in response to a subpoena "tacitly concedes the existence of the papers demanded and their possession or control" by the witness. *Fisher*, 425 U.S. at 410.

"[C]ompliance with a document subpoena may require incriminating testimony in two situations: (1) if the existence and location of the subpoenaed papers are unknown to the government, then the [subpoena recipient's] compelled production of those documents tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer, and (2) where the [subpoena recipient's] production of documents may implicitly authenticate the documents." *United States v. Fox*, 721 F.2d 32, 36 (2d Cir. 1983) (cleaned up).[3] The person asserting the privilege must also "reasonably believe[] that his testimony could 'furnish a link in the chain of evidence needed to prosecute' him for a crime." *AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 1999 WL 970402, at *3 (S.D.N.Y. Oct. 25, 1999) (quoting *Est. of Fisher v. Commissioner of Internal Revenue*, 905 F.2d 645, 648 (2d Cir. 1990)); *see In re Schick*, 215 B.R. 4, 9 (Bankr. S.D.N.Y. 1997) ("[T]he party asserting the

---

[3] *United States v. Fox* addressed a subpoena issued specifically to a taxpayer. Its ruling, however, extends generally to all subpoena recipients.

privilege must show that it is incriminating, *i.e.*, that it provides a link in the chain of incrimination." (internal quotation marks and citation omitted)).

"Conversely, there is no privilege if the existence, location or authenticity is a 'foregone conclusion.'" *In re Mavashev*, 559 B.R. at 338 (quoting *In re Schick*, 215 B.R. at 9); *see Fisher*, 425 U.S. at 411. In other words, "[n]ot only must the testimony implicit in the act of production be incriminatory, but the government's possession of this information must also not be a foregone conclusion; if the information 'adds little or nothing to the sum total of the Government's information,' the Fifth Amendment act of production privilege claim must fail." *AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 1998 WL 633668, at *18 (S.D.N.Y. Sept. 15, 1998), *report and recommendation adopted in part, rejected in part on other grounds*, 1999 WL 970402 (quoting *Fisher*, 425 U.S. at 411); *see also eBay, Inc. v. Digital Point Sols., Inc.*, 2010 WL 147967, at *8 (N.D. Cal. Jan. 12, 2010) ("While the Fifth Amendment prohibits compelling acts that are testimonial and incriminating, Defendants cannot incriminate themselves merely by turning over information already in the hands of the government agents investigating them.").

In addition, "a person whose records are required to be maintained by law has no Fifth Amendment protection against self-incrimination when those records are ordered to be produced." *AAOT Foreign Econ. Ass'n (VO) Technostroyexport*, 1999 WL 970402, at *7. "To qualify as a required record, a document must satisfy a three-part test: (1) it must be legally required for a regulatory purpose, (2) it must be of a kind that the regulated party customarily keeps, and (3) it must have assumed 'public aspects' which render it analogous to public documents." *Id.*

"The danger of self-incrimination must be real, not remote or speculative." *Est. of Fisher*, 905 F.2d at 649.  "When the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege." *Id.*  A party asserting the privilege may thus not avail herself of the privilege through a "blanket claim of Constitutional privilege." *Id.*; *see In re Mavashev*, 559 B.R. at 338 ("The party does not discharge the burden simply by asserting that he will incriminate himself by producing the documents." (citation omitted)); *Levitt v. Brooks*, 2013 WL 1346257, at *1 (E.D.N.Y. Mar. 29, 2013).  That party must instead proffer sufficient information for the Court to "conduct a factual inquiry to determine the incriminating potential of the documents sought and the act of production against the privilege asserted." *In re Schick*, 215 B.R. at 9 (citation omitted).  "This does not require the party to disclose the contents of the documents, and in the process, compromise the privilege he seeks to protect." *Id.*  "He may meet his burden by submitting a written explanation, *in camera* if requested, identifying the documents held in his personal capacity, and as to each document, explaining in general or circumstantial terms why production is incriminating." *Id.*  Such information may also be provided at an *in camera* conference.  *See Est. of Fisher*, 905 F.2d at 650.

