## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ORNRAT KEAWSRI, SACHINA NAGAE, TAKAYUKI SEKIYA, SIWAPON TOPON, PIMPARAT KETCHATROT, THIRATHAM RAKSUK, PARICHAT KONGTUK, TANON LEECHOT, THANATHARN KULAPTIP, WANWISA NAKWIROT, NATCHA NATATPISIT, and PARADA MONGKOLKAJIT,** | **INDEX NO.  17-cv-2406 (LJL)(OTW)** |
| *Plaintiffs,* | |
| v. | |
| **RAMEN-YA INC., Y&S INTERNATIONAL CORP. d/b/a RAMEN-YA, MIHO MAKI, MASAHIKO NEGITA, TOSHIHITO KOBAYASHI, KENJI KORA and YASUKO NEGITA** | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER WITHDRAWING THE REFERENCE TO THE BANKRUPTCY COURT OF PLAINTIFFS' CLAIMS ASSERTED AGAINST MIHO MAKI AND RAMEN-YA INC. AND FOR APPOINTMENT OF A RECEIVER TO ADMINISTER THE ASSETS OF KU-RAKU NEW YORK. INC.**

**Florence Rostami**
**Neal Haber**

**FLORENCE ROSTAMI LAW, LLC**
**Attorneys for Plaintiffs**
**420 Lexington Avenue, Suite 1402**
**New York, New York 10170**
**(212) 209-3962**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ii

FACTS RELATED TO THIS MOTION................................. Error! Bookmark not defined.1

ARGUMENT ...................................................................................................... 4

    I.    THIS COURT POSSESSES SOLE AUTHORITY TO DETERMINE WHETHER THE WITHDRAWAL OF REFERENCE OF THIS MATTER TO THE SDNY BANKRUPTCY COURT IS APPROPRIATE …………………………………………………. 4

    II.    THE COURT SHOULD WITHDRAW THE REFERENCE TO THE SDNY BANKRUPTCY COURT IN THIS MATTER SINCE THE FACTORS IN THIS MATTER STRONGLY ESTABLISH THAT THIS COURT IS BEST EQUIPPED TO DETERMINE THE ISSUES IN THIS MATTER AND MAY DO SO CONSISTENT WITH THE APPLICABLE STANDARDS ENUNCIATED IN *IN RE ORION PICTURES CORPORATION*…………………………………………6

    III.    THE COURT SHOULD ORDER THAT A RECEIVER BE APPOINTED TO OPERATE KURAKU, AND SHOULD APPOINT HIRO SUGANO AS THE RECEIVER………………………………………………………...12

        A. Under CPLR 5228(a), The Court Has Authority to Appoint a Receiver to Operate Kuraku, and Such Appointment is Warranted andNecessary…………………………………...…………………...12

        B. The Court Should Appoint Hiro Sugano to Serve as Receiver Over Kuraku……………………………………………………………1**6**

CONCLUSION .................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**

*AJ Ruiz Consultoria Empresarial S.A. v. Banco Bilbao
    Vizcaya Argentaria, S.A.*, 2022 WL 1831171
    (S.D.N.Y. June 3, 2022) ................................................................ 5

*Cipollone v. Virginia True, Corporation*, 2021 WL
    2019205 (E.D.N.Y. May 25, 2021) ................................................. 8

*Daum Glob. Holdings Corp. v. Ybrant Digital Ltd.*,
    No. 13-CV-3135(AJN), 2018 WL 2122816
    (S.D.N.Y. May 8, 2018) ................................................................ 14

*Drucker v. Drucker,* 53 Misc.2d 446, 448, 278
    N.Y.S.2d 645 [Sup. Ct., Special Term,
    Queens County 1967]) .................................................................. 12

*Dynegy Danskammer, L.L.C. v. Peabody Coaltrade
    International Ltd*.., 905 F.Supp.2d 526 (S.D.N.Y.
    2012) ............................................................................................. 7

*Guevoura Fund Ltd. v. Sillerman*, 2018 WL
    6713124 (S.D.N.Y. Dec. 3, 2018) .............................................. 5. 8

*Hotel 71 Mezz Lender LLC v. Falor*, 14
    N.Y.3d 303, 926 N.E.2d 1202 (2010) ............................. 12, 13, 15

*In re Arbco Capital Mgmt., LLP*, 479 B.R. 254
    (S.D.N.Y.2012) ............................................................................. 7

*In re Connie's Trading Corp*., 2014 WL 1813751
    (S.D.N.Y. May 8, 2014) ................................................................ 9

*In re Iannacchino*, 2018 WL 1009279 (S.D.N.Y. Feb.
20, 2018) .................................................................................. 9

*In re Lenders Abstract and Settlement Service Inc.*, 493 B.R.
385 (E.D.N.Y. 2013) ............................................................ 9

