UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORNRAT KEAWSRI, et. al.,<br><br>            *Plaintiffs,*<br><br>v.<br><br>RAMEN-YA INC., et. al.,<br><br>            *Defendants.* | INDEX NO. 17-cv-02406 (LJL)(OTW) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF A RECEIVER TO OPERATE RAMEN KURAKU NEW YORK INC., UPON DETERMINATION BY THE COURT THAT KURAKU IS AN "ALTER EGO" OF RAMEN-YA INC.**

This memorandum of law is filed by the undersigned as Special Counsel for Alan Nisselson, the Chapter 7 Trustee in the matter of *In re Ramen-Ya Inc.*, Bankr. Case No. 23-10979-mg and *In re Miho Maki*, Bankr. Case No. 23-10978-mg, which matters are pending in the United States Bankruptcy Court for the Southern District of New York (the "SDNY Bankruptcy Court"),[1]

On April 13, 2023, Plaintiffs/Judgment Creditors in this action, who were and continue to be represented by FRL, filed a motion [DE 632] for an order *inter alia* determining that an entity known as Ku-Raku New York, Inc. ("Kuraku") is an alter ego of Ramen-Ya Inc. ("RYI"), one of the Defendants and Judgment Debtors in this matter pursuant to the judgment entered by this Court against RYI and other Defendants on August 10, 2022 ("Judgment") and that as such RYI must turn over to Plaintiffs/Judgment Creditors its asset, specifically a restaurant called Ramen Kuraku that operates at 3952 Broadway, New York, New York 10032 ("Restaurant Kuraku).

---

[1] On July 12, 2023, Leslie S. Barr noticed his appearance in this matter as counsel for Alan Nisselson, as bankruptcy Trustee for Defendants Ramen-ya Inc. and Miho Maki (the "Trustee"). [DE 685] On July 26, 2023, Florence Rostami of Florence Rostami Law LLC ("FRL") informed the Court that the SDNY Bankruptcy Court had approved retention of FRL to represent the Trustee with respect to pursuing the respective estates' assets in this litigation, effective as of July 5, 2023. [DE 707, 707-1, 707-2]

1

On June 23, 2023, RYI filed with the Bankruptcy Court a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. [DE 667] That same day, Miho Maki ("Maki") filed a similar petition with the Bankruptcy Court. [DE 665] On July 3, 2023, FRL filed with this Court on behalf of Plaintiffs/Judgment Creditors a motion for an order withdrawing the reference to the SDNY Bankruptcy Court of their claims asserted against RYI and Maki and for appointment of a receiver to administer the assets of Kuraku [DE 675], supported by a declaration by Rostami and a memorandum of law. [DE 676, DE 676-1 to DE 676-4, DE 677] On July 14, 2023, Barry Roy filed a Notice of Appearance as "bankruptcy counsel to defendants Masahiko and Yasuko Negita." [DE 697];[2] that same day, he filed a letter brief on behalf of Masahiko and Yasuko Negita in opposition to withdrawal of the reference and for appointment of a receiver over Kuraku ("Opp. Br.") [DE 698] and a "Certification of Yasuko Negita in Opposition to Motion for an Order Withdrawing the Reference … and for Appointment of a Receiver to Administer the Assets of Ku-Raku New York Inc." ("Yasuko Certification") [DE 698-1]

On July 26, 2023, this Court granted the motion for withdrawal of referral. [DE 708]

This memorandum of law is submitted to address the letter brief in opposition [DE 698] insofar as objection is raised to the appointment by this Court of a receiver to administer and operate Kuraku.[3]

---

[2] On March 23, 2023, Barry Roy, Esq. filed with the United States Bankruptcy Court for the District of New Jersey (the "NJ Bankruptcy Court") a joint petition of bankruptcy on behalf of Defendants/Judgment Debtors Yasuko Negita ("Yasuko") and Masahiko Negita ("Negita"). [DE 681-1]

[3] The letter brief in opposition is assertedly filed on behalf of Yasuko and Negita jointly. ("Specifically, **the Negitas** oppose the appointment of a receiver over Ku-Raku New York Inc." (Opp. Br. at 1 (emphasis added))) As the voluminous record in this matter reveals, Negita did not have any ownership interest at any time in RYI and has not claimed at any time to have any ownership interest in Kuraku. Statements proffered to this Court that purportedly advance the positions and claims of "the Negitas" simply reflects the penchant of Yasuko, Negita, Maki and the other Defendants/Judgment Debtors *to play fast and loose with their respective claims and positions to evade responsibility for their collective misconduct*.