### A.    Waiver

Plaintiffs first argue that the Court should refuse to allow the individual RYI Judgment Debtors to withhold documents under the Fifth Amendment privilege against self-incrimination because their objections were not timely asserted.  Dkt. No. 576 at 7–8.  Plaintiffs note that such a waiver should be implied as they failed to invoke the Fifth Amendment on August 29, 2022 when they first interposed various objections to the document requests contained in Plaintiffs' subpoena, Dkt. No. 577 ¶ 20, and because they did not raise these objections until several weeks

after the Court issued an order compelling them to produce the documents at issue.  Dkt. No. 576 at 7.

"The Fifth Amendment privilege is not self-executing; if not invoked it may be deemed to have been waived."  *In re DG Acquisition Corp.*, 151 F.3d 75, 80 (2d Cir. 1998).  "However, waiver of such a fundamental right 'is not lightly to be inferred.'"  *Id.* (quoting *Emspak v. United States*, 349 U.S. 190, 196 (1955)).  "Indeed, courts must indulge every reasonable presumption against waiver."  *Id.* (cleaned up).

In *In re DG Acquisition Corp.*, the Second Circuit addressed whether a party's failure to raise a Fifth Amendment objection after service of a subpoena waives the privilege as a matter of law.  151 F.3d 75.  Federal Rule of Civil Procedure 45(d)(2)(B) requires a party to serve objections to a subpoena requesting the production of documents within fourteen days after the subpoena is served.  Fed. R. Civ. P. 45(d)(2)(B).  The Second Circuit held that "Rule 45 contemplates assertion of all objections to document production within 14 days, including those based on the act of production privilege."  *In re DG Acquisition Corp.*, 151 F.3d at 81 (emphasis added).  Thus, the Circuit noted that a party with a reasonable basis for asserting a Fifth Amendment privilege at the time they received the subpoenas "should have raised the privilege at that time."  *Id.*  Nonetheless, the Circuit stated that Fifth Amendment privilege is not waived as a matter of law "because of the untimely assertion."  *Id.*  The court continued: "[c]onsidering the wide discretion we allow trial courts in ruling on even mundane discovery matters, we think it clear that where a constitutional privilege is involved a trial court possesses the discretion not to find waiver" and "[t]his is particularly true . . . when the alleged waiver is accomplished by inaction rather than action."  *Id.* (internal citation omitted).  The Circuit therefore concluded that

14

a lower court has the "discretion to decide" whether or not waiver is called for in a particular case. *Id.*

The Court, in its discretion, finds that waiver is not called for in this case at least with respect to certain categories of documents. While the individual RYI Judgment Debtors failed to raise the Fifth Amendment when they first objected to Plaintiffs' subpoena requests under Rule 45 on August 29, 2022, this Court is loath to find waiver of their Fifth Amendment rights merely through defense counsel's inaction. *See In re DG Acquisition Corp.*, 151 F.3d at 81 ("[S]ilence is necessarily ambiguous, and equivocal waivers of Fifth Amendment rights are ineffective."); *In re DG Acquisition Corp.*, 213 B.R. 883, 887 (S.D.N.Y. 1997), *aff'd*, 151 F.3d 75 (2d Cir. 1998) (Presumption against waiver "is especially heavy when the purported waiver has occurred through non-assertion."). This is particularly true, here, where, within two days of the RYI Judgment Debtors serving their objections, Plaintiffs filed a motion to compel production of responsive documents, the Court scheduled a conference on that motion for September 27, and the RYI Judgment Debtors invoked the Fifth Amendment privilege at that conference. Dkt. No. 590 at 29. Although at first Siegel stated that the RYI Judgment Debtors did not plan to withhold any documents on the basis of this privilege and they would only "want to exercise certain constitutional rights when they're being question about the contents of the documents," *id.* at 22–23, Pawar later clarified that "producing documents that are located abroad" may "invoke some constitutional issues," *id.* at 29. Shortly following that conference, Yasuko and Negita provided declarations to Plaintiffs' counsel, each stating that: (i) "On the advice of counsel and to afford myself the protections of the United States Constitution, I decline to answer this question as to whether I have a Bank account (outside of the United States of America) bank accounts or any foreign assets that are or could be under my name" and (ii) "[f]or

the same reasons, I decline [to provide] information about my passport or foreign identification."