*In re Lyondell Chem. Co.*, 467 B.R. 712
(S.D.N.Y.2012) .................................................................... 7

*In re Money Centers of America, Inc.*, 579
B.R. 710 (S.D.N.Y. 2016) ............................................... 5, 10

*In re Orion Pictures Corporation*, 4 F.3d
1095 (2d Cir. 1993) ....................................................... 6, 7, 8

*In re Westinghouse Electric Company LLC*, 2019 WL
1349500 (S.D.N.Y. Mar. 25, 2019) ................................. 6, 7

*Joremi Enters., Inc. v. Hershkowitz (In re New 118th
LLC),* 396 B.R. 885 (Bankr. S.D.N.Y. 2008) ................... 6

*Kramer v. Mahia*, 2013 WL 1629254 (E.D.N.Y. April 15, 2013)…...………………….....5-6, 10

*LTV Steel Co., Inc. v. City of Buffalo, N.Y. (In re
Chateaugay Corp.)*, No. 00 CIV. 9429(SHS),
2002 WL 484950 (S.D.N.Y. Mar. 29, 2002) ................... 7

*RKF3, LLC*, 2016 WL 4540842 (S.D.N.Y. Aug. 30,
2016) ...................................................................................... 8

*Skaff v. Progress Int'l, LLC*, No. 12 CIV 9045 KPF,
2014 WL 5454825 (S.D.N.Y. Oct. 28, 2014) ............... 14

*Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 CIV.
3698 LAP, 2013 WL 227546 (S.D.N.Y. Jan.
22, 2013) ............................................................................ 14

*Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) .......................................................................... 5, 7, 8

*Udel v. Udel,* 82 Misc.2d 882, 370 N.Y.S.2d 426 [N.Y. City Civ. Ct. 1975]) ................................................................ 13

*Union Cap. LLC v. 5BARZ Int'l Inc.*, No. 16-CV-6203 (KBF), 2017 WL 11615186 (S.D.N.Y. July 26, 2017) .................................................. 14

*United States v. Zitron*, No. 80 CIV. 6535 (RLC), 1990 WL 13278 (S.D.N.Y. Feb. 2, 1990) ........................... 13

**Statutes and Regulations**

28 U.S.C. § 157(a) ....................................................................... 4

28 U.S.C. § 157(b)(2) ................................................................ 6, 7

28 U.S.C. § 157(d) .................................................................... 5, 12

29 U.S.C. § 201 et seq. ................................................................. 1

Fed. R. Civ. P. 69 ..................................................................... 1, 12

*Amended Standard Order of Reference Re: Title 11*, 12 Misc.00032 (Jan 31. 2012). 1, 3, 4, 5, 6, 11

CPLR 5228(a) ........................................................................... 12

NY Labor Law § 196-d……………………………………………………………1

NY Labor Law  § 651……………………………………………………………1

NY Labor Law  § 652 ................................................................................................... 1

NY Hospitality Wage Order, 12 NYCRR Part 146 ........................................................ 1

6 J.Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 5228.04 (1991)…………………13

Plaintiffs (hereinafter "Plaintiffs" or "Judgment Creditors") respectfully submit this Memorandum of Law in support of their motion for (i) an order that the reference to the United States Bankruptcy Court, Southern District of New York of claims asserted by Judgment Creditors against Defendants/Judgment Debtors Miho Maki ("Maki") and Ramen-Ya Inc. ("RYI") in accordance with the *Amended Standard Order of Reference Re: Title 11*, 12 Misc.00032, dated January 31, 2012, be withdrawn; and (ii) an order that a receiver be appointed to administer the asset of RYI, specifically the Kuraku restaurant owned and operated by the alter ego of RYI, for the purpose of maintaining this asset for partial satisfaction of the Judgment of this Court for which RYI is jointly and severally liable, and that Hiro Sugano be appointed as receiver over Kuraku.

## FACTS RELATED TO THIS MOTION

The facts related to this Motion are set forth in the accompanying Declaration of Florence Rostami ("Decl.") and exhibits annexed thereto; in the Declaration and Reply Declaration of Florence Rostami filed in support of Plaintiffs' Motion Pursuant to Fed.R.Civ.P. 69 and Applicable New York Statutes [DE 633 and DE 641] and the exhibits annexed thereto; and in documents filed with the Court with respect to bankruptcy filings made by Defendants Yasuko Negita ("Yasuko") and Masahiko Negita ("Negita") in the United States Bankruptcy Court for the District of New Jersey.