2

## ARGUMENT

### I.     THE YASUKO CERTIFICATION SHOULD BE STRICKEN

The Yasuko Certification [DE 698-1] should be stricken because it fails to meet the legal requirements of an unsworn statement. The Yasuko Certification states, at its conclusion: "***I am aware that if any of the foregoing responses are willfully false, I am subject to punishment.***" However, this statement fails to comply with 28 U.S.C.A. § 1746 which requires an unsworn statement be made subject to "penalty of perjury." In *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487–88 (2d Cir. 2013), the Second Circuit held that the specific language in Yasuko's testimony is not compliant with Section 1746. The Second Circuit held that: "… omission of the phrase 'under penalty of perjury' would 'allow[ ] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods.'" *Nissho–Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir.1988)." *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483 at 488 (footnote omitted)

Additionally, the Yasuko Certification is written in English, without submission of a certified Japanese translation and any attestation that Yasuko understood the English version of the document on which she affixed her signature and that she submitted to this Court. Yasuko utilized a Japanese translator when she testified before this Court on July 7 and 8, 2022, and she testified that in her deposition in this matter, questions were translated from English to Japanese and her answers were translated from Japanese to English. [Tr. 7/7/22, 384:15-384:18] A statement by a party that cannot speak and read English must be submitted with a certified translation or a declaration that she signed the statement after it was translated for her. *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 210 (E.D.N.Y. 2021); *Heredia v. Americare, Inc.*, No. 17 CIV. 06219 (RWL), 2020 WL 3961618, at *4 (S.D.N.Y. July 13, 2020); *Cuzco v. Orion Builders, Inc.*, 477 F.

3

Supp. 2d 628, 634 (S.D.N.Y. 2007). The Yasuko Certification does not include either of these affirmations that she understands and knows what she signed and what was submitted to the Court.

Consequently, the Court should strike the Yasuko Certification.

## II. THE ISSUE BEFORE THE COURT IS WHETHER KURAKU IS AN ALTER EGO OF RYI AND CONSEQUENTLY ITS ASSETS ARE SUBSUMED INTO RYI'S BANKRUPTCY ESTATE

The letter brief in opposition contended that withdrawal of referral should be denied because Yasuko *claims* to own 90 percent of Kuraku, and pursuant to 28 U.S.C. 541, Kuraku is part of her bankruptcy estate and therefore its management is an equitable asset of her estate. However, she ignores that the issue before this Court is whether Kuraku is an *alter ego* or disguised continuance of RYI, which is to be determined by application of the law on *alter ego* set forth in Plaintiffs'/Judgment Creditors' Memorandum of Law in Support of Turn-Over Motion [DE 634, at 1-6] to the facts before this Court and to be adduced at hearing. If the Court determines, as we believe it will, that Kuraku is the *alter ego* of RYI, then Kuraku stands in the shoes of RYI and is subject to an appropriate order by this Court, as part of the RYI bankruptcy, for inclusion of Kuraku in the RYI bankruptcy estate for satisfaction of the claims of creditors of RYI. Facts that are set forth in the Rostami declaration in support of Plaintiffs'/Judgment Creditors' turnover motion [DE 633] and the documents annexed to that declaration strongly support that Kuraku is a disguised continuance of RYI.

Yasuko's opposition references three cases that she contends stand for the proposition that her ownership interest and management responsibilities with regard to Kuraku "are property of [her] bankruptcy estate and therefore the automatic stay is applicable." These cases are clearly inapposite because in those cases receivership was sought where the debtor's ownership of the subject entity was not an issue. In *In re Meade*, 84 B.R. 106, 107 (Bankr. S.D. Ohio 1988), the

court in dicta held that stocks and other forms of securities were property of the estate—completely different than purported ownership of a business that is in fact an *alter ego* of a judgment debtor. In *In re Bello*, 612 B.R. 389, 392 (Bankr. E.D. Mich. 2020), and *In re of Edisto Resources Corp.*, 158 B.R. 954 (Bankr. D. Del. 1993), the issue of whether the debtor owned an entity was not even before the court.[4] On the contrary, here, the legitimacy of Yasuko's ownership of Kuraku, and whether Kuraku is in fact RYI in disguise, is in serious question.[5]

However, instead of responding and countermanding Plaintiffs'/Judgment Creditors' position that Restaurant Kuraku is a mere continuation of RYI and thus is an ***asset of RYI*** that is to be applied ***to satisfy RYI's obligations to RYI's creditors***,[6] Yasuko utterly fails to respond to the arguments and evidence Plaintiffs have submitted that Kuraku was formed in stealth to transfer RYI's assets and operation to Kuraku to specifically defraud Plaintiffs/Judgment Creditors; that RYI's funds (including $10,000 that was paid to Kuraku from the proceeds of a PPP loan made to

---

[4] In *In re Edisto Resources Corp.*, the bankruptcy court held that the request of minority shareholders for appointment of a receiver to protect their rights violated the automatic stay in that case. That case is clearly distinguishable because the issue before this Court, whether Kuraku is an *alter ego* of RYI, is not subject to any stay.