Dkt. No. 577-4.  Pawar noted in an email to Plaintiffs' counsel that Yasuko and Negita were

invoking the Fifth Amendment, among other provisions of the U.S. Constitution.  Dkt. No. 577-

5.  Maki also provided a declaration to Plaintiffs' counsel stating:

> On the advice of counsel and to afford myself the protections of the United States, such as, but not limited to the 5[th] amendment of the United States Constitution, I decline to answer this question as to the following:
>
> [i] If I have a Bank account (outside of the United States of America) . . . or any foreign assets that are or could be under my name[;]
>
> [ii] Whether I have transferred assets to and from the United States[;]
>
> [iii] All transactions or communications in whether form or from whatever Entities or Financial institutions between myself and my daughter Haruna Maki[;]
>
> [iv] I decline[] to provide information or submit my passport or foreign identification[.]

Dkt. No. 577-6.  Based on this timeline, the Court finds that the RYI Judgment Debtors did not

waive their Fifth Amendment privilege against self-incrimination with respect to the categories

of documents enumerated in their declarations.

To the extent that the RYI Judgment Debtors, however, seek to assert that additional

documents—outside of those specifically enumerated in Yasuko's, Negita's, and Maki's

declarations—are protected by the Fifth Amendment, such claims are waived.  At the

November 23, 2022 conference on the present motion to compel, Siegel appeared to assert that

Yasuko and Negita were asserting a Fifth Amendment privilege over a larger swath of

documents than they had specifically noted in their declarations submitted to Plaintiffs' counsel.

In particular, he noted that Yasuko and Negita were asserting a Fifth Amendment privilege over

documents evidencing a transfer of funds outside of the United States and currency transactions.

Tr. 18.  These additional claims of privilege are untimely.[4]  The individual RYI Judgment Debtors—despite not originally invoking the Fifth Amendment in their objections to the subpoenas—were given an opportunity to specifically enumerate those documents that they believed were constitutionally protected.  Yasuko and Negita did not identify these categories documents.  Thus, the Court finds any claim of Fifth Amendment privilege with respect to these documents to be waived.  *Cf. In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d 339, 352 (2d Cir. 2013) (noting that there is there is no requirement of any knowing and intelligent waiver of Fifth Amendment rights).  However, even if the assertion of the Fifth Amendment privilege over these categories of documents were not deemed waived, Yasuko's and Negita's claims that such documents are protected by the Fifth Amendment are unavailing for the reasons discussed *infra* Section I.B.

## B.      Privilege

As noted, at the November 23 conference, Yasuko, Negita, and Maki asserted a Fifth Amendment privilege against self-incrimination over: (i) Japanese identification documents, specifically their passports; (ii) foreign bank account records; (iii) documents evidencing transfer of funds outside of the United States and currency transactions; (iv) documents evidencing business earnings outside of the United States; and (vii) documents regarding real estate properties and other tangible properties outside of the United States.  Tr. 15–26.  Siegel stated

---

[4] Siegel also asserted that Yasuko, Negita, and Maki were asserting a Fifth Amendment privilege over documents evidencing business earnings from any entity located anywhere in the world. Tr. 24.  In addition, he noted that Yasuko was asserting a Fifth Amendment privilege over her Japanese family register.  Tr. 20.  These categories of documents were not specifically raised by Yasuko, Negita, and Maki in their respective declarations.  However, because they arguably relate to categories of documents that Yasuko, Negita, and Maki did claim were protected by the Fifth Amendment in their declarations (*i.e.*, Japanese family register is related to foreign identification documents and records of foreign business earnings is related to records of foreign assets/bank accounts), the Court finds that such claims were not waived.

that Maki was also asserting a Fifth Amendment privilege over her Japanese family register, *id.* at 21, and any investment accounts outside of the United States, *id.* at 22.  The Court addresses each claim of privilege in turn.