In brief, on August 10, 2021, this Court issued an Opinion and Order [DE 419] in which it determined that RYI, Y&S, Negita, Maki and Kora ("§Judgment Debtors") had violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law §§ 196-d, 651, 652 ("NYLL"), and the New York Hospitality Wage Order, 12 N.Y.C.R.R. Part 146 ("Hospitality Wage Order"), collectively the "Wage Payment Laws", in numerous respects with regard to Plaintiffs, and that they were jointly and severally liable to Plaintiffs for damages, penalties,

attorney's fees and post-judgment interest. On July 11, 2022, after a trial on the issue of Yasuko's "employer" status, the Court rendered an oral decision ruling that Yasuko was an "employer" of Plaintiffs and was also jointly and severally liable to Plaintiffs. On August 8, 2022, the Court issued an Opinion and Order determining that Yasuko, Negita, Maki, Kora, RYI and Y&S are jointly and severally liable to Plaintiffs in the amount of $687,825.81 in damages and penalties, $1,110,807.82 in attorney's fees, and post-judgment interest. [DE 512] On August 10, 2022, the Court issued a judgment ("Judgment") [DE 514] and an Order enjoining Judgment Debtors from dissipating assets out of the reach of Plaintiffs to satisfy the Judgment.[1] [DE 515]

Following the Court's issuance of the Judgment, Judgment Creditors began their efforts to locate Judgment Debtors' assets and to collect the monies to which they are entitled. Plaintiffs have filed numerous motions with this Court concerning compelling discovery of Judgment Debtors' assets and recovery of assets for satisfaction of the Judgment, which are found on the docket of this matter. Notwithstanding the numerous orders of this Court, to date, ***Judgment Debtors have not paid even one penny toward satisfaction of the Judgment***.

On March 23, 2023, Yasuko and Negita filed a Voluntary Petition for Bankruptcy in the United States Bankruptcy Court for the District of New Jersey. [Declaration of Florence Rostami ("Decl."), § 6; DE 646-1]

On June 23, 2023, Maki and RYI filed separate voluntary petitions for bankruptcy ("Maki Petition" and "RYI Petition") with the United States Bankruptcy Court for the Southern District of New York (the "SDNY Bankruptcy Court"). [Decl., § 7; DE 670-1, DE 670-2] On June 27, 2023, Maki filed with the SDNY Bankruptcy Court an amended bankruptcy petition ("Maki Amended Petition"). Decl., § 9, and Ex. 1]

---

[1]  This Order confirmed the Court's temporary restraining order dated July 29, 2022 prohibiting the dissipation of Judgment Debtors' assets. [DE 505]

In accordance with the Southern District of New York *Amended Standard Order of Reference Re: Title 11*, 12 Misc.00032, dated January 31, 2012 (the "Stay Order"), all proceedings and actions with respect to Maki are automatically stayed because of the filing of the Maki Petition and all proceedings and actions with respect to RYI are automatically stayed because of the filing of the RYI Petition. However, there are several pending motions before this Court related to Maki, RYI, other Judgment Debtors, and non-parties, each of which was filed prior to the filing of the Maki Petition and the RYI Petition, including a motion dated April 13, 2023 ("Alter Ego Motion") to hold that Ku-Raku New York, Inc. ("Kuraku") is an *alter ego* or disguised continuance of RYI and to order that certain funds wrongfully transferred from RYI and other Judgment Debtors be "clawed back" [Decl., § 10]; a motion for the Court to compel Kora to pay certain sums that were wrongfully transferred to him ("Kora Motion") [Decl., § 13]; and a motion that Yasuko, Negita, Maki, and Kora be held in criminal contempt for their defiance of this Court's orders and their obligations with respect to this proceeding ("Criminal Contempt Motion"). [Decl., § 14]

The Court held a hearing on the Alter Ego Motion on May 18, 2023, during which some testimony was adduced from Maki; this hearing was continued until June 26, 2023. [Decl., § 12] At the continued hearing on June 26, 2023, the Court heard the positions of the parties as to the effect of the Stay Order on the pending motions and the Criminal Contempt Motion. [Decl., § 16] At the conclusion of the June 26, 2023 hearing, the Court stated that the evidentiary hearing on the Alter Ego Motion would recommence on July 17, 2023 and made other determinations on pending matters, including granting leave for Plaintiffs to move for withdrawal of the reference of this matter to the SDNY Bankruptcy Court as provided by the Stay Order, which were embodied in an Order issued on June 28, 2023. [Decl., § 16; DE 673] The Court also orally provided leave to move for appointment of a receiver for Kuraku. [Decl., § 17]

Subsequent to the June 26, 2023 hearing, counsel for Plaintiffs and the appointed Chapter Seven trustee for the separate bankruptcy proceedings commenced by Maki and by RYI ("Trustee") reached an agreement whereby the Trustee consented to withdrawal of the reference as to these matters and the continuation of these matters before this Court. [Decl., § 19]

The Rostami Declaration sets forth in detail the reasons that the withdrawal of reference is fully justified in this matter, and also addresses the compelling reasons for appointment of a receiver to operate Kuraku. This memorandum sets forth the legal basis, under applicable statutes, orders, and caselaw, for this Court to grant to Plaintiffs the relief they seek by this motion.