[5] The believability of claims by Yasuko or Maki as to their actual or functional ownership of Kuraku is seriously called into question by the Court's conclusion on July 11, 2022 that neither Yasuko nor Maki, nor Negita, were credible as to the purported transfer of ownership of RYI from Yasuko (who disclaimed knowledge of or involvement in the ownership, management or operation of RYI) to Maki in 2019 [Tr. 7/11/22, 467:15-468:22] and Yasuko's representation to the New York State Liquor Authority in a liquor license application for Kuraku that RYI was her other company [Tr. 7/11/22, 469:10-469:12].

[6] In the opposition letter brief, Yasuko argues that any claim that Kuraku is an alter ego of RYI must be made by the Trustee for the benefit of all creditors of RYI, citing *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987). Plaintiffs/Judgment Creditors filed their motion seeking a determination that Kuraku is an alter ego of RYI in April 2023, two months before RYI filed its Chapter 7 petition and three months before FRL was appointed Special Counsel to the Trustee to represent the Trustee's interests in this litigation. In light of RYI's filing for bankruptcy and the appointment of FRL as Special Counsel, it is understood that the *alter ego* claim presently before this Court is now asserted for the benefit of all RYI creditors. However, it is instructive to note that in its petition for bankruptcy [DE 681-1], RYI lists one creditor with secured claims totaling $150,000.00 (the United States Small Business Administration) for which funds are purportedly set aside with RYI's accountant), one non-priority unsecured claimant with a claim of $161,469.00, and the $1,798,633.00 owed to Plaintiffs/Judgment Creditors (plus post-judgment interest) by virtue of the Judgement entered by this Court. Thus, the primary beneficiary of a determination that Kuraku is an *alter ego* of RYI would be Plaintiffs/Judgment Creditors, since their claims encompass more than 90 percent of the unsecured claims against the RYI estate—and Yasuko's contention merely muddies the waters.

RYI [DE 633, ¶ 54]) and RYI's assets (Maki's testimony on May 18, 2023) were used to establish Kuraku [DE 633, ¶¶ 41-63]; and that Yasuko and her partners disregarded corporate formality. Neither does Yasuko respond to the argument that pursuant to NY Business Corporation Law § -- 510, Yasuko could not claim ownership of the RYI funds that were used to establish Kuraku. Consequently, the Court should proceed to consider the documentary evidence presented in Plaintiffs'/Judgment Creditors' moving papers in its turnover motion and the testimony before the Court, and should find that within its authority, it to determine that Kuraku is an alter ego of RYI.[7]

### III. TRUSTEE HAS THE POWER TO SEEK THE APPOINTMENT OF A RECEIVER FOR KURAKU; THE COURT HAS DISCRETION TO APPOINT A RECEIVER FOR KURAKUTO ENSURE THAT ITS ASSETS ARE NOT BEING DISSIPATED TO THE DETRIMENT OF CREDITORS

The Trustee has the power to recover and manage the assets of RYI pursuant to 11 U.S.C. § 704 which in pertinent part provides that: "The trustee shall collect and reduce to money the property of the estate for which such trustee serves…." As duly retained counsel for the Trustee, we move to appoint a receiver to safeguard Kuraku for RYI's creditors pursuant to the powers granted to the Trustee. "The duty to disclose and *surrender property* and records to the trustee is essential to the fundamental and required administrative duties of the trustee and the exercise of the trustee's powers under the bankruptcy code." *In re: HO WAN KWOK, et al., Debtors.*, No. 22-50073 (JAM), 2023 WL 4772420, at *12 (Bankr. D. Conn. July 26, 2023)(emphasis added)[8]

---

[7] Yasuko's reliance on *In re Star Mountain Resources, Inc*., 2022 WL 2294175 (Bankr. D. Ariz. June 22, 2022) is similarly misplaced. In *Star Mountain*, the bankruptcy court stated that a state law alter ego claim is to be commenced as an adversary proceeding under Fed.R.Bankr.P. 7001. However, since this Court has approved withdrawal of referral of this matter to the bankruptcy court, the processes of the Bankruptcy Rules are no longer applicable and this Court may proceed to consider and determine the motion—and to provide the appropriate orders to enforce its determination, which can include appointment of a receiver for Kuraku.