First, with respect to Yasuko's and Negita's Japanese identification documents, RYI Counsel claimed at the *in camera* conference that the production of their passports may be incriminatory as the stamps on those passports could be used to match their travel inside and outside of the United States with certain unlawful activities.  Nov. 23, 2022—Conference Sealed Tr. ("Sealed Tr.") at 31–32, 40.  The Court rejects this assertion as a basis for the withholding of Yasuko's and Negita's Japanese passports under the Fifth Amendment.  "[C]ompliance with a document subpoena may require incriminating testimony in two situations: (1) if the existence and location of the subpoenaed papers are unknown to the government, then the taxpayer's compelled production of those documents tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer," and (2) "where the taxpayer's production of documents may implicitly authenticate the documents."  *Fox*, 721 F.2d at 36 (cleaned up).  Neither of these situations is present here.  Yasuko and Negita do not dispute the existence, location, or authenticity of their Japanese passports or assert that, through confirming their existence, location, or authenticity, Yasuko and Negita would engage in incriminating conduct; instead, they merely seek to prevent a disclosure that would give the government access to the potentially incriminatory contents of these records.  *See United States v. Greenfield*, 831 F.3d 106, 115 (2d Cir. 2016) (where the "(1) the existence of the documents, (2) the taxpayer's possession or control of the documents and (3) the authenticity of the documents" are not in dispute "compliance with the summons became a 'question . . . not of testimony but of surrender.'" (citation omitted)).  However, the Supreme Court specifically stated in *Fisher* that

18

the Fifth Amendment does not apply based on the incriminatory contents of a document and thus a party "cannot avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else."  425 U.S. at 410.  Moreover, even if Yasuko and Negita did claim that production of their passports would implicitly authenticate or identify the existence of the records of travel contained therein, it is a "foregone conclusion" that such records could be identified and authenticated by the Government:  U.S. law requires foreign and domestic air carriers to provide flight and passenger information for flights to, from, or through the United States to the federal government.  19 C.F.R. § 122.49d.  Thus, prosecuting authorities already have access to information about the RYI Judgment Debtors' travel between the United States and Japan and the travel information revealed by their passports "adds little or nothing to the sum total of the Government's information."  *Fisher*, 425 U.S. at 411.  The Government could also confirm that such travel records exist and ascertain their contents through the airlines themselves—the RYI Judgment Debtors plainly disclosed their travel to the airlines who transported them and those airlines could convey that information to prosecuting authorities.  *Cf. Greenfield*, 831 F.3d at 123 ("[T]he United States Department of State can easily ensure that the passport is authentic" and "[t]o the extent [their passports] describe[] travel during this period, it is a foregone conclusion that" they would have "documents in [their] control that pertained to the travel (*i.e.*, receipts) and (2) these documents could be authenticated by the third parties (*i.e.*, airlines) that had issued these documents."); *Knopf v. Esposito*, 517 F. Supp. 3d 187, 191 (S.D.N.Y. 2021) ("The plaintiffs can confirm that the telephone records exist and can authenticate them through the telephone company that created them.").