## ARGUMENT

### I.   THIS COURT POSSESSES SOLE AUTHORITY TO DETERMINE WHETHER THE WITHDRAWAL OF REFERENCE OF THIS MATTER TO THE SDNY BANKRUPTCY COURT IS APPROPRIATE

Section 157(a) of Title 28 provides: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Thus, by the plain language of Section 157(a), it is the province of the District Court to determine whether, and in what circumstances, cases arising under Title 11 (the Bankruptcy Code) will be referred to the bankruptcy judges of the SDNY Bankruptcy Court.

On January 31, 2012, the Chief Judge of the Southern District of New York issued the Stay Order, in which the Chief Judge ordered: "Pursuant to 28 U.S.C. Section 157(a) any and all cases arising under title 11 and any or all proceedings arising under title 11 or related to a case under title 11 are referred to the bankruptcy judges for this jurisdiction." The Stay Order was indisputably in response to and based upon the United States Supreme Court's decision in *Stern v. Marshall*,

564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), in which the Supreme Court held that it was not constitutional for a bankruptcy court (which is not an Article III court) to enter a final order or judgment in any matter that is committed by the United States Constitution to the federal courts established pursuant to Article III. The second paragraph of the Stay Order establishes the procedure for consideration and review by the District Court of any final order or judgment that must, under the United States Constitution, be made by an Article III court.

Section 157(d) of Title 28 makes clear that it is the district court that possesses the authority to determine whether the reference to the bankruptcy courts of a district of matters falling within Section 157(a) will be withdrawn in a particular matter. Section 157(d) states:

> The **district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party**, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

(emphasis added).

Subsequent to the issuance of the Stay Order, many courts in this district have considered and determined whether withdrawal of the reference is appropriate under the Stay Order in a particular matter. See, e.g., *AJ Ruiz Consultoria Empresarial S.A. v. Banco Bilbao Vizcaya Argentaria, S.A.*, 2022 WL 1831171, at *2 (S.D.N.Y. June 3, 2022)(specifically referencing the Stay Order); *Guevoura Fund Ltd. v. Sillerman*, 2018 WL 6713124, at *2 (S.D.N.Y. Dec. 3, 2018)(specifically referencing the Stay Order); *In re Money Centers of America, Inc.*, 579 B.R. 710, 713 and fn. 11 (S.D.N.Y. 2016)(specifically referencing the Stay Order); see also *Kramer v. Mahia*, 2013 WL 1629254 at *3 (E.D.N.Y. April 15, 2013)(district court considered withdrawal of reference under Eastern District of New York order analogous to the Stay Order).

Thus, it is the province of this Court to determine whether withdrawal of the reference to the SDNY Bankruptcy Court is warranted.

**II.    THE COURT SHOULD WITHDRAW THE REFERENCE TO THE SDNY BANKRUPTCY COURT IN THIS MATTER SINCE THE FACTORS IN THIS MATTER STRONGLY ESTABLISH THAT THIS COURT IS BEST EQUIPPED TO DETERMINE THE ISSUES IN THIS MATTER AND MAY DO SO CONSISTENT WITH THE APPLICABLE STANDARDS ENUNCIATED IN *IN RE ORION PICTURES CORPORATION***

The factors to be considered by the district court in determining whether there is "cause" to withdraw the reference in a particular matter were first enunciated by the Second Circuit Court of Appeals in *In re Orion Pictures Corporation*, 4 F.3d 1095 (2d Cir. 1993). Under the *Orion* formulation set forth in 1993, the district court "should first evaluate whether a particular claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *Id*., at 1101. Section 157(b)(2) of Title 28 set forth a non-exhaustive list of types of matters and claims that would be considered "core proceedings."  In sum, applying *Orion* it was held that a claim is "core" if it directly invokes a substantive right under the Bankruptcy Code or could only arise in the context of a bankruptcy proceeding. *In re Westinghouse Electric Company LLC*, 2019 WL 1349500, at *4 (S.D.N.Y. Mar. 25, 2019)(*quoting Joremi Enters., Inc. v. Hershkowitz (In re New 118th LLC),* 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008)). *Orion* set forth a listing of factors to be considered in determining a motion for withdrawal of reference: "Thus once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Orion*, *supra*, at 1101.