[8] Yasuko's argument that CPLR 5228 does not apply to Kuraku because it is not a judgment debtor before this Court is inexplicable since this provision of the CPLR, providing tools for creditors to enforce judgments, clearly states that a receiver can be appointed to manage any property in which a judgment debtor has an interest. This section can be used in bankruptcy as well.

In this case, RYI has an interest in Restaurant Kuraku—in fact, RYI has the overwhelming legitimate interest in the stocks of Kuraku and the Trustee may move to transfer the stocks of Kuraku to his name. The Trustee can move to set aside the fraudulent transfer of the ownership of Kuraku pursuant to 11 U.S.C. 541(a), which in pertinent part holds that:

> **(a)(1)** The trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> **(A)** made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> **(B)(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> **(ii)(I)** was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> **(II)** was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> **(III)** intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> **(IV)** made such transfer to or for the benefit of an insider… and not in the ordinary course of business.

Yasuko argues that appointment of a receiver will result in breach of Kuraku's lease agreement and therefore destruction of Kuraku's business. The statements in Yasuko's letter brief regarding the lease agreement must be stricken because (1) she has not produced the lease agreement, and (2) Yasuko's naked statement in her unsworn document (which is not competent "evidence" since it does not meet the requirements of 28 U.S.C. § 1746) that the appointment of a receiver would be a violation of Kuraku's lease [DE 698-1, ¶¶ 11-12] is not probative evidence that appointment of a receiver would likely result in the termination of "KuRaku's lease with the Landlord" (Opp. Br., at 8). The description of the lease terms contained in the letter brief states only that the landlord has the option to terminate the lease if a receiver is appointed. Yasuko's

7

speculative proclamation does not constitute determinative or even probative evidence that appointment of a receiver under these circumstances will be harmful to the RYI bankruptcy estate.

IV. **YASUKO'S OBJECTION TO THE RECEIVERSHIP MOTION BECAUSE OF LACK OF SERVICE ON OTHER JUDGMENT CREDITORS OF RYI SHOULD BE REJECTED**

Finally, Yasuko contends that Plaintiffs'/Judgment Creditors' motion for appointment of a receiver over Kuraku should be denied because not all judgment creditors were served with the motion. Yasuko references a single unpublished trial order of a justice of the New York State Supreme Court, Queens County issued in 2008, *Keizman v. Hershko*, 2008 WL 6094786 (Sup. Ct. Qns. Co. Nov. 25, 2008),[9] who denied a receivership motion for several reasons, including that the party seeking the receivership did not give notice to other judgment creditors, which included two alleged mortgage holders on the property for which receivership had been sought. Here, prior to FRL's retention, the Trustee, who represents the interests of all judgment creditors of RYI, had notice of the turnover motion and the receiver motion, and the Trustee has engaged FRL as Special Counsel to represent the collective interests of RYI's creditors in RYI's bankruptcy proceeding. Accordingly, the Court should reject Yasuko's contention that Plaintiffs'/Judgment Creditors' motion for receivership over Kuraku be denied because of lack of notice to other judgment creditors of RYI.

## CONCLUSION

Plaintiffs/Judgment Creditors and the Trustee respectfully submit that if the Court determines that Kuraku is an alter ego of judgment debtor RYI, the Court should, for the reasons set forth hereinabove, appoint a receiver to operate Kuraku. Appointment of a receiver for Kuraku will ensure that, to the greatest extent possible, the assets of Kuraku will not be dissipated and

---

[9] *Keizman v. Hershko* has not been cited or referenced in any other decision by any court in the past fifteen years.

Kuraku's net revenues will be appropriately applied toward distribution to RYI's creditors in the bankruptcy proceeding before the SDNY Bankruptcy Court, including to Plaintiffs/Judgment Creditors who have not received a single dime of payment from any Judgment Debtor in the entire year after this Court rendered a Judgment in their favor.

Dated: New York, New York
       July 28, 2023

Respectfully submitted,

FLORENCE ROSTAMI LAW LLC
*Attorneys for Plaintiffs/Judgment Creditors and Special Counsel for Chapter 7 Trustee Alan Nisselson*

By: /s/ Florence Rostami
     Florence Rostami
     Neal Haber
     The Graybar Building
     420 Lexington Avenue, Suite 1402
     New York, New York 10170
     (212) 209-3962

     frostami@rostamilaw.com
     nhaber@rostamilaw.com