Second, with respect to the foreign bank records, the individual RYI Judgment Debtors argue that the production of such records could form the link in a chain of evidence necessary to prosecute them.  Sealed Tr. 33–34, 41–42.  That is, they did not identify any foreign bank accounts on their U.S. tax forms and thus, if they produce records of any foreign bank accounts and implicitly admit such records exist, they could be prosecuted for tax fraud.  The Second Circuit addressed a similar argument in *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d 339.  In that case, the defendant refused to produce records of his foreign bank accounts— information that must by law be reported to the Commission of Internal Revenue—in response to a grand jury subpoena.  *Id.* at 342.  The defendant argued that "the grand jury's subpoena requires him either to produce documents that might incriminate him or to confirm that he failed to register his foreign bank accounts, which itself could be incriminating."  *Id.* at 342–43.  The Circuit, however, rejected the argument that these foreign bank records were protected by the act of production privilege.  The Circuit noted that "[t]he act of production privilege contains exceptions, and among them is the required records doctrine," which "applies only when the Fifth Amendment privilege would otherwise allow a witness to avoid producing incriminating documents."  *Id.* at 344.  The Circuit noted that "[i]t abrogates the protection of the privilege for a subset of those documents that must be maintained by law."  *Id.*  The rationale of the exception, the Circuit articulated, is two-fold:

> First, if a person conducts an activity in which record-keeping is required by statute or rule, he may be deemed to have waived his privilege with respect to the act of production—at least in cases in which there is a nexus between the government's production request and the purpose of the record-keeping requirement. Second, because the records must be kept by law, the record-holder 'admits' little in the way of control or authentication by producing them.

*Id.* at 346 (quoting *In re Two Grand Jury Subpoenae Duces Tecum Dated Aug. 21, 1985*, 793 F.2d 69, 73 (2d Cir. 1986)).  The Circuit then held that because the documents at issue in the

case—*i.e.*, the foreign bank records—were required records as under the Bank Secrecy Act ("BSA"), a person is required to maintain such records. *Id.* at 350. Specifically, the BSA requires a person to maintain "records of [foreign financial accounts] required to be reported to the Commissioner of Internal Revenue," including the name of the account, the account number, the name of the foreign bank, and the maximum value of each such account during the reporting period, for a period of "5 years and shall be kept at all times available for inspection as authorized by law." *See* 31 C.F.R. § 1010.420. The Circuit thus concluded that the required records exception to the Fifth Amendment applies and the defendant could not lawfully excuse his failure to comply with the subpoena pursuant to the Fifth Amendment. *Id.* at 352–53.

In line with *In re Grand Jury Subpoena Dated Feb. 2, 2012*, this Court rejects the RYI Judgment Debtors' request to withhold those bank records from the past five years, which they are required to maintain under the BSA. Because certain foreign bank records for the past five years are required to be maintained under the BSA, they are subject to the required records exception to the Fifth Amendment and thus must be produced.

However, for those foreign bank records outside of this five-year period or otherwise not required to be maintained under the BSA, such records are not subject to the required records exception. *See Greenfield*, 831 F.3d at 116 n.6 (stating that documents that fall outside the five-year period under the BSA are not subject to the required records exception). While Plaintiffs assert that such records are nonetheless discoverable under the "foregone conclusion" exception, Dkt. No. 576 at 16–17, Plaintiffs do not support this assertion; Plaintiffs do not explain why "the Government must *know*, and not merely *infer*, that the sought documents exist, that they are under the control of defendant, and that they are authentic." *Greenfield*, 831 F.3d at 116. Thus,

the Court finds that the RYI Judgment Debtors may withhold all foreign bank records that they are not required to maintain under the BSA.