However, the Supreme Court in *Stern*, *supra*, substantially modified the factors to be considered in determining whether withdrawal of the reference is warranted in its conclusion that

the core/non-core distinction was not controlling, but rather that this was only one factor—and not the most important factor—in determining whether to withdraw the reference. See *In re Arbco Capital Mgmt., LLP*, 479 B.R. 254, 262 (S.D.N.Y.2012) ("This Court concludes, as have others in this district, that the relevant inquiry under the first prong of the *Orion* test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter.")(quoted in *Dynegy Danskammer, L.L.C. v. Peabody Coaltrade International Ltd*.., 905 F.Supp.2d 526, 529 (S.D.N.Y. 2012)); *In re Lyondell Chem. Co*., 467 B.R. 712, 719 (S.D.N.Y.2012) ("Under *Stern*, it is not the core/non-core distinction but Article III that determines the bankruptcy court's adjudicative authority. Thus, a district court ... must first determine whether or not the bankruptcy court has constitutional authority to enter final judgment on the claim.... To the extent the core/non-core distinction held a privileged position among the *Orion* factors before *Stern*, this is no longer the case.")(quoted in *Dynegy*, *supra*)). As articulated in *Westinghouse*, *supra*, regardless of whether a claim may be core, withdrawal of reference can be made where warranted: "Although withdrawal of the reference is less often appropriate where a claim falls within a bankruptcy court's 'core' jurisdiction, … a district court has the discretion to nonetheless withdraw the reference under those circumstances." (citing *LTV Steel Co., Inc. v. City of Buffalo, N.Y. (In re Chateaugay Corp.)*, No. 00 CIV. 9429(SHS), 2002 WL 484950, at *6 (S.D.N.Y. Mar. 29, 2002) in which the court stated that a determination that a matter is "core" is "not dispositive, and in the final analysis, the critical question is efficiency and uniformity" (internal quotation marks omitted)). Thus, notwithstanding the enumeration of "core proceedings" in 28 U.S.C. § 157(b)(2), *Orion* and its progeny, as modified by *Stern*, hold that even if a matter is found to be a "core proceeding" a district court has the discretion to nonetheless withdraw the reference under

appropriate circumstances. See *Guevoura*, *supra*, at \*5 ("That the adversary proceeding is a core proceeding is not dispositive under *Orion.* (citing cases)".

Applying the *Orion* factors as modified by *Stern*, courts in this circuit have consistently applied a test of whether the SDNY Bankruptcy Court has final adjudicatory authority over the claims at issue under Stern's constitutional analysis and a range of additional factors. The court in *Cipollone v. Virginia True, Corporation*, 2021 WL 2019205, at \*2 (E.D.N.Y. May 25, 2021) enumerated these factors (citing *Orion*) as follows: (1) judicial economy, (2) uniform bankruptcy administration, (3) reducing forum shopping, (4) economical use of debtor and creditor resources, (5) expediting the bankruptcy process, and (6) the presence (or absence) of a jury demand.

Examination of the facts of this case in its entirety and with respect to the specific matters for which withdrawal of the reference is being sought and in light of the Trustee's consent indisputably establishes ample "cause" for withdrawal of the reference.

**Final Adjudicative Authority**—This Court will have final adjudicative authority over substantial matters relating to the issues with respect to Maki and RYI, which focus on common law claims of alter ego and fraudulent conveyance under common law rather than matters specifically derived from the Bankruptcy Code, such that any decision by the SDNY Bankruptcy Court with respect to those matters will nevertheless be subject to review by this Court. See *RKF3, LLC*, 2016 WL 4540842, at \*7-10 (S.D.N.Y. Aug. 30, 2016)(district court reviewed each claim advanced against debtor and determined that the bankruptcy court did not have final adjudicatory authority over breach of fiduciary duty claims, contribution claims, *or alter ego claims*).

**Judicial Economy**: This Court has been adjudicating this case for more than six years. It is fully familiar with all issues in the case, including the matters involved in the Alter Ego Motion, the