Third, with respect to the records of fund transfers and currency transactions to accounts located outside of the United States, the individual RYI Judgment Debtors' claim that such records—to the extent that they exist at all—are protected by the Fifth Amendment as these records may contain evidence of transfers over $10,000 in value that were not properly reported.[5] Sealed Tr. 35–36 42–43.  The RYI Judgment Debtors do not specifically identify the criminal law which such actions would violate.  Regardless of what crime such actions constitute, the individual RYI Judgment Debtors may not withhold such records under the Fifth Amendment as such records are a "foregone conclusion."  *In re Mavashev*, 559 B.R. at 338 (quoting *In re Schick*, 215 B.R. at 9).  Financial institutions and money transfer providers in the United States are obligated to report international transfers and currency transactions in excess of $10,000.  *See Ratzlaf v. United States*, 510 U.S. 135, 140 (1994); 31 U.S.C. § 5313; 31 C.F.R. § 103.22. Moreover, "multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during any one business day."  31 C.F.R. § 103.22(c)(2). To the extent the transactions would have been effected by a financial institution or money transfer provider, transfers or currency transactions in excess of $10,000 are already known or knowable by the government and production of these documents does not communicate anything "of which the government is not already aware."  *Gen. Elec. Co. v. Liang*, 2014 WL 1089264, at

---

[5] During the *in camera* conference, RYI Counsel, at first, appeared to assert that certain records related to transfers from Y&S and RYI accounts are protected under the Fifth Amendment; however, RYI Counsel later noted that these "documents have been produced" and they would only assert a Fifth Amendment claim if Maki were questioned about such transactions.  Sealed Tr. 43–44.

*5 (C.D. Cal. Mar. 19, 2014); *see also Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974) ("[E]ven if the records were incriminating, their disclosure in the civil case would not have tended to incriminate the defendant.  Any incriminating information was already in the hands of the prosecuting authorities.").  Moreover, to the extent that any of these transfers were made by cash and thus may not have been reported by a financial institution, no incriminatory records presumably would exist of such transactions and thus there would be nothing to withhold.

Fourth, with respect to documents evidencing business earnings outside of the United States, the individual RYI Judgment Debtors note that such evidence may be withheld under the Fifth Amendment as no such foreign business earnings were reported on their U.S. tax forms and the I.R.S. requires U.S. nationals and resident aliens to report foreign income.  Sealed Tr. 37–38. To the extent such documents exist,[6] the Court agrees that the production of such documents would qualify for protection under the Fifth Amendment as they "would furnish a link in the chain of evidence needed to prosecute the claimant" for tax fraud.  *See Greenfield*, 831 F.3d at 114.  The I.R.S. requires U.S. citizens and resident alien to pay taxes on "worldwide income from all sources"; accordingly, such persons "must report all taxable income and pay taxes according to the Internal Revenue Code."[7]  If the RYI Judgment Debtors had not reported such income and yet conceded through the production of documents in response to Plaintiffs' subpoena that such foreign income exists or provided a link in the chain that would lead to the discovery of such income, the RYI Judgment Debtors would open themselves up to the risk of potential prosecution for tax fraud.[8]

---

[6] RYI Counsel implied at the conference that he did not anticipate Maki to withhold any documents responsive to this request under the Fifth Amendment.  Sealed Tr. 44.
[7] *U.S. Citizens and Resident Aliens Abroad*, I.R.S. (last visited Dec. 7, 2022), https://www.irs.gov/individuals/international-taxpayers/us-citizens-and-resident-aliens-abroad.
[8] Plaintiffs also do not argue that such information is subject to any exceptions to the Fifth

Fifth, regarding documents related to real estate properties and other tangible properties outside of the United States, RYI Counsel, during the *in camera* conference, did not articulate what law the holding of real estate abroad or other tangible properties *alone* would violate.  With one exception, the RYI Judgment Debtors thus have not met their burden of showing a real danger of self-incrimination and documents related solely to the holding of real estate abroad or other tangible properties may not be withheld under the Fifth Amendment.  *Est. of Fisher*, 905 F.2d at 649 (2d Cir. 1990) ("When the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege.").  The exception is with respect to foreign properties abroad that are income generating.  Foreign income was not reported on U.S. tax documents.  Sealed Tr. 38.  Because, as noted above, the production of such documents may open the RYI Judgment Debtors up to the risk of prosecution for tax fraud, any documents related to income-generating real estate properties located abroad may be withheld under the Fifth Amendment.