Kora Motion, and the instant motion, and the antecedent facts that relate to the motions. Indeed, this Court has already held hearings on the Alter Ego Motion, as well as on prior matters during which testimony pertinent to the Alter Ego Motion and the instant motion was obtained, and is fully familiar with the voluminous amount of documents relating to this case. Thus, this Court is in the best position to evaluate the evidence and determine that motion, as well as the instant motion and other matters concerning the execution of the judgment and the assets of Maki and RYI. The SDNY Bankruptcy Court has not expended any judicial resources with respect to these matters, so that judicial time and resources will not be wasted if these matters are maintained in this Court. See *In re Iannacchino*, 2018 WL 1009279, at *43 (S.D.N.Y. Feb. 20, 2018)(withdrawal of reference granted where, among other factors, the bankruptcy court had had little activity on the adversary proceeding for which withdrawal was sought); *In re Lenders Abstract and Settlement Service Inc.*, 493 B.R. 385, 397 (E.D.N.Y. 2013)("In addition, of importance, as of December 13, 2012, the subject Adversary Proceeding still remains in its very early stages…. Therefore, the bankruptcy court has not already expended judicial resources with respect to the Trustee's breach of contract claim."). Cf. *In re Connie's Trading Corp.*, 2014 WL 1813751, at *9 (S.D.N.Y. May 8, 2014)(withdrawal of reference denied where the adversary proceeding had been pending in the bankruptcy court for two years, and the bankruptcy court had supervised discovery, had held numerous hearings, and had pending before it cross-motions for summary judgment); *Mahia*, *supra*, at *5 (withdrawal of reference denied where bankruptcy court had administered the adversary proceeding for approximately eighteen months, oversaw discovery, held hearings and decided a related sanctions motion, and was more intimately familiar with the facts, circumstances, and legal issues).[2] Additionally, adjudication of the matters before this Court concerning Maki and

---

[2]  The court in *Mahia* also found that the defendant, which had moved for withdrawal of the reference, had willfully and needlessly protracted the litigation in the bankruptcy court by raising baseless counterclaims, responding late to

RYI does not require specialized knowledge or expertise as to bankruptcy matters, which further supports withdrawal of the reference. See *Money Centers*, *supra* at 715. Moreover, this Court will retain jurisdiction over matters related to non-bankruptcy debtors, including those asserted in the Alter Ego Motion concerning Kil S. Jung ("Jung") (the accountant for all Defendants) and Haruna Maki and those asserted in the Kora Motion, which militates in favor of having all matters considered by this Court.

**Uniform Bankruptcy Administration**: Continuing the reference of this matter in the SDNY Bankruptcy Court will not advance the unform administration of bankruptcy. Given that two of the Defendants have filed petitions for bankruptcy in New Jersey, adding another court (the SDNY Bankruptcy Court) into the mix will not enhance the unform administration of this matter but will add another court with another forum that will likely render determinations that must be reconciled with the decisions of this Court and the New Jersey bankruptcy forum. This Court is best suited to address matters before it with due regard for the administration of the bankruptcy petitions filed by each of the RYI Defendants (Yasuko, Negita, Maki and RYI) consistent with its in-depth knowledge of the facts and law concerning these claims.

**Reducing Forum Shopping**: As described in the Rostami Declaration, the overwhelming proportion of the debts identified by Maki in the Maki Amended Bankruptcy Petition and by RYI in the RYI Petition are secured obligations owed by them to Plaintiffs. [Decl., §§ 23-24] Thus, it is abundantly evident that application of the Stay Order to Maki and RYI at this late date in this case is designed by them to remove this Court from further consideration of matters relating to

_____

court orders, failing to respond to discovery requests, making multiple adjournment requests, and refusing to participate in the sanctions motion before the bankruptcy court. The court stated: "Defendant cannot be permitted to shop for a new forum merely because his attempts to obstruct the Bankruptcy Court process failed." *Mahia*, *supra*, at *5 In this matter, the conduct of RYI and Maki, and the other Defendants, should not be rewarded by transferring these claims to a different forum—the SDNY Bankruptcy Court.

their abject failure to comply with the Court's Judgment against them and is an architype of forum-shopping that this Court should not countenance.

**Economic Use of Creditor and Debtor Resources**: If withdrawal of the reference is denied, not only will this Court's resources have been wasted, but Plaintiffs as well as Maki and RYI will be required to use their resources to begin and pursue the instant matters in the SDNY Bankruptcy Court, which will serve only to further dissipate the assets of Maki and RYI (and of Kuraku, which has been paying bankruptcy fees for RYI and presumably also Maki [Decl., § 36]). It will be much more economical for all concerned to continue adjudication of the pending matters and other matters related to Maki and RYI before this Court.

**Expediting the Bankruptcy Process**: Determination by this Court of the matters already before this Court and other matters concerning Maki and RYI that may arise will expedite the bankruptcy process by ensuring timely and consistent decisions on issues that the SDNY Bankruptcy Court can apply within its role of administering the estates of the two bankrupts (Maki and RYI).

**Presence (or Absence) of a Jury Demand**: This factor does not favor or work against the withdrawal of reference. The issues before this Court are post-Judgment, and the Court has held hearings on those issues without a jury. Indeed, since these matters are addressed exclusively toward the enforcement of the Judgment previously rendered by this Court on a motion for summary judgment [DE 419] and a hearing on Yasuko's status as an employer for which her counsel withdrew his initial demand for a jury trial.

For all of these reasons, Plaintiffs have established compelling cause for the Court to exercise its authority under 28 U.S.C. §157(d) to withdraw the reference of the matters relating to Maki and RYI from the SDNY Bankruptcy Court.