Finally, with respect to Maki's Japanese family registry, her Japanese identification documents (including her passport), and any investment accounts outside of the United States, RYI Counsel proffered no explanation for how the act of production of such documents—to the extent that they exist at all—would be incriminating.  RYI Counsel implied they would need to see the family registers in order to determine whether information contained in them would be incriminating.  Sealed Tr. 40.  But the Fifth Amendment cannot be asserted based merely on the fact that the evidence may contain "incriminating writing, whether his own or that of someone else."  *Fisher,* 425 U.S. at 410.  Instead, the party asserting the privilege must identify how the

---

Amendment privilege, including that such records are a foregone conclusion.

*act of production* itself is incriminating.  Accordingly, the Court denies the claim that Maki is excused from responding to the relevant requests under the Fifth Amendment privilege against self-incrimination.

## II.     Contempt Sanctions Against Defense Counsel

The Court has inherent power to sanction a party's attorneys, "a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000).  This power may be exercised where the attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59 (1975) (internal quotation marks omitted).

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  "Bad faith is the touchstone of an award under this statute."  *Revson*, 221 F.3d at 79 (quoting *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)).  "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are *so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  *Id.* (emphasis added) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).  "Thus, '[t]o impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.'"  *Id.* (quoting *Agee v. Paramount Communications Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)).

Plaintiffs argue that the Court should impose sanctions on RYI Counsel under its inherent authority and under 28 U.S.C. § 1927 as they have acted in bad faith.  Dkt. No. 576 at 17–19.  In

particular, Plaintiffs note that RYI Counsel have "failed and refused to proffer documents as directed by the Court," "asserted as an excuse that because of language barriers they have been unable to communicate with their clients as to their obligations to the Court and to Judgment Creditors," and have "raised specious and frivolous assertions that production of documents will violate an ostensible right of the individual RYI Judgment Debtors." *Id.* at 19.  In response, Pawar states that suggesting that their clients invoke the Fifth Amendment is not prolonging the proceedings.  Dkt. No. 580 at 5.  Siegel similarly states that it is upon the information he received from the RYI Judgment Debtors and his personal belief that certain information and documents within their possession are protected by the Fifth Amendment act of production privilege.  Dkt. No. 581 at 2.

Sanctions against RYI Counsel are not, at this time, warranted under the Court's inherent authority or under 28 U.S.C. § 1927.  While RYI Judgment Debtors' claims that certain documents were privileged under the Fifth Amendment and thus did not have to be produced were largely unavailing, *see supra* Section I, the reasons proffered by RYI Counsel during the *in camera* conference for believing that certain documents may be incriminating and thus subject to protection were, for the most part, not so baseless that the Court can infer that they were interposed solely for the purpose of delay and did not demonstrate bad faith.  RYI Counsel has also made some effort to ensure that their clients produce responsive post-judgment discovery to Plaintiffs and offered reasonable explanations as to why certain of documents had not yet been produced.  Specifically, Siegel asserted that one reason certain bank records had not been produced was due to a prior agreement between Plaintiffs' counsel and RYI Counsel regarding the length of time for which bank records were sought.  Tr. 17.

The Court does pause to note, however, that the decision not to impose sanctions against the RYI Counsel is not an easy one.  RYI Counsel has demonstrated a continued willingness throughout this litigation to assert discovery objections that have little to no basis in the law.  For example, at the November 23 hearing, Pawar noted that his clients were refusing to produce the contact information of third parties under the Fourteenth Amendment, although he could not articulate the basis for his belief as to why the Fourteenth Amendment barred production of such information.  Tr. 53.  When asked whether he had researched the question of whether there would be a Fourteenth Amendment violation in one party turning over the contact information it has for third parties, Pawar stated that he had not.  Tr. 53–54.  The Court declines to infer on the present record, however, and without more, that such assertions were for the purpose of delay or so multiplied the proceedings as to warrant sanctions.