III.   **THE COURT SHOULD ORDER THAT A RECEIVER BE APPOINTED TO OPERATE KURAKU, AND SHOULD APPOINT HIRO SUGANO AS THE RECEIVER**

   A.   <u>**Under CPLR 5228(a), The Court Has Authority to Appoint a Receiver to Operate Kuraku, and Such Appointment Is Warranted and Necessary**</u>

Fed.R.Civ.P. 69 provides that post-judgment matters shall be conducted in accordance with the rules of the state in which the judgment has been entered. CPLR 5228(a) authorizes the appointment of a receiver to operate a business that is subject to a judgment. It states:

> Upon motion of a judgment creditor, upon such notice as the court may require, the court may appoint a receiver who may be authorized to administer, collect, improve, … any … personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment. As far as practicable, the court shall require that notice be given to the judgment debtor and to any other judgment creditors of the judgment debtor. The order of appointment ***shall specify*** the property to be received, ***the duties of the receiver and the manner in which they are to be performed***. … ***A receiver shall be entitled to necessary expenses*** and to such commissions, not exceeding five percent of the sums received and disbursed by him, as the court which appointed him allows, but ***if a judgment creditor is appointed receiver, he shall not be entitled to compensation***.

(emphasis added)

The appointment of a receiver is within the discretion of this Court. "The appointment of a receiver pursuant to section 5228(a) is a matter within the court's discretion (*see Drucker v. Drucker,* 53 Misc.2d 446, 448, 278 N.Y.S.2d 645 [Sup. Ct., Special Term, Queens County 1967])." *Hotel 71 Mezz Lender LLC v. Falor,* 14 N.Y.3d 303, 317, 926 N.E.2d 1202, 1211 (2010). "The appointment of a receiver under § 5228(a) is a matter of judicial discretion. *See* 6 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 5228.04, at 52–497 (1991)." *United States v. Vulpis*, 967 F.2d 734, 736 (2d Cir. 1992).

A receiver should be appointed when judgment creditor has no viable alternative remedy, there is no ready market for the judgment debtor's asset, there is risk of fraud or that continued control by debtor would result in the dissipation of the assets against which a judgment can be enforced, and appointment of a receiver could increase the likelihood that the judgment will be satisfied. In *Hotel 71 Mezz Lender*, *supra* at 1211–12 (2010), the Court of Appeals articulated factors to be considered and held that:

> A motion to appoint a receiver should only be "granted ... when a special reason appears to justify one" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5228:l, at 324). In deciding whether the appointment of receiver is justified, courts have considered the "(1) alternative remedies available to the creditor ...; (2) the degree to which receivership will increase the likelihood of satisfaction ...; and (3) the risk of fraud or insolvency if a receiver is not appointed" (*United States v. Zitron,* 1990 WL 13278, *1, 1990 U.S. Dist LEXIS 1049, *2 [S.D.N.Y., Feb. 2, 1990] [citations omitted] ). "A receivership has been held especially appropriate when the property interest involved is intangible, lacks a ready market, and presents nothing that a sheriff can work with at an auction, such as the interest of a psychiatrist/judgment debtor in a professional corporation of which he is a member" (Siegel, N.Y. Prac § 512, at 872 [4th ed]; *see Udel v. Udel,* 82 Misc.2d 882, 370 N.Y.S.2d 426 [N.Y. City Civ. Ct. 1975] ).

*Hotel 71 Mezz Lender* affirmed the appointment of the received because there was no ready market for the defendant's ownership interest in the limited liability companies that were subject of the receivership; the defendant had repeatedly ignored the trial court's discovery orders; and that there was a risk that the continued management of the entities by the defendant would result in dissipation of their assets. In *United States v. Zitron*, No. 80 CIV. 6535 (RLC), 1990 WL 13278, at *1-2 (S.D.N.Y. Feb. 2, 1990), the court granted the motion for the appointment of a receiver because it found that "… extensive negotiations, subpoenas, oral agreements and repayment schedules have failed to secure a single payment from [judgment debtor], and "... leaving the

property in the custody of the judgment debtor creates a risk of fraud or *insolvency*."(emphasis in the original)