## III.    RYI Request to Vacate Sanctions

RYI requests that the Court vacate the $5,000 contempt sanction imposed against it by this Court on September 27, 2022 as RYI does not "have the means or ability to pay."  Dkt. No. 573.  In support of its claim that RYI does not have the means or ability to pay, RYI submits the following evidence: (i) a copy of RYI's "most recent quarterly tax return" from June 1, 2022 to August 31, 2022, showing that it had no income for that period; (ii) a checking account statement from RYI's Capital One account for August 2022 with an ending balance of $0.00; and (iii) a savings account statement from RYI's Capital One account for the period from July 1, 2022 to September 30, 2022 with an ending balance of $0.00.[9]  Dkt. No. 572.  In response, Plaintiffs note that these documents do not explain how "RYI had a significant amount of cash

---

[9] The declaration in support of the motion also notes that "Attached as Exhibit D is a copy of Miho Maki's declaration."  Dkt. No. 572.  However, no such exhibit is attached to the declaration.

on hand about a year ago, had received over $612,000 in COVID related loans/grants, and per

Negita's testimony given under oath at the trial, RYI had at least $100,000 as of July 7, 2022."

Dkt. No. 582 ¶ 6.  Plaintiffs also note that, according to the website of the Secretary of State of

New York identifying New York corporations, as of October 26, 2022, RYI is still an active

corporation.  *Id.* ¶ 8; *see also* Dkt. No. 577 ¶¶ 57–65.

"The power of the Court to impose a coercive civil contempt sanction is limited by a

party's ability to comply with the Court's order."  *A.V. By Versace, Inc. v. Gianni Versace,*

*S.p.A.*, 279 F. Supp. 2d 341, 346 (S.D.N.Y. 2003).  "[A] party's complete inability, due to

poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a

defense to a charge of civil contempt."  *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir.

1995).  The party seeking to avoid contempt sanctions bears the burden of proving his inability

to pay.  *Id.*  "Conclusory statements are inadequate to carry this burden."  *Id.*  Instead, "the

alleged contemnor's burden is to establish his inability clearly, plainly, and unmistakably."  *Id.*

The Court denies the request to vacate the $5,000 sanction imposed against RYI by this

Court.  The evidence that RYI proffered does not "clearly, plainly, and unmistakably" establish

RYI's inability to pay this amount.  *See Marine Midland Bank*, 51 F.3d at 10.  While the

evidence that RYI submitted indicates that RYI does not have any money in its Capital One

accounts and thus could not use those accounts to pay the contempt fine, it does not establish that

RYI has no other means to pay this fine.  That RYI may have other means to pay the fine is

underscored by the fact that, as Plaintiffs note, RYI received hundreds of thousands of dollars

from COVID-19 relief programs in 2020 and 2021, Dkt. No. 577 ¶ 57, and RYI is still an active

corporation according to the New York Secretary of State, *see* Dkt. No. 582 ¶ 8.  RYI also offers

no explanation as to what happened to the money it received from the COVID-19 relief

programs and why, despite those funds, it is no longer able to pay a relatively small fine.  For these reasons, RYI is not relieved of the $5,000 fine imposed against it.

## CONCLUSION

The motion to compel and for sanctions against RYI Counsel is GRANTED IN PART and DENIED IN PART.  RYI's motion to vacate the sanctions imposed against it is DENIED.

Sanctions shall not run or be imposed against Yasuko, Negita, and/or Maki with respect to those records that may be lawfully withheld under the Fifth Amendment pursuant to this Opinion and Order.  For those records that Yasuko, Negita, and/or Maki had withheld as protected by the Fifth Amendment and this Court found were not lawfully withheld on that basis, sanctions will begin to run as to those records if not produced to Plaintiffs within seven (7) days of the issuance of this Opinion and Order.

The Clerk of Court is respectfully directed to close Dkt. Nos. 571, 574.


SO ORDERED.

Dated: December 12, 2022
      New York, New York
_____
                    LEWIS J. LIMAN
                  United States District Judge