In *Union Cap. LLC v. 5BARZ Int'l Inc.*, No. 16-CV-6203 (KBF), 2017 WL 11615186, at *3 (S.D.N.Y. July 26, 2017), the court granted the motion for receivership based on its finding that "[i]t seems to the Court that ***[defendant] would rather avoid the Court's orders than comply with them***. The Court therefore finds that [defendant's] lack of liquid or readily marketable assets, ***its deceptive behavior***, and its ***repeated refusal to voluntarily comply with legal obligations*** create a significant likelihood that the judgment will not be satisfied absent the appointment of a receiver." (emphasis added) In *Daum Glob. Holdings Corp. v. Ybrant Digital Ltd.*, No. 13-CV-3135(AJN), 2018 WL 2122816, at *4 (S.D.N.Y. May 8, 2018), the court granted the motion to appoint a receiver because it found that there was no ready market for the share of the capital stock of defendant's entity, and that there was evidence that defendant had committed fraud by transferring assets of the corporation even though the court had not made a finding that the fraud was committed intentionally. In *Skaff v. Progress Int'l, LLC*, No. 12 CIV 9045 KPF, 2014 WL 5454825, at *9 (S.D.N.Y. Oct. 28, 2014), the court granted the motion for appointment of a receiver because the court found that where the judgment debtor has flouted his its legal obligation and all attempts to enforcement the judgment was futile, and that such an appointment was likely to result in some recovery by judgment creditor. In *Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 CIV 3698 LAP, 2013 WL 227546, at *6 (S.D.N.Y. Jan. 22, 2013), the court granted the motion to appoint a receiver because it found that the judgment debtor "had no intention" to satisfy the judgment; that appointing a receiver would increase the likelihood that there will be some assets to satisfy the judgment; and that there was the risk that judgment debtor was engaged in fraudulent actions to become judgment proof.

14

As described in detail in the Rostami Declaration, Maki, Yasuko and Negita, aided by Jung, have engaged in numerous actions with respect to the creation and operation of Kuraku that demonstrates that they have not operated and do not operate Kuraku as a bona fide business entity but rather that they are plundering Kuraku's assets for themselves. Consequently, to protect Kuraku's assets to ensure that they are available for satisfaction of the Judgment, the Court must appoint a receiver to operate Kuraku.

Analysis of the factors listed in *Hotel 71 Mezz Lender* favors the appointment of receiver for Kuraku. Plaintiffs satisfy all four factors. First,  because the Negitas, Maki, and RYI have filed for bankruptcy, Judgment Creditors' remedies are extremely limited. Based on the documents produced by Kora and Y&S, they have very limited assets. To date, Plaintiffs could only discover $150,000 Y&S paid to Jung, $150,000 Jung paid to Kora, and $55,000 Y&S paid to Haruna. However, to date, despite Plaintiffs' demand for turnover of these funds and other funds to them, not one cent has been paid.

Second, if a receiver is appointed for Kuraku, it is very likely that there will be some money left after payment for Kuraku's legitimate operation to be used to satisfy the judgment.

Third, without a receiver, there is a high risk—in fact certainty—that Yasuko, Negita,  and Maki will dissipate the earnings of Kuraku by paying themselves unreasonable salaries, borrowing funds to pay their legal fee for the frivolous bankruptcies they have filed; fraudulently transferring the cash revenue of Kuraku to their daughters and others as they have done with RYI and Y&S's revenue.

Fourth, there is no viable and ready market for Kuraku's capital stock. Even Yasuko and Maki admit that the value of Kuraku is unknown. Even though there is a market for the restaurant,

its sale can only generate very small revenue, whereas continuing the operation of Kuraku will generate more funds to satisfy Plaintiffs' judgment.

**B. <u>The Court Should Appoint Hiro Sugano to Serve as Receiver Over Kuraku</u>**

The Court should appoint Sugano to serve as receiver over Kuraku, since he is eminently qualified for this role. His qualifications are detailed in paragraph 47 of the Rostami Declaration. Because some of the employees of Kuraku are Japanese speakers and there is a likelihood that some of its suppliers are also Japanese speakers, Sugano who is proficient in Japanese and English is uniquely qualified for this task. Furthermore, Sugano is independent of Plaintiffs even though he is my spouse and an employee of my firm.

<u>**CONCLUSION**</u>

Plaintiffs respectfully submit that, upon full consideration of Plaintiffs' motion, including the declaration and exhibits filed herewith and the entirety of the record in this matter, the Court should grant Plaintiffs' motion and conclude that (a) this Court has authority to withdraw the reference to the SDNY Bankruptcy Court of matters related to Maki and RYI; (2) that Plaintiffs have established ample cause for withdrawal of the reference and that the reference will therefore be withdrawn; and (3) that Hiro Sugano shall be appointed as the receiver to operate Kuraku and shall exercise the authority and perform the duties of a receiver as enumerated in Plaintiffs' motion.

Dated: New York, New York
      July 3, 2023

                                    Respectfully submitted,

                                    FLORENCE ROSTAMI LAW LLC

                                    By:     <u>/s/ Florence Rostami</u>
                                          Florence Rostami
                                          Neal Haber
                                          420 Lexington Avenue, Suite 1402

New York, New York 10170
(212) 209-